# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| 1. JOSHAWA CESSOR, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. *19-CV-469-GKF-FHM* |
| | ) | |
| 1. BOARD OF COUNTY | ) | **Removed from Tulsa County** |
| COMMISSIONERS FOR THE | ) | **District Court** |
| COUNTY OF TULSA, a political subdivision | ) | **Case No. CJ-2018-4673** |
| and municipal corporation; | ) | **Judge Doug Drummond** |
| 2. STANLEY GLANZ, individually; | ) | |
| 3. VIC REGALADO, in his official capacity; and | ) | |
| 4. ARMOR CORRECTIONAL HEALTH | ) | |
| SERVICES, INC., a foreign corporation, | ) | |
| | ) | |
| Defendants. | ) | |

## NOTICE OF REMOVAL

Pursuant to 28 U.S.C. §§ 1331, 1441, and 1446, Defendant, Vic Regalado, in his official

capacity as Sheriff of Tulsa County ("Defendant" or "Sheriff Regalado"), by and through his

undersigned counsel, hereby removes the above-captioned action currently pending in the District

Court of Tulsa County, State of Oklahoma, to the United States District Court for the Northern

District of Oklahoma. In support of this Notice of Removal, Sheriff Regalado states as follows:

1.      Plaintiff filed his Petition against Defendant Board of County Commissioners of

Tulsa County and Defendant Armor Correctional Health Services, Inc., in the District Court for

Tulsa County, State of Oklahoma, on November 13, 2018. A true and correct copy of the Petition

is attached hereto as Exhibit "A".

2.      On November 30, 2018, Plaintiff filed his First Amended Petition against the same

two (2) defendants and adding claims under Art. 2 § 9 of the Oklahoma Constitution. A true and

correct copy of the First Amended Petition is attached hereto as Exhibit "B".

3.     On August 14, 2019, Plaintiff filed his Second Amended Petition against the same two (2) defendants and added former Sheriff Stanley Glanz and Sheriff Vic Regalado as defendants. In addition to the new defendants, the Second Amended Petition eliminated the claim for negligence and added new claims asserting violations of the Fourth and Fourteenth Amendments to the United States Constitution, pursuant to 42 U.S.C. § 1983. A true and correct copy of the Second Amended Petition is attached hereto as Exhibit "C".

4.     Defendant Board of County Commissioners and Defendant Armor Correctional Health Services, Inc. were mailed a copy of the Second Amended Petition on August 14, 2019. (*See* Exhibit C).

5.     As of the date of this filing, the newly-added defendants, Sheriff Regalado and former Sheriff Glanz have not been served.

6.     Sheriff Regalado hereby voluntarily appears and waives service of process. *See Asset Acceptance, LLC v. Johnson*, 2011 OK CIV APP 121, ¶ 14, 268 P.3d 551, 555 ("Jurisdiction of the person is acquired by service of process or by voluntary appearance before the court.").

7.     Removal of this action by Sheriff Regalado from the District Court of Tulsa County to the United States District Court for the Northern District of Oklahoma is proper under 28 U.S.C. § 1441(a), which permits removal of an action over which a District Court of the United States would have original jurisdiction. The Court has original jurisdiction over this action pursuant to 28 U.S.C. § 1331, which grants district courts original jurisdiction of all civil actions "arising under the Constitution, treaties, or laws of the United States." 28 U.S.C. § 1331. By way of his Second Amended Petition, Plaintiff asserts a claim under 42 U.S.C. § 1983, which arises under the laws of the United States. (*See* Second Amended Petition, Ex. C, ¶¶ 15-40).

8.      Plaintiff also asserts a *Bosh* claim under the Oklahoma Constitution. (*See* Second Amended Petition, Ex. C, ¶¶ 41-48). Because Plaintiff's claims are part of the same case and controversy giving rise to Plaintiff's claims under 42 U.S.C. § 1983, they fall within the Court's supplemental jurisdiction pursuant to 28 U.S.C. § 1367(a).

9.      Pursuant to 28 U.S.C. § 1446(b)(2)(A), all properly joined and served Defendants join and consent to the removal of this action.

10.     Pursuant to 28 U.S.C. § 1446(a) and LCvR81.2, copies of all documents filed or served in the state court action and a copy of the docket sheet for the state court action are attached hererto. *See* Exhibits D through R.

11.     Pursuant to LCvR81.2, Defendant Regalado files herewith a Status Report on Removed Action in the form provided by the Court Clerk.

12.     Pursuant to 28 U.S.C. § 1446(d), Regalado is promptly filing a copy of this Notice of Removal with the Clerk of the District Court for Tulsa County. Regalado is also providing written notice to Plaintiff by serving this Notice of Removal upon Plaintiff's counsel.

13.     Venue is proper in this Court under 28 U.S.C. § 1441(a) because the Northern District of Oklahoma embraces Tulsa County, the place where the action was pending prior to the filing of this Notice of Removal.

WHEREFORE, Defendant Sheriff Regalado hereby removes the above-captioned action from the District Court of Tulsa County, State of Oklahoma, to the District Court for the Northern District of Oklahoma, and respectfully requests that further proceedings be conducted in this Court as provided by law.

DATED this 26th day of August, 2019.

Respectfully submitted,

/s/ Jo Lynn Jeter
**Joel L. Wohlgemuth**, OBA #9811
**Jo Lynn Jeter**, OBA #20252
**Barrett L. Powers**, OBA #32485
**NORMAN WOHLGEMUTH CHANDLER JETER**
**BARNETT & RAY, P.C.**
2900 Mid-Continent Tower
401 South Boston Ave.
Tulsa, OK 74103
(918) 583-7571
(918) 584-7846 facsimile

**ATTORNEYS FOR DEFENDANT,**
**SHERIFF VIC REGALADO**

## CERTIFICATE OF SERVICE

I certify that on August 26, 2019, I caused a true and correct copy of this document to be placed in the United States Mail, First Class postage fully pre-paid, addressed to:

| | |
|---|---|
| Brendan M. McHugh<br>Attorney at Law<br>P. O. Box 1392<br>Claremore, OK 74018<br><br>***Attorney for Plaintiff*** | Matthew Kehoe<br>500 S. Denver, Suite 900<br>Tulsa, OK 74103<br><br>***Attorney for Defendant, Board of County Commissioners for Tulsa County*** |
| Dana Jim<br>Attorney at Law<br>P. O. Box 1011<br>Vinita, OK 74301<br><br>***Co-Counsel for Plaintiff*** | Sean Snider<br>Anthony Winter<br>Johnson Hanan & Vosler<br>9801 N. Broadway Extension<br>Oklahoma City, OK 73114<br><br>***Attorney for Defendant, Armor Correctional Health Services, Inc.*** |

/s/Jo Lynn Jeter
**Jo Lynn Jeter**



**IN THE DISTRICT COURT OF TULSA COUNTY**
**STATE OF OKLAHOMA**



DISTRICT COURT
F I L E D

NOV 1 3 2018

DON NEWBERRY, Court Clerk
STATE OF OKLA. TULSA COUNTY

| | | |
|---|---|---|
| JOSHAWA CESSOR, | ) | |
| | ) | |
| Plaintiff, | ) | DANA LYNN KUEHN |
| | ) | |
| v. | ) | CJ-2018-04673 |
| | ) | |
| BOARD OF COUNTY COMMISIONERS | ) | Refiled from Case No. CJ-2016-2442 |
| OF TULSA COUNTY, a political sub- | ) | |
| division and municipal corporation; | ) | **ATTORNEY LIEN CLAIMED** |
| and | ) | **JURY TRIAL DEMANDED** |
| ARMOR CORRECTIONAL HEALTH | ) | |
| SERVICES, INC., a foreign corporation, | ) | |
| | ) | |
| Defendants. | ) | |

## PETITION

The Plaintiff Joshawa Cessor ("Plaintiff") hereby submits his Petition in the above captioned matter. In support thereof, Plaintiff alleges and states as follows:

1. Plaintiff is an individual who sustained injuries while in the Tulsa County Jail and resided in Broken Arrow, Oklahoma at all material times herein.

2. Defendant Board of County Commissioners of Tulsa County ("BCCTC") is a political subdivision and municipal corporation.

3. Stanley Glanz ("Glanz") was the Tulsa County Sheriff during Plaintiff's incarceration.

4. Numerous John and Jane Does were employed at the Tulsa County Jail during the events at issue herein.

1

**EXHIBIT A**

5.     That beginning in early September 2015 until approximately September 15th 2015 Plaintiff was incarcerated at the Tulsa County Jail as a pretrial detainee being held on a warrant issued by the State of New Mexico.

6.     Board of County Commissioners of Tulsa County ("BCCTC") is a political subdivision and municipal corporation and the governing entity of Tulsa County Jail and pursuant to 19 O.S. § 4 is the proper entity to be sued on behalf of Tulsa County Jail.

7.     Defendant ARMOR CORRECTIONAL HEALTH SERVICES, INC. (ACHS) was, at all times relevant hereto, a foreign corporation doing business in Tulsa County, Oklahoma.   ACHS was, at all times relevant hereto, responsible, in part, for providing medical services and medication to Plaintiff while he was in the custody of the Tulsa County Sheriff's Department. ACHS was additionally responsible, in part, for implementing Tulsa County Jail policies regarding medical and mental health care, assisting in developing those policies and in training and supervising its employees.

8.     That Plaintiff previously filed this case in Tulsa County Case No. CJ-2016-2442 and such matter was subsequently removed and dismissed without prejudice on 11/13/2017 and as such this re-filing is timely.

9.     While incarcerated at the Tulsa County Jail, Plaintiff was subjected to an unreasonable seizure prohibited by the Oklahoma Constitution, specifically art. 2 §§ 7 & 30 as a pretrial detainee.

10.     That on or about September 8th 2015 while incarcerated in the Tulsa County Jail, employees of the Tulsa County Jail handcuffed Plaintiff excessively resulting in a fracture and displacement of his right hand as well as paresthesia.  The conduct of

2

the individual employees of the jail is unlawful in that it is excessive force prohibited by the Oklahoma Constitution. Specifically, while being processed into Tulsa County Jail, Plaintiff disclosed that he was in the past hospitalized in New Mexico for suicidal tendencies with depression, anxiety and mental health issues. This resulted in Plaintiff being placed him in a medical/mental unit of the jail. Plaintiff was placed in a jail cell with no clothes and a sheet to cover himself and the guard derisively laughed at him while placing him in the cell with his clothing. While there, Plaintiff began to threaten to call the Mayor and/or an attorney to complain about the conditions in the jail and his treatment. Numerous deputies and Sheriff Glanz appeared and Plaintiff was placed in handcuffs resulting in his hand making a loud popping/cracking sound. Plaintiff immediately hollered in pain. Nevertheless, despite the need for medical attention, Plaintiff was placed in a cell. Plaintiff requested medical care and was in excessive pain for over 20 hours before he was finally taken to an x-ray technician at jail who diagnosed Plaintiff with what was described as a triad break. Subsequently, two physicians with the jail and/or ACHS stated that it was not possible to determine if it was broken and no treatment was rendered by them to Plaintiff. Plaintiff was only given Tylenol a few days later, resulting in severe and unnecessary pain to Plaintiff. Plaintiff made numerous written requests thru the KIOSK system and subsequently Plaintiff attempted to retrieve such requests, the requests were no longer visible and Plaintiff's KIOSK records were wiped clean as there were no other records. After his release from Tulsa County Jail, it was confirmed that Plaintiff had indeed broken his wrist.

11.     After fracturing Plaintiff's wrist, individual employees of the Tulsa County Jail exacerbated Plaintiff's condition by refusing to provide medical treatment to Plaintiff also in violation of Plaintiff's constitutional rights under the Oklahoma Constitution. Further, Plaintiff had mental health needs in that he was diagnosed with anxiety and had other mental health issues that should have been adequately responded to.

12.     Glanz was at all times relevant hereto, the Sheriff of Tulsa County, Oklahoma, residing in Tulsa County, Oklahoma.  Glanz, as Sheriff and the head of the Tulsa County Sheriff's Department, was, at all times relevant hereto, responsible for ensuring the safety and well-being of inmates detained and housed at the Tulsa County Jail, including the provision of appropriate medical care and treatment to inmates in need of such care, pursuant to 57 O.S. § 47.

13.     In addition, Glanz was at all times pertinent hereto, responsible for creating, adopting, approving, ratifying, and enforcing the rules, regulations, policies, practices, procedures, and/or customs of the Tulsa County Sheriff's Department and Tulsa County Jail, including the policies, practices, procedures, and/or customs that violated Plaintiff's rights under the Oklahoma Constitution as set forth in this Petition.

## COUNT I

## OKLAHOMA CONSTITUTION – BOSH CLAIM

### As to Defendant BCCTC

14.     In support of Count I, Plaintiff restates and re-alleges the foregoing allegations in their entirety as though fully set forth herein.

15. That while incarcerated in the Tulsa County Jail, Plaintiff was subjected to excessive force in violation of Oklahoma law by certain unknown individuals, John and Jane Does, and once the responsible individuals are learned of and determined with knowledge, a separate excessive force claim will be alleged as to them upon leave of the Court at the time this information is discovered.

16. Plaintiff was injured by a Tulsa County Jail employee resulting in excessive force and significant injuries to Plaintiff.

17. Defendants neglected Plaintiff's medical needs by failing to provide medical assistance to Plaintiff after being requested to do so and having actual or constructive knowledge of a medical need.

18. Defendants' failure provide medical assistance resulted in signification exacerbation of Plaintiff's condition.

19. Additionally, and/or alternatively, Defendants BCCTC and ACHS violated Plaintiff's rights under the Oklahoma Constitution, and a cause of action exists pursuant to Bosh v. Cherokee County Building Authority, 2013 OK 9, 305 P.3d 994, for violating Plaintiff's rights under Art. 2, § 30 and Art. 2 § 7 of the Oklahoma Constitution

20. The above described conduct is a direct result of the inadequate training and the failure to properly train employees of the Tulsa County Jail. This policy is set forth and described in the Order of the Court by Honorable Judge John E. Dowdell in Burke v. Glanz, et al., No. 11-CV-720-JED-PJC, Opinion and Order, (N.D. Okla. July 20th 2016). Specifically, on three occasions, the staffing, medical treatment of inmates at the Tulsa County Jail was found to be deficient. Further, Defendant ACHS violated the

constitutional rights of inmates by neglecting their medical needs. This resulted in a pattern and policy and actual notice of the deficiencies such that the failure to correct violates Oklahoma law.

21. Such policies, practices and/or customs include, but are not limited to:

a. The failure to promulgate, implement or enforce, adequate mental health policies responsive to the serious medical needs of inmates like Plaintiff;

b. Inadequate medical triage screening that fails to identity inmates with serious medical or mental health needs;

c. Severe limitation of the use of off-site medical, mental health and diagnostic service providers, even in emergency situations;

d. Untimely medical and mental health examinations and treatment;

e. Understaffing the medical unit; and

f. The failure to adequately train jail personnel and staff with respect to the proper assessment, classification and treatment of inmates with serious medical and mental health needs.

22. As a result of the above conduct, Plaintiff has suffered injuries and damages as alleged herein.

23. As a result of Defendants' conduct, Plaintiff has suffered actual damages in excess of $10,000.00.

## COUNT II

## NEGLIGENCE

## (As to Defendants BCCTC and ACHS)

24. Plaintiff re-alleges and incorporates by reference the above paragraphs as though fully set forth herein.

25. Prior to filing this action, Plaintiff fully exhausted his rights pursuant to the Oklahoma Governmental Tort Claims Act, 51 O.S. § 151 *et. seq.* (OGTCA).

26. As a result of the negligence of Defendants BCCTC and ACHS, Plaintiff sustained damages.

27. Defendants BCCTC and ACHS owed a duty to Plaintiff, and all other inmates in custody, to use reasonable care to provide inmates in need of medical attention with appropriate assessment, classification and treatment of inmates with serious needs. ACHS was charged with implementing and assisting in developing the policies of the Tulsa County Sheriff's Department with respect to the medical and mental health care of inmates at the Tulsa County Jail and has shared responsibility to adequately train and supervise its employees.

28. The negligence and Oklahoma Constitutional Such policies, practices and/or customs include, but are not limited to:

a. The failure to promulgate, implement or enforce adequate mental health policies responsive to the serious medical needs of inmates like Plaintiff.

b. Inadequate medical triage screening that fails to identify inmates with serious medical or mental health needs;

c. Severe limitation of the use of off-site medical, mental health and diagnostic service providers, even in emergency situations;

d. Untimely medical and mental health examinations and treatment;

e.   Understaffing the medical unit; and

f.   The failure to adequately train ACHS and Tulsa County Jail employees and/or agents with respect to the proper assessment, classification and treatment of inmates with serious needs.

29.   Defendants knew it was obvious that the maintenance of the aforementioned policies, practices and/or customs posed an excessive risk to the health and safety of inmates like Plaintiff.

30.   As a direct and proximate cause of the negligence of BCCTC and ACHS, Plaintiff has suffered damages, in excess of $75,000.00.

WHEREFORE, Plaintiff requests an award of actual damages in excess of $10,000.00 against all Defendants, an award of punitive damages against Defendant ACHS in excess of $10,000.00, the costs of this action, and any other and further relief that this Court deems proper.

Brendan M. McHugh, OBA #18422
Attorney for Plaintiff
P.O. Box 1392
Claremore, OK 74018
Tele: (918) 608-0111
Fax: (918) 803-4910
and
Dana Jim, OBA #19495
P.O. Box 1011
Vinita, OK  74301
Tele:  918-457-6626
Fax: 918-517-3431
Co-Counsel for Plaintiff

8




*1042299880*

# IN THE DISTRICT COURT OF TULSA COUNTY
## STATE OF OKLAHOMA

DISTRICT COURT
**F I L E D**

NOV 3 0 2018

DON NEWBERRY, Court Clerk
STATE OF OKLA. TULSA COUNTY

JOSHAWA CESSOR, )
)
Plaintiff, )
)
v. )
)
BOARD OF COUNTY COMMISSIONERS )
OF TULSA COUNTY, a political sub- )
division and municipal corporation; )
and ARMOR CORRECTIONAL HEALTH )
SERVICES, INC., a foreign corporation, )
)
Defendants. )

Case No. CJ-2018-4673

Refiled from Case No. CJ-2016-2442

**ATTORNEY LIEN CLAIMED**
**JURY TRIAL DEMANDED**

## FIRST AMENDED PETITION

The Plaintiff Joshawa Cessor ("Plaintiff") hereby submits his First Amended Petition in the above captioned matter. In support thereof, Plaintiff alleges and states as follows:

1.      Plaintiff is an individual who sustained injuries while in the Tulsa County Jail and resided in Broken Arrow, Oklahoma at all material times herein.

2.      Defendant Board of County Commissioners of Tulsa County ("BCCTC") is a political subdivision and municipal corporation.

3.      Stanley Glanz ("Glanz") was the Tulsa County Sheriff during Plaintiff's incarceration.

4.      Numerous John and Jane Does were employed at the Tulsa County Jail during the events at issue herein.

5.      That beginning in early September 2015 until approximately September 15th 2015 Plaintiff was incarcerated at the Tulsa County Jail as a pretrial detainee being held on a warrant issued by the State of New Mexico.

1

**EXHIBIT B**

6. Board of County Commissioners of Tulsa County ("BCCTC") is a political subdivision and municipal corporation and the governing entity of Tulsa County Jail and pursuant to 19 O.S. § 4 is the proper entity to be sued on behalf of Tulsa County Jail.

7. Defendant Armor Correctional Health Services, Inc. (ACHS) was, at all times relevant hereto, a foreign corporation doing business in Tulsa County, Oklahoma. ACHS was, at all times relevant hereto, responsible, in part, for providing medical services and medication to Plaintiff while he was in the custody of the Tulsa County Sheriff's Department. ACHS was additionally responsible, in part, for implementing Tulsa County Jail policies regarding medical and mental health care, assisting in developing those policies and in training and supervising its employees.

8. That Plaintiff previously filed this case in Tulsa County Case No. CJ-2016-2442 and such matter was subsequently removed and dismissed without prejudice on November 13, 2017, and as such this re-filing is timely. Further, Plaintiff filed his Petition in Tulsa County Case No. CJ-2018-4673 on November 13, 2018, and amendment is permissible under 12 O.S. § 2015.

9. While incarcerated at the Tulsa County Jail, Plaintiff was subjected to an unreasonable seizure prohibited by the Oklahoma Constitution, specifically Art. 2 §§ 7, 9, and 30 as a pretrial detainee.

10. That on or about September 8th 2015 while incarcerated in the Tulsa County Jail, employees of the Tulsa County Jail handcuffed Plaintiff excessively resulting in a fracture and displacement of his right hand as well as paresthesia. The conduct of the individual employees of the jail is unlawful in that it is excessive force prohibited by the

2

Oklahoma Constitution. Specifically, while being processed into Tulsa County Jail, Plaintiff disclosed that he was in the past hospitalized in New Mexico for suicidal tendencies with depression, anxiety and mental health issues. This resulted in Plaintiff being placed him in a medical/mental unit of the jail. Plaintiff was placed in a jail cell with no clothes and a sheet to cover himself and the guard derisively laughed at him while placing him in the cell with his clothing. While there, Plaintiff began to threaten to call the Mayor and/or an attorney to complain about the conditions in the jail and his treatment. Numerous deputies and Sheriff Glanz appeared and Plaintiff was placed in handcuffs resulting in his hand making a loud popping/cracking sound. Plaintiff immediately hollered in pain. Nevertheless, despite the need for medical attention, Plaintiff was placed in a cell. Plaintiff requested medical care and was in excessive pain for over 20 hours before he was finally taken to an x-ray technician at jail who diagnosed Plaintiff with what was described as a triad break. Subsequently, two physicians with the jail and/or ACHS stated that it was not possible to determine if it was broken and no treatment was rendered by them to Plaintiff. Plaintiff was only given Tylenol a few days later, resulting in severe and unnecessary pain to Plaintiff. Plaintiff made numerous written requests thru the KIOSK system and subsequently Plaintiff attempted to retrieve such requests, the requests were no longer visible and Plaintiff's KIOSK records were wiped clean as there were no other records. After his release from Tulsa County Jail, it was confirmed that Plaintiff had indeed broken his wrist.

11. After fracturing Plaintiff's wrist, individual employees of the Tulsa County Jail exacerbated Plaintiff's condition by refusing to provide medical treatment to Plaintiff

also in violation of Plaintiff's constitutional rights under the Oklahoma Constitution. Further, Plaintiff had mental health needs in that he was diagnosed with anxiety and had other mental health issues that should have been adequately responded to.

12. Glanz was at all times relevant hereto, the Sheriff of Tulsa County, Oklahoma, residing in Tulsa County, Oklahoma. Glanz, as Sheriff and the head of the Tulsa County Sheriff's Department, was, at all times relevant hereto, responsible for ensuring the safety and well-being of inmates detained and housed at the Tulsa County Jail, including the provision of appropriate medical care and treatment to inmates in need of such care, pursuant to 57 O.S. § 47.

13. In addition, Glanz was at all times pertinent hereto, responsible for creating, adopting, approving, ratifying, and enforcing the rules, regulations, policies, practices, procedures, and/or customs of the Tulsa County Sheriff's Department and Tulsa County Jail, including the policies, practices, procedures, and/or customs that violated Plaintiff's rights under the Oklahoma Constitution as set forth in this Petition.

## COUNT I

## OKLAHOMA CONSTITUTION – BOSH CLAIM

### As to Defendant BCCTC

14. In support of Count I, Plaintiff restates and re-alleges the foregoing allegations in their entirety as though fully set forth herein.

15. That while incarcerated in the Tulsa County Jail, Plaintiff was subjected to excessive force in violation of Oklahoma law by certain unknown individuals, John and Jane Does, and once the responsible individuals are learned of and determined with

4

knowledge, a separate excessive force claim will be alleged as to them upon leave of the Court at the time this information is discovered.

16. Plaintiff was injured by a Tulsa County Jail employee resulting in excessive force and significant injuries to Plaintiff.

17. Defendants neglected Plaintiff's medical needs by failing to provide medical assistance to Plaintiff after being requested to do so and having actual or constructive knowledge of a medical need.

18. Defendants' failure provide medical assistance resulted in signification exacerbation of Plaintiff's condition.

19. Additionally, and/or alternatively, Defendants BCCTC and ACHS violated Plaintiff's rights under the Oklahoma Constitution, and a cause of action exists pursuant to Bosh v. Cherokee County Building Authority, 2013 OK 9, 305 P.3d 994, for violating Plaintiff's rights under Art. 2 §§ 7, 9, and 30 of the Oklahoma Constitution.

20. The above described conduct is a direct result of the inadequate training and the failure to properly train employees of the Tulsa County Jail. This policy is set forth and described in the Order of the Court by Honorable Judge John E. Dowdell in Burke v. Glanz, et al., No. 11-CV-720-JED-PJC, Opinion and Order (N.D. Okla. July 20th 2016). Specifically, on three occasions, the staffing, medical treatment of inmates at the Tulsa County Jail was found to be deficient. Further, Defendant ACHS violated the constitutional rights of inmates by neglecting their medical needs. This resulted in a pattern and policy and actual notice of the deficiencies such that the failure to correct violates Oklahoma law.

21. Such policies, practices and/or customs include, but are not limited to:

    a.    The failure to promulgate, implement or enforce, adequate mental health policies responsive to the serious medical needs of inmates like Plaintiff;

    b.    Inadequate medical triage screening that fails to identity inmates with serious medical or mental health needs;

    c.    Severe limitation of the use of off-site medical, mental health and diagnostic service providers, even in emergency situations;

    d.    Untimely medical and mental health examinations and treatment;

    e.    Understaffing the medical unit; and

    f.    The failure to adequately train jail personnel and staff with respect to the proper assessment, classification and treatment of inmates with serious medical and mental health needs.

22. As a result of the above conduct, Plaintiff has suffered injuries and damages as alleged herein.

23. As a result of Defendants' conduct, Plaintiff has suffered actual damages in excess of $10,000.00.

## COUNT II

## NEGLIGENCE

## (As to Defendants BCCTC and ACHS)

24. Plaintiff re-alleges and incorporates by reference the above paragraphs as though fully set forth herein.

6

25.     Prior to filing this action, Plaintiff fully exhausted his rights pursuant to the Oklahoma Governmental Tort Claims Act, 51 O.S. § 151 *et. seq.* (OGTCA).

26.     As a result of the negligence of Defendants BCCTC and ACHS, Plaintiff sustained damages.

27.     Defendants BCCTC and ACHS owed a duty to Plaintiff, and all other inmates in custody, to use reasonable care to provide inmates in need of medical attention with appropriate assessment, classification and treatment of inmates with serious needs. ACHS was charged with implementing and assisting in developing the policies of the Tulsa County Sheriff's Department with respect to the medical and mental health care of inmates at the Tulsa County Jail and has shared responsibility to adequately train and supervise its employees.

28.     The negligence and Oklahoma Constitutional violations Such policies, practices and/or customs include, but are not limited to:

a.     The failure to promulgate, implement or enforce adequate mental health policies responsive to the serious medical needs of inmates like Plaintiff.

b.     Inadequate medical triage screening that fails to identify inmates with serious medical or mental health needs;

c.     Severe limitation of the use of off-site medical, mental health and diagnostic service providers, even in emergency situations;

d.     Untimely medical and mental health examinations and treatment;

e.     Understaffing the medical unit; and

f.     The failure to adequately train ACHS and Tulsa County Jail employees and/or agents with respect to the proper assessment, classification and treatment of inmates with serious needs.

29.     Defendants knew it was obvious that the maintenance of the aforementioned policies, practices and/or customs posed an excessive risk to the health and safety of inmates like Plaintiff.

30.     As a direct and proximate cause of the negligence of BCCTC and ACHS, Plaintiff has suffered damages, in excess of $75,000.00.

WHEREFORE, Plaintiff requests an award of actual damages in excess of $10,000.00 against all Defendants, an award of punitive damages against Defendant ACHS in excess of $10,000.00, the costs of this action, and any other and further relief that this Court deems proper.

Brendan M. McHugh, OBA #18422
Attorney for Plaintiff
P.O. Box 1392
Claremore, OK 74018
Tele: (918) 608-0111
Fax: (918) 803-4910
and
Dana Jim, OBA #19495
P.O. Box 1011
Vinita, OK 74301
Tele: 918-457-6626
Fax: 918-517-3431
Co-Counsel for Plaintiff





## IN THE DISTRICT COURT OF TULSA COUNTY
## STATE OF OKLAHOMA

JOSHAWA CESSOR,          )
                                )
      Plaintiff,          )
                                )
v.                         )     Case No. CJ-2018-4673
                                )

BOARD OF COUNTY COMMISSIONERS ) Refiled from Case **No. CJ-2016-2442**
OF TULSA COUNTY, a political subdivision )
division and municipal corporation;     )  **ATTORNEY LIEN CLAIMED**
STANLEY GLANZ, individually;       )
VIC REGALADO, in his official capacity; ) **JURY TRIAL DEMANDED**
and ARMOR CORRECTIONAL HEALTH )
SERVICES, INC., a foreign corporation, )
                                )
      Defendants.         )

**FILED**
DISTRICT COURT
AUG 14 2019
DON NEWBERRY, Court Clerk
STATE OF OKLA. TULSA COUNTY

## SECOND AMENDED PETITION

The Plaintiff Joshawa Cessor ("Plaintiff") hereby submits his Second Amended
Petition in the above captioned matter.   In support thereof, Plaintiff alleges and states
as follows:

     1.    Plaintiff is an individual who is domiciled in the State of Arkansas and at
the time of the conduct alleged herein was a resident of Broken Arrow, Oklahoma.

     2.    Defendant Board of County Commissioners of Tulsa County ("BCCTC") is a
political subdivision and municipal corporation.

     3.    Defendant Vic Regalado ("Regalado") is the Sheriff at Tulsa County Jail
and this action is against him in his official capacity as Sheriff of Tulsa County.

     4.    Defendant Stanley Glanz ("Glanz") was the Tulsa County Sheriff during
Plaintiff's incarceration and this action is against him in his individual capacity.

1

**EXHIBIT C**

5.     Numerous John and Jane Does were employed at the Tulsa County Jail during the events at issue herein.

6.     That beginning in early September 2015 until approximately October of 2015 Plaintiff was incarcerated at the Tulsa County Jail as a pretrial detainee being held on a warrant issued by the State of New Mexico.

7.     Board of County Commissioners of Tulsa County ("BCCTC") is a political subdivision and municipal corporation and the governing entity of Tulsa County Jail and pursuant to 19 O.S. § 4 is the proper entity to be sued on behalf of Tulsa County Jail.

8.     Defendant ARMOR CORRECTIONAL HEALTH SERVICES, INC. (ACHS) was, at all times relevant hereto, a foreign corporation doing business in Tulsa County, Oklahoma.   ACHS was, at all times relevant hereto, responsible, in part, for providing medical services and medication to Plaintiff while he was in the custody of the Tulsa County Sheriff's Department. ACHS was additionally responsible, in part, for implementing Tulsa County Jail policies regarding medical and mental health care, assisting in developing those policies and in training and supervising its employees.

9.     That Plaintiff previously filed this case in Tulsa County Case No. CJ-2016-2442 and such matter was subsequently removed and dismissed without prejudice on 11/13/2017 and as such this re-filing is timely.

10.     While incarcerated at the Tulsa County Jail, Plaintiff was subjected to cruel and unusual punishment and an unreasonable seizure prohibited by the United States Constitution and applicable in this context thru the 4th and 14th Amendments to the

2

United States Constitution to Plaintiff as a pretrial detainee. Such conduct is also violative of Article 2, § 30 of the Oklahoma Constitution.

11.     That on or about September 8th 2015 while incarcerated in the Tulsa County Jail, employees of the Tulsa County Jail handcuffed Plaintiff excessively resulting in a fracture and displacement of his right hand as well as paresthesia. The conduct of the individual employees of the jail is unlawful in that it is excessive force under the United States and Oklahoma Constitutions. Specifically, while being processed into Tulsa County Jail, Plaintiff disclosed that he was in the past hospitalized in New Mexico for suicidal tendencies with depression, anxiety and mental health issues. This resulted in Plaintiff being placed him in a medical/mental unit of the jail. Plaintiff was placed in a jail cell with no clothes and a sheet to cover himself and the guard derisively laughed at him while placing him in the cell with his clothing. While there, Plaintiff began to threaten to call the Mayor and/or an attorney to complain about the conditions in the jail and his treatment. Numerous deputies and Sheriff Glanz appeared and Plaintiff was placed in handcuffs resulting in his hand making a loud popping/cracking sound. Plaintiff immediately hollered in pain. Nevertheless, despite the need for medical attention, Plaintiff was placed in a cell. Plaintiff requested medical care and was in excessive pain for over 20 hours before he was finally taken to an x-ray technician at jail who diagnosed Plaintiff with what was described as a triad break. Subsequently, two physicians with the jail and/or ACHS stated that it was not possible to determine if it was broken and no treatment was rendered by them to Plaintiff. Plaintiff was only given Tylenol a few days later, resulting in severe and unnecessary pain to Plaintiff.

Plaintiff made numerous written requests thru the KIOSK system and subsequently Plaintiff attempted to retrieve such requests, the requests were no longer visible and Plaintiff's KIOSK records were wiped clean as there were no other records. After his release from Tulsa County Jail, it was confirmed that Plaintiff had indeed broken his wrist.

12. After fracturing Plaintiff's wrist, individual employees of the Tulsa County Jail exacerbated Plaintiff's condition by refusing to provide medical treatment to Plaintiff also in violation of Plaintiff's constitutional rights under the United States and Oklahoma Constitutions. Further, Plaintiff had mental health needs in that he was diagnosed with anxiety and had other mental health issues that should have been adequately responded to.

13. Defendant Glanz was at all times relevant hereto, the Sheriff of Tulsa County, Oklahoma, residing in Tulsa County, Oklahoma. Glanz, as Sheriff and the head of the Tulsa County Sheriff's Department, was, at all times relevant hereto, responsible for ensuring the safety and well-being of inmates detained and housed at the Tulsa County Jail, including the provision of appropriate medical care and treatment to inmates in need of such care, pursuant to 57 O.S. § 47.

14. In addition, Defendant Glanz was at all times pertinent hereto, responsible for creating, adopting, approving, ratifying, and enforcing the rules, regulations, policies, practices, procedures, and/or customs of the Tulsa County Sheriff's Department and Tulsa County Jail, including the policies, practices, procedures, and/or

4

customs that violated Plaintiff's rights as set forth in this Petition. Defendant Glanz is sued in his individual capacity.

<div align="center">

**COUNT I**

**42 U.S.C. § 1983 – VIOLATIONS OF THE 4TH AND 14TH AMENDMENTS TO THE UNITED STATES CONSTITUTION**

**(As to Defendant Glanz in his individual capacity, Defendant Regalado in his official capacity, and Defendant ACHS)**

</div>

15.    In support of Count I, Plaintiff restates and re-alleges the foregoing allegations in their entirety as though fully set forth herein.

16.    That while incarcerated in the Tulsa County Jail, Plaintiff was subjected to excessive force by certain unknown individuals, John and Jane Does, and once the responsible individuals are learned of and determined with knowledge, a separate excessive force claim will be alleged as to them upon leave of the Court at the time this information is discovered.

17.    The action and inaction by the Defendants named herein constitutes deliberate indifference to the known federal constitutional rights of Plaintiff; specifically:

a.    Plaintiff was injured by a Tulsa County Jail employee resulting in excessive force and significant injuries to Plaintiff.

b.    Defendants were deliberately indifferent to Plaintiff's medical needs by failing to provide medical assistance to Plaintiff after being requested to do so and having actual knowledge of a medical need.

c.    Defendants' failure to provide medical assistance resulted in signification exacerbation of Plaintiff's condition.

18. The above described conduct is a direct result of the inadequate training and the failure to properly train employees of the Tulsa County Jail. This policy is set forth and described in the Order of the Court by Honorable Judge John E. Dowdell in Burke v. Glanz, et al., No. 11-CV-720-JED-PJC, Opinion and Order, (N.D. Okla. July 20th 2016). Specifically, on three occasions, the staffing, medical treatment of inmates at the Tulsa County Jail was found to be deficient. Further, Defendant ACHS violated the constitutional rights of inmates by neglecting their medical needs. This resulted in a pattern and policy and actual notice of the deficiencies.

19. Defendants had actual knowledge of all the above described conditions of confinement and all three acted with reckless indifference for the rights of the Plaintiff.

## COUNT I.A. – Individual Capacity Liability – Defendant Glanz

20. Plaintiff re-alleges and incorporates by reference the above paragraphs as though fully set forth herein.

21. There is an affirmative link between the aforementioned acts and/or omissions of Defendants in being deliberately indifferent to Plaintiff's serious medical needs, health and safety and policies, practices and/or customs which Glanz promulgated, created, implemented and/or possessed responsibility for.

22. Such policies, practices and/or customs include, but are not limited to:

a. The failure to promulgate, implement or enforce, adequate mental health policies responsive to the serious medical needs of inmates like Plaintiff;

b. Inadequate medical triage screening that fails to identity inmates with serious medical or mental health needs;

6

c.    Severe limitation of the use of off-site medical, mental health and diagnostic service providers, even in emergency situations;

d.    Untimely medical and mental health examinations and treatment;

e.    Understaffing the medical unit; and

f.    The failure to adequately train jail personnel and staff with respect to the proper assessment, classification and treatment of inmates with serious medical and mental health needs.

23.    Glanz knew and/or it was obvious that the maintenance of the aforementioned policies, practices and/or customs posed an excessive risk to the health and safety of inmates.

24.    Glanz disregarded the known and/or obvious risks to the health and safety of inmates like Plaintiff.

25.    Glanz, through his continued encouragement, ratification, and approval of the aforementioned policies, practices, and/or customs, in spite of their known and/or obvious inadequacies and dangers, has been deliberately indifferent to inmates', including Plaintiff's, serious medical needs.

26.    There is an affirmative link between the unconstitutional acts of his subordinates and Glanz's adoption and/or maintenance of the aforementioned policies, practices and/or customs.

### COUNT I.B. – Official Capacity Liability – Defendant Regalado & Municipal Liability – Defendant ACHS

27.    Plaintiff re-alleges and incorporates by reference the above paragraphs as though fully set forth herein.

7

28.	ACHS and Regalado are each a "person" for purposes of 42 U.S.C. § 1983.

29.	At all times pertinent hereto, ACHS and Regalado were acting under color of state law.

30.	ACHS was charged with implementing and assisting in developing the policies of the Tulsa County Sheriff's Department with respect to the medical and mental health care of inmates at the Tulsa County Jail and has shared responsibility to adequately train and supervise its employees. Sheriff Regalado is the current office holder as the Sheriff of Tulsa County and is in charge of the Tulsa Jail and is accordingly sued in his official capacity.

31.	There is an affirmative link between the deprivation of Plaintiff's right to be free of cruel and unusual punishment and the policies, practices and/or customs that Tulsa County Jail and ACHS promulgated, created, implemented and/or possessed responsibility for.

32.	Such policies, practices and/or customs include, but are not limited to:

a.	The failure to promulgate, implement or enforce adequate mental health policies responsive to the serious medical needs of inmates like Plaintiff.

b.	Inadequate medical triage screening that fails to identify inmates with serious medical or mental health needs;

c.	Severe limitation of the use of off-site medical, mental health and diagnostic service providers, even in emergency situations;

d.	Untimely medical and mental health examinations and treatment;

e.	Understaffing the medical unit; and

8

f. The failure to adequately train ACHS and Tulsa County Jail employees and/or agents with respect to the proper assessment, classification and treatment of inmates with serious needs.

33. Defendants knew it was obvious that the maintenance of the aforementioned policies, practices and/or customs posed an excessive risk to the health and safety of inmates like Plaintiff.

34. Defendants tacitly encouraged, ratified, and/or approved of the acts and/or omissions alleged herein, knew and/or it was obvious that such conduct was unjustified and would result in violations of constitutional rights, and was deliberately indifferent to the serious medical and mental health needs of inmates.

35. As a direct and proximate result of unlawful policies, practices and/or customs, Plaintiff has suffered injuries and damages as alleged herein.

36. That pursuant to 42 U.S.C. § 1983, Plaintiff's constitutional rights should be vindicated.

37. Defendant Glanz has acted with conscious disregard to the federally secured rights of Plaintiff and as such, punitive damages in excess of $10,000.00 should be assessed against them.

38. As a result of Defendants' conduct, Plaintiff has suffered actual damages in excess of $75,000.00.

39. Plaintiff has incurred attorney fees and costs pursuing this matter and pursuant to 42 U.S.C. § 1988 Plaintiff should be reimbursed a reasonable award of attorney fees and costs.

40.     In the event that actual damages are not provable, nominal damages should be issued as a means to redress the civil rights of Plaintiff.

## COUNT II  OKLAHOMA CONSTITUTION – BOSH CLAIM
### (As to Defendant BCCTC and ACHS)

41.     Plaintiff re-alleges and incorporates by reference the above paragraphs as though fully set forth herein.

42.     Prior to filing this action, Plaintiff fully exhausted his rights pursuant to the Oklahoma Governmental Tort Claims Act, 51 O.S. § 151 *et. seq.* (OGTCA).

43.     As a result of the negligence of Defendants BCCTC and ACHS, Plaintiff sustained damages.

44.     Defendants BCCTC and ACHS owed a duty to Plaintiff, and all other inmates in custody, to use reasonable care to provide inmates in need of medical attention with appropriate assessment, classification and treatment of inmates with serious needs.

45.     As a direct and proximate cause of the negligence of BCCTC and ACHS, Plaintiff has suffered damages, in excess of $75,000.00.

46.     Plaintiff re-alleges and incorporates by reference the above paragraphs as though fully set forth herein.

47.     Additionally, and/or alternatively, Defendants BCCTC and ACHS violated Plaintiff's rights under the Oklahoma Constitution, and a cause of action exists pursuant to Bosh v. Cherokee County Building Authority, 2013 OK 9, 305 P.3d 994, for violating Plaintiff's rights under Art. 2, § 30 of the Oklahoma Constitution.

48. Defendant Regalado has waived any applicable immunity under the OGTCA and therefore a <u>Bosh</u> claim is not alleged as to him.

WHEREFORE, Plaintiff requests an award of actual damages in excess of $75,000.00 against all Defendants, an award of punitive damages against Defendant Glanz in excess of $10,000.00, the costs of this action, pre and post judgment interest, reasonable attorney fees and costs, that Defendants be jointly and severally liable, and any other and further relief that this Court deems proper.

Brendan M. McHugh, OBA #18422
Attorney for Plaintiff
P.O. Box 1392
Claremore, OK 74018
Tele: (918) 608-0111
Fax: (918) 803-4910
and
Dana Jim, OBA #19495
P.O. Box 1011
Vinita, OK 74301
Tele: 918-457-6626
Fax: 918-517-3431
Co-Counsel for Plaintiff

11

## CERTIFICATE OF DELIVERY

This is to certify that the above document was mailed and delivered, postage prepaid, on this 14 day of August 2019 to:

Matthew Kehoe
500 S Denver, Ste 900
Tulsa, OK 74103
Attorney for Defendant Board of County Commissioners

Sean Snider
9801 N. Broadway Extension
Oklahoma City, OK 73114
Attorney for Defendant Armor Correctional Health Services, Inc.

Dana Jim



# OKLAHOMA
State Courts Network

The information on this page is NOT an official record. Do not rely on the correctness or completeness of this information. Verify all information with the official record keeper. The information contained in this report is provided in compliance with the Oklahoma Open Records Act, 51 O.S. 24A.1. Use of this information is governed by this act, as well as other applicable state and federal laws.

## IN THE DISTRICT COURT IN AND FOR TULSA COUNTY, OKLAHOMA

JOSHAWA CESSOR,
    Plaintiff,

v.

BOARD OF COUNTY COMMISIONERS,
    Defendant, and

ARMOR CORRECTIONAL HEALTH SERVICES INC,
    Defendant, and

STANLEY GLANZ,
    Defendant, and

VIC REGALADO,
    Defendant.

**No. CJ-2018-4673**
**(Civil relief more than $10,000: NEGLIGENCE (GENERAL))**

Filed: 11/13/2018

Judge: Civil Docket B

## PARTIES

ARMOR CORRECTIONAL HEALTH SERVICES INC, Defendant
BOARD OF COUNTY COMMISIONERS, Defendant
CESSOR, JOSHAWA, Plaintiff
GLANZ, STANLEY, Defendant
REGALADO, VIC, Defendant

## ATTORNEYS

| Attorney | Represented Parties |
|---|---|
| Kehoe, Matthew Steven (Bar #22615)<br>Assistant District Attorney<br>500 S. Denver, Ste. 900<br>Tulsa, OK 74103 | BOARD OF COUNTY COMMISIONERS, |
| Mc Hugh, Brendan M (Bar #18422)<br>PO BOX 1392<br>CLAREMORE, OK 74017 | CESSOR, JOSHAWA |
| SNIDER, SEAN P (Bar #22307)<br>JOHNSON HANAN AND VOSLER<br>9801 N BROADWAY EXTENSION<br>OKLA CITY, OK 73114 | ARMOR CORRECTIONAL HEALTH SERVICES INC, |

**EXHIBIT D**

**Attorney**

Winter, Anthony C (Bar #32148)
Johnson Hanan and Vosler
9801 N Broadway Ext
Oklahoma City, OK 73114

**Represented Parties**

ARMOR CORRECTIONAL HEALTH SERVICES INC,

# EVENTS

| Event | Party | Docket | Reporter |
|---|---|---|---|
| Tuesday, July 30, 2019 at 11:00 AM | | Civil Docket B | |
| MOTION TO AMEND BRENDAN MCHUGH REP PL MATTHEW KEHOE REP DF | | | |

# ISSUES

For cases filed before 1/1/2000, ancillary issues may not appear except in the docket.

**Issue # 1.**      Issue: NEGLIGENCE (GENERAL) (NEGL)
Filed By: CESSOR, JOSHAWA
Filed Date: 11/13/2018

| Party Name | Disposition Information |
|---|---|
| **Defendant:** | |
| BOARD OF COUNTY COMMISIONERS | |
| **Defendant:** | |
| ARMOR CORRECTIONAL HEALTH SERVICES INC | |
| **Defendant:** GLANZ, STANLEY | |
| **Defendant:** REGALADO, VIC | |

# DOCKET

| Date | Code | Description | Count | Party | Amount |
|---|---|---|---|---|---|
| 11-13-2018 | TEXT | CIVIL RELIEF MORE THAN $10,000 INITIAL FILING. | 1 | | |
| 11-13-2018 | NEGL | NEGLIGENCE (GENERAL) | | | |
| 11-13-2018 | DMFE | DISPUTE MEDIATION FEE | | | $ 7.00 |
| 11-13-2018 | PFE1 | PETITION<br>Document Available (#1041734926) 📄TIFF  📄PDF | | | $ 163.00 |
| 11-13-2018 | PFE7 | LAW LIBRARY FEE | | | $ 6.00 |
| 11-13-2018 | OCISR | OKLAHOMA COURT INFORMATION SYSTEM REVOLVING FUND | | | $ 25.00 |
| 11-13-2018 | OCJC | OKLAHOMA COUNCIL ON JUDICIAL COMPLAINTS REVOLVING FUND | | | $ 1.55 |

| Date | Code | Description | Count | Party | Amount |
|------|------|-------------|-------|-------|--------|
| 11-13-2018 | OCASA | OKLAHOMA COURT APPOINTED SPECIAL ADVOCATES | | | $ 5.00 |
| 11-13-2018 | SSFCHSCPC | SHERIFF'S SERVICE FEE FOR COURTHOUSE SECURITY PER BOARD OF COUNTY COMMISSIONER | | | $ 10.00 |
| 11-13-2018 | CCADMINCSF | COURT CLERK ADMINISTRATIVE FEE ON COURTHOUSE SECURITY PER BOARD OF COUNTY COMMISSIONER | | | $ 1.00 |
| 11-13-2018 | CCADMIN0155 | COURT CLERK ADMINISTRATIVE FEE ON $1.55 COLLECTION | | | $ 0.16 |
| 11-13-2018 | SJFIS | STATE JUDICIAL REVOLVING FUND - INTERPRETER AND TRANSLATOR SERVICES | | | $ 0.45 |
| 11-13-2018 | DCADMIN155 | DISTRICT COURT ADMINISTRATIVE FEE ON $1.55 COLLECTIONS | | | $ 0.23 |
| 11-13-2018 | DCADMIN05 | DISTRICT COURT ADMINISTRATIVE FEE ON $5 COLLECTIONS | | | $ 0.75 |
| 11-13-2018 | DCADMINCSF | DISTRICT COURT ADMINISTRATIVE FEE ON COURTHOUSE SECURITY PER BOARD OF COUNTY COMMISSIONER | | | $ 1.50 |
| 11-13-2018 | CCADMIN04 | COURT CLERK ADMINISTRATIVE FEE ON COLLECTIONS | | | $ 0.50 |
| 11-13-2018 | LTF | LENGTHY TRIAL FUND | | | $ 10.00 |
| 11-13-2018 | SMF | SUMMONS FEE (CLERKS FEE) | | | $ 20.00 |
| 11-13-2018 | SMIP | SUMMONS ISSUED - PRIVATE PROCESS SERVER | | | |
| 11-13-2018 | CNOTE | CASE IS A REFILE OF CASE #CJ-16-2442 | | | |
| 11-13-2018 | EAA | ENTRY OF APPEARANCE Document Available (#1042258680) 📄TIFF 📄PDF | | CESSOR, JOSHAWA | |
| 11-13-2018 | TEXT | OCIS HAS AUTOMATICALLY ASSIGNED JUDGE FITZGERALD, MARY TO THIS CASE. | | | |
| 11-13-2018 | ADJUST | ADJUSTING ENTRY: MONIES DUE TO AC09-CARD ALLOCATION | | | $ 6.31 |

| Date | Code | Description | Count | Party | Amount |
|------|------|-------------|-------|-------|--------|

11-13-2018 ACCOUNT — ADJUSTING ENTRY: MONIES DUE TO THE FOLLOWING AGENCIES REDUCED BY THE FOLLOWING AMOUNTS:
CJ-2018-4673: AC88 SHERIFF'S SERVICE FEE FOR COURT HOUSE SECURITY -$0.25
CJ-2018-4673: AC81 LENGTHY TRIAL FUND -$0.25
CJ-2018-4673: AC79 OCIS REVOLVING FUND -$0.63
CJ-2018-4673: AC67 DISTRICT COURT REVOLVING FUND -$0.07
CJ-2018-4673: AC65 STATE JUDICIAL REVOLVING FUND, INTERPRETER SVCS -$0.02
CJ-2018-4673: AC64 DISPUTE MEDIATION FEES CIVIL ONLY -$0.18
CJ-2018-4673: AC59 COUNCIL ON JUDICIAL COMPLAINTS REVOLVING FUND -$0.04
CJ-2018-4673: AC58 OKLAHOMA COURT APPOINTED SPECIAL ADVOCATES -$0.13
CJ-2018-4673: AC31 COURT CLERK REVOLVING FUND -$0.05
CJ-2018-4673: AC23 LAW LIBRARY FEE CIVIL AND CRIMINAL -0.15
CJ-2018-4673: AC01 CLERK FEES -$4.54

11-13-2018 ACCOUNT — RECEIPT # 2018-3853584 ON 11/13/2018.
PAYOR: DANA G JIM TOTAL AMOUNT PAID: $ 252.14.
LINE ITEMS:
CJ-2018-4673: $178.46 ON AC01 CLERK FEES.
CJ-2018-4673: $6.31 ON AC09 CARD ALLOCATIONS.
CJ-2018-4673: $5.85 ON AC23 LAW LIBRARY FEE CIVIL AND CRIMINAL.
CJ-2018-4673: $1.61 ON AC31 COURT CLERK REVOLVING FUND.
CJ-2018-4673: $4.87 ON AC58 OKLAHOMA COURT APPOINTED SPECIAL ADVOCATES.
CJ-2018-4673: $1.51 ON AC59 COUNCIL ON JUDICIAL COMPLAINTS REVOLVING FUND.
CJ-2018-4673: $6.82 ON AC64 DISPUTE MEDIATION FEES CIVIL ONLY.
CJ-2018-4673: $0.43 ON AC65 STATE JUDICIAL REVOLVING FUND, INTERPRETER SVCS.
CJ-2018-4673: $2.41 ON AC67 DISTRICT COURT REVOLVING FUND.
CJ-2018-4673: $24.37 ON AC79 OCIS REVOLVING FUND.
CJ-2018-4673: $9.75 ON AC81 LENGTHY TRIAL FUND.
CJ-2018-4673: $9.75 ON AC88 SHERIFF'S SERVICE FEE FOR COURT HOUSE SECURITY.

11-19-2018 CTFREE — FITZGERALD, MARY: TRANSFER ORDER ISSUED TO JUDGE KUEHN

| Date | Code | Description | Count | Party | Amount |
|------|------|-------------|-------|-------|--------|
| 11-27-2018 | O | TRANSFER ORDER ( TO JUDGE KUEHN - REFILE OF CJ-16-2442)<br>Document Available (#1042263276) 📄TIFF 📄PDF | | | |
| 11-30-2018 | AMP | FIRST AMENDED PETITION / A TO J<br>Document Available (#1042299880) 📄TIFF 📄PDF | | CESSOR, JOSHAWA | |
| 02-09-2019 | TEXT | ADMINISTRATIVELY REASSIGNED BY AOC MIS PER HELP DESK CONTACT HD81002 | | | |
| 04-02-2019 | DWOP | PLAINTIFF'S PARTIAL DISMISSAL WITHOUT PREJUDICE<br>Document Available (#1043385506) 📄TIFF 📄PDF | | | |
| 04-25-2019 | CM | CERTIFICATE OF MAILING / FIRST AMENDED PETITION, SUMMONS, ENTRY OF APPEARANCE AND PLAINTIFF'S PARTIAL DISMISSAL WITHOUT PREJUDICE<br>Document Available (#1043526141) 📄TIFF 📄PDF | | CESSOR, JOSHAWA | |
| 04-29-2019 | EAA | ENTRY OF APPEARANCE / MATT KEHOE ENTERING AS COUNSEL / CERTIFICATE OF MAILING<br>Document Available (#1043397815) 📄TIFF 📄PDF | | BOARD OF COUNTY COMMISIONERS | |
| 04-29-2019 | MOD | DEFENDNAT BOARD OF COUNTY COMMISSIONERS OF TULSA COUNTY'S MOTION TO DISMISS / A TO J / CERTIFICATE OF MAILING<br>Document Available (#1043397819) 📄TIFF 📄PDF | | BOARD OF COUNTY COMMISIONERS | |
| 05-01-2019 | EAA | DEFENDANT ARMOR CORRECTIONAL HEALTH SERVICES INC'S SPSECIAL ENTRY OF APPEARANCE AND MOTION TO DISMISS / SEAN P SNIDER AND ANTHONY C WINTER ENTERING AS COUNSEL /<br>Document Available (#1043528023) 📄TIFF 📄PDF | | ARMOR CORRECTIONAL HEALTH SERVICES INC | |
| 05-01-2019 | EAA | SPECIAL ENTRY OF APPEARANCE / COVER SHEET<br>Document Available (#1043528011) 📄TIFF 📄PDF | | ARMOR CORRECTIONAL HEALTH SERVICES INC | |
| 05-01-2019 | EAA | SPECIAL ENTRY OF APPEARANCE / COVER SHEET<br>Document Available (#1043528007) 📄TIFF 📄PDF | | ARMOR CORRECTIONAL HEALTH SERVICES INC | |
| 05-15-2019 | MO | PLAINTIFF'S MOTION FOR LEAVE TO FILE SECOND AMENDED PETTITION / CERTIFICATE OF DELIVERY<br>Document Available (#1043759008) 📄TIFF 📄PDF | | CESSOR, JOSHAWA | |
| 05-16-2019 | NO | PLAINTIFF'S NOTICE TO COURT / CERTIFICATE OF DELIVERY<br>Document Available (#1043758610) 📄TIFF 📄PDF | | CESSOR, JOSHAWA | |

| Date | Code | Description | Count | Party | Amount |
|------|------|-------------|-------|-------|--------|
| 06-03-2019 | RESP | DEFENDANT ARMOR CORRECTIONAL HEALTH SERVICES INC'S RESPONSE TO PLAINTIFF'S MOTION TO AMEND<br>Document Available (#1044076937) 📄TIFF  📄PDF | | ARMOR CORRECTIONAL HEALTH SERVICES INC | |
| 06-25-2019 | CTFREE | DRUMMOND, DOUG: PLS MOTION TO AMEND IS SET ON 7-30-2019 AT 11:00. NOTICES SENT TO BRENDAN MCHUGH, DANA JIM, MATHEW KEHOE, SEAN SNIDER | | | |
| 06-25-2019 | NOH | NOTICE OF HEARING / AFFIDAVIT OF MAILING<br>Document Available (#1044087137) 📄TIFF  📄PDF | | | |
| 07-30-2019 | CTFREE | DRUMMOND, DOUG: MOTION TO AMEND HELD, BRENDAN MCHUGH PRESENT FOR PL, MATTHE KENOE PRESENT FOR DF, ANTHONY WINTER PRESENT FOR ARMOR. DECISION TAKEN UNDER ADVISEMENT | | | |
| 07-31-2019 | O | ORDER / SECOND AMENDED PETITION TO BE FILED GRANTED -- SHOULD BE FILED WITHIN 10 DAYS OF THIS ORDER / DEFS' MOTION TO DISMISS MAY BE RESUBMITTED OR SUPPLEMENTE WITH IN 30 DAY OF THIS ORDER / PARTIES MUST SUBMIT SHCEDUILING ORDER WITHIN 45 DAYS OF THIS ORDER / AFFIDAVIT OF MAILING<br>Document Available (#1044483730) 📄TIFF  📄PDF | | | |

| Date | Code | Description | Count | Party | Amount |
|------|------|-------------|-------|-------|--------|
| 07-31-2019 | CTFREE | DRUMMOND, DOUG: ORDER ENTERED/ THE TRIAL COURT'S DISCRETION REGARDING WHETHER TO ALLOW AN AMENDMENT IS LIMITED BY 12 O.S. § 2015, WHICH REQUIRES THAT LEAVE TO AMEND BE GIVEN IF JUSTICE REQUIRES. IT ALSO IS CLEAR THAT A COURT MAY DENY LEAVE IF THE LEAVE TO AMEND IS BASED ON: 1) UNDUE DELAY; 2) BAD FAITH OR DILATORY MOTIVE BY THE MOVANT; 3) REPEATED FAILURE TO CURE DEFICIENCIES BY AMENDMENTS PREVIOUSLY ALLOWED; 4) UNDUE PREJUDICE TO THE OPPOSING PARTY; OR 5) FUTILITY OF AMENDMENT. CITY OF BLACKWELL V. WOODERSON, 2017 OK CIV APP 33, ¶ 5, 397 P.3D 491, 494. THE DEFENDANT ARGUES THAT THE AMENDMENT CAUSES (1) UNDUE DELAY, (2) POINTS OUT THE PLAINTIFF'S REPEATED FAILURE TO CURE DEFICIENCIES BY AMENDMENTS PREVIOUSLY ALLOWED AND (3) THE "FUTILITY" OF THE PROPOSED AMENDMENT. THOSE ARE MOST CERTAINLY LEGITIMATE ARGUMENTS, BUT, IN THE INTEREST OF JUSTICE, THE COURT WILL GRANT LEAVE TO FILE THE SECOND AMENDED PETITION. THE AMENDED PETITION SHOULD BE FILED WITHIN 10 DAYS FROM THE DATE OF THIS ORDER. THE DEFENDANTS' RESPECTIVE MOTIONS TO DISMISS MAY BE RESUBMITTED AND/OR SUPPLEMENTED WITHIN 30 DAYS FROM THE DATE OF THIS ORDER AND THE PLAINTIFF WILL HAVE 14 DAYS TO RESPONSE ONCE THE MOTIONS/SUPPLEMENTS ARE FILED. THE PARTIES ALSO MUST SUBMIT A SCHEDULING ORDER WITHIN 45 DAYS OF THE DATE OF THIS ORDER. NOTICES SENT TO BRENDAN MCHUGH, DANA JAM, MATTHEW KEHOE, SEAN SNIDER | | | |
| 08-14-2019 | AMP | SECOND AMENDED PETITION Document Available (#1044709915) 📄TIFF 📄PDF | | CESSOR, JOSHAWA | |


*1042258680*

# IN THE DISTRICT COURT OF TULSA COUNTY
## STATE OF OKLAHOMA

JOSHAWA CESSOR,     )
                       )

    Plaintiff,      )

**DANA LYNN KUEHN**

v.              )  Case No.  **CJ-2018-04673**

BOARD OF COUNTY COMMISIONERS   )
OF TULSA COUNTY, a political sub-   )  Refiled from Case No. CJ-2016-2442
division and municipal corporation;   )
and                      )  <u>**ATTORNEY LIEN CLAIMED**</u>
ARMOR CORRECTIONAL HEALTH    )  <u>**JURY TRIAL DEMANDED**</u>
SERVICES, INC., a foreign corporation,  )
                       )

    Defendants.     )

## <u>ENTRY OF APPEARANCE</u>

COMES NOW Brendan M. McHugh and Dana Jim and hereby enters their

appearance as attorneys of record in the above captioned matter for the Plaintiff, Joshawa

Cessor.

Brendan M. McHugh, OBA #18422
Attorney for Plaintiff
P.O. Box 1392
Claremore, OK 74018
Tele:(918) 608-0111
Fax: (918) 803-4910
Email: brendan@lawinok.com

and

Dana Jim, OBA #19495
P.O. Box 1011

**EXHIBIT E**

Vinita, Oklahoma 74301
Tele: (918) 457-6626
Fax: (918) 517-3431
Email: danajimlaw@gmail.com
Co-Counsel for Plaintiff



# IN THE DISTRICT COURT OF TULSA COUNTY, STATE OF OKLAHOMA

Joshawa Cessor )
Plaintiff, )
)
vs. )
)
Board of County Commissioners )
Defendant. )

Case No. CS 18 4623

DISTRICT COURT
F I L E D

NOV 27 2018

DON NEWBERRY, Court Clerk
STATE OF OKLA. TULSA COUNTY

## TRANSFER ORDER

For good cause shown, the above styled and numbered case is hereby
TRANSFERRED to the Presiding Judge

Refiling of CS 16 2442
(Reason) for Transfer)

RULE CV 2. (Check the following if applicable):

☐ 1. Transfer made pursuant to 12 O.S. §83

☐ 2. Refile of case as stated in Rule CV 1 (2)

☐ 3. Case transferred to Special Judges

☐ 4. Case consolidation for discovery purposes only

☐ 5. Transfer only for trial where both transferring and
receiving judges agree that this rule shall not apply.

TRANSFERRING JUDGE                    Dated: _____

This case is hereby assigned to Judge Kuehn

PRESIDING JUDGE                    Date Received: 11-20-18

## CERTIFICATE OF MAILING

I, Sally Howe Smith, Court Clerk of Tulsa County, hereby certify that on the 19 day of Nov
2018, a true and correct copy of the foregoing Order was mailed to each of the attorneys listed below.

Brendan McHugh PO Box 1392 Claremore OK 74017

EXHIBIT F

Sally Howe Smith, Court Clerk
Rebecca



# IN THE DISTRICT COURT OF TULSA COUNTY
## STATE OF OKLAHOMA



DISTRICT COURT
**F I L E D**

APR 0 2 2019

DON NEWBERRY, Court Clerk
STATE OF OKLA. TULSA COUNTY

JOSHAWA CESSOR, )
)
Plaintiff, )
)
v. ) Case No. CJ-2018-4673
)
BOARD OF COUNTY COMMISIONERS ) Re-filed from Case No. CJ-2016-2442
OF TULSA COUNTY, a political sub- )
division and municipal corporation; ) **ATTORNEY LIEN CLAIMED**
STANLEY GLANZ, individually; )
VIC REGALADO, in his official capacity; ) **JURY TRIAL DEMANDED**
and ARMOR CORRECTIONAL HEALTH )
SERVICES, INC., a foreign corporation, )
)
Defendants. )

## PLAINTIFF'S PARTIAL DISMISSAL WITHOUT PREJUDICE

COMES NOW the Plaintiff and dismisses without prejudice pursuant to

BARRIOS v. HASKELL COUNTY PUBLIC FACILITIES AUTHORITY; FOUTCH v.

TURN KEY HEALTH, 2018 OK 90, _____ P. 3d _____ (not yet released for

publication) his claims predicated on art. 2 §§ 7 & 9 of the Oklahoma

Constitution. Plaintiff still asserts his Bosh claim predicated on art. 2 § 30 of the

Oklahoma Constitution and all other claims set forth in his first amended petition.

Brendan M. McHugh, OBA #18422
Attorney for Plaintiff
P.O. Box 1392
Claremore, OK 74018
Tele:(918) 608-0111
Fax: (918) 803-4910
Attorneys for Plaintiffs

1

**EXHIBIT G**



# IN THE DISTRICT COURT OF TULSA COUNTY
## STATE OF OKLAHOMA

DISTRICT COURT
**F I L E D**

APR 2 5 2019

DON NEWBERRY, Court Clerk
STATE OF OKLA. TULSA COUNTY

JOSHAWA CESSOR, )
      )
    Plaintiff, )
      )
v. )
      )
BOARD OF COUNTY COMMISIONERS )
OF TULSA COUNTY, a political sub- )
division and municipal corporation; )
and )
ARMOR CORRECTIONAL HEALTH )
SERVICES, INC., a foreign corporation, )
      )
    Defendants. )

Case No. CJ-2018-4673

Refiled from Case No. CJ-2016-2442

## ATTORNEY LIEN CLAIMED
## JURY TRIAL DEMANDED

## CERTIFICATE OF MAILING

### I, Dana G. Jim, Attorney at Law, hereby certify:

1. That on the 9th day of April, 2019, I sent via certified mail, with sufficient postage prepaid thereon, in *Certified Mail No. 7016 1370 0001 5863 3627*, to Armor Correctional Health Services, Inc., c/o The Corporation Company, Registered Agent, 1833 South Morgan Road, Oklahoma City, OK 73128, a true and correct copy of the First Amended Petition, Summons, Entry of Appearance, and Plaintiff's Partial Dismissal Without Prejudice.

2. The said documents named in Paragraph 1 were received by Armor Correctional Health Services, Inc. by and their Registered Agent on April 11, 2019, as indicated on the U.S. Mail Domestic Return Receipt attached hereto in *Certified Mail No. 7016 1370 0001 5863 3627*. See Exhibit A.

DATED this _17_ day of April, 2019.

Brendan M. McHugh, OBA #18422
Attorney for Plaintiff
P.O. Box 1392
Claremore, OK 74018
Tele:(918) 608-0111
Fax: (918) 803-4910
Email: brendan@lawinok.com



EXHIBIT H

*Ex. A.*

**SENDER: COMPLETE THIS SECTION**

- ■ Complete items 1, 2, and 3.
- ■ Print your name and address on the reverse so that we can return the card to you.
- ■ Attach this card to the back of the mailpiece, or on the front if space permits.

**COMPLETE THIS SECTION ON DELIVERY**

A. Signature

X _Pal_  ☐ Agent ☐ Addressee

B. Received by (Printed Name)   C. Date of Delivery

_Adelia Maell_   APR 2015

1. Article Addressed to:

_Armor Correctional Health_
_Services, Inc._
_c/o The Corporation Company Registered Agent_
_1833 South Morgan Road_
_Oklahoma City, OK 73128_

D. Is delivery address different from item 1? ☐ Yes
   If YES, enter delivery address below: ☐ No

‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖
9590 9402 2433 6249 1102 92

3. Service Type
☐ Adult Signature
☐ Adult Signature Restricted Delivery
☐ Certified Mail®
☒ Certified Mail Restricted Delivery
☐ Collect on Delivery
☐ Collect on Delivery Restricted Delivery

☐ Priority Mail Express®
☐ Registered Mail™
☐ Registered Mail Restricted Delivery
☐ Return Receipt for Merchandise
☐ Signature Confirmation™
☐ Signature Confirmation Restricted Delivery

2.  7016 1370 0001 5863 3627   ☐ Restricted Delivery (over $500)

PS Form **3811**, July 2015 PSN 7530-02-000-9053   Domestic Return Receipt

## IN THE DISTRICT COURT OF TULSA COUNTY
## STATE OF OKLAHOMA

JOSHAWA CESSOR,                           )
                                          )
    Plaintiff,         )
                                          )
v.                                        )  **CJ-2018-04673**
                                          )  Case No. CJ-2018-
BOARD OF COUNTY COMMISIONERS              )
OF TULSA COUNTY, a political sub-         )  Refiled from Case No. CJ-2016-2442
division and municipal corporation;       )
and                                       )  **ATTORNEY LIEN CLAIMED**
ARMOR CORRECTIONAL HEALTH                 )  **JURY TRIAL DEMANDED**
SERVICES, INC., a foreign corporation,    )
                                          )
    Defendants.        )

## SUMMONS

To:  ARMOR CORRECTIONAL HEALTH SERVICES, INC.

    You have been sued by the above-named Plaintiff and you are directed to file a written answer to the attached Petition in the court at the above address within twenty (20) days after service of this Summons upon you, exclusive of the day of service. Within the same time, a copy of your answer must be delivered or mailed to the attorney for the Plaintiff.

    Unless you answer the Petition within the time stated, judgment will be rendered against you with costs of action.

Issued this _13_ day of _11_____, 2018.

(Seal)

**DON NEWBERRY, DISTRICT COURT CLERK**

By _____

Name:    Attorney for Plaintiff
Address:  BRENDAN M. MCHUGH
      P.O. BOX 1392
      CLAREMORE, OK 74018
Telephone:  (918) 608-0111

_____
Attorney for Plaintiff

## YOU MAY SEEK THE ADVICE OF AN ATTORNEY ON ANY MATTER CONNECTED WITH THIS SUIT OR YOUR ANSWER. SUCH ATTORNEY SHOULD BE CONSULTED IMMEDIATELY SO THAT AN ANSWER MAY BE FILED WITHIN THE TIME LIMIT STATED IN THE SUMMONS.




# IN THE DISTRICT COURT IN AND FOR TULSA COUNTY
## STATE OF OKLAHOMA

JOSHAWA CESSOR,                              )
                                             )
         Plaintiff,                          )
                                             )
vs.                                          )            **Case No. CJ-2018-4673**
                                             )            **Civil Docket B**
                                             )
BOARD OF COUNTY COMMISSIONERS                )
OF TULSA COUNTY, and                         )            DISTRICT COURT
ARMOR CORRECTIONAL HEALTH                    )            **F I L E D**
SERVICES, INC,                               )
                                             )            APR 2 9 2019
         Defendants.                         )
                                                          DON NEWBERRY, Court Clerk
                                                          STATE OF OKLA. TULSA COUNTY

## ENTRY OF APPEARANCE

Comes now undersigned counsel, who enters on behalf of Defendant Board of County

Commissioners of Tulsa County.

Respectfully submitted,

Matt Kehoe, OBA No. 22615
Assistant District Attorney | Civil Division
TULSA COUNTY DISTRICT ATTORNEY'S OFFICE
500 S Denver Ave, Ste. 800
Tulsa, OK 74103
(918) 596 - 4856 | mkehoe@tulsacounty.org

## CERTIFICATE OF MAILING

I hereby certify that on _April 29_, 2019, I caused a true and correct copy of this
document to be placed in the U.S. mail, first class postage fully pre-paid, addressed to the
following:

Brendan McHugh,
P.O. Box 1392
Claremore, OK 74018
Attorney for Plaintiff

Matt Kehoe

EXHIBIT I





# IN THE DISTRICT COURT IN AND FOR TULSA COUNTY
## STATE OF OKLAHOMA

JOSHAWA CESSOR, )
)
    Plaintiff, )
)
vs. )           Case No. CJ-2018-4673
)           Civil Docket B
)
BOARD OF COUNTY COMMISSIONERS )
OF TULSA COUNTY, and )
ARMOR CORRECTIONAL HEALTH )
SERVICES, INC, )
)
    Defendants. )

DISTRICT COURT
**F I L E D**

APR 2 9 2019

DON NEWBERRY, Court Clerk
STATE OF OKLA. TULSA COUNTY

## DEFENDANT BOARD OF COUNTY COMMISSIONERS OF TULSA COUNTY'S MOTION TO DISMISS

**COMES NOW**, Board of County Commissioners of the County of Tulsa ("BOCC"), and,

pursuant to 12 O.S. § 2012(B)(6) and respectfully requests that the Court dismiss Plaintiff's

Amended Petition filed November 30, 2018. The allegations in the Amended Petition are based on

the acts or omissions of a sheriff's deputies and detention officers at the jail – for which the Tulsa

County Sheriff in his official capacity is answerable under the doctrine of *respondeat superior*, not

the BOCC. Plaintiff also fails to state a claim for which relief can be granted, as the BOCC is

statutorily immune from suit for his specific claims. In support of its motion, the BOCC submits

the following brief:

## I.
## INTRODUCTION

In his Amended Petition, Plaintiff alleges that after being arrested on an outstanding

warrant, his arm was broken by numerous unnamed Tulsa County deputies and former Sheriff

Stanley Glanz when he was placed in handcuffs at the jail. *See* Amended Petition, ¶ 10. Plaintiff

1



EXHIBIT J

further alleges that this injury was exacerbated by the negligence of jail employees in failing to timely seek treatment or provide adequate treatment. *Id.* at ¶¶ 10-11. He grounds his first claim on the Oklahoma Supreme Court's decision in *Bosh v. Cherokee County Governmental Building Authority*, 2013 OK 9, 305 P.3d 994, alleging that the actions of jail employees violated his rights under Article 2, § 30 of the Oklahoma Constitution[1]. *Id.* at ¶ 19. He bases his second claim on a common law theory of negligence. *Id.* at ¶¶ 26-28.

Plaintiff's claims must be dismissed. Pursuant to Oklahoma law, it is the Sheriff, not the BOCC, who is answerable under the doctrine of *respondeat superior* for the official actions of his deputies and detention officers. Plaintiff's claims made pursuant to the *Bosh* decision must be dismissed. The Legislature, in defining the parameters of governmental immunity, placed all tort causes of action against the State or its political subdivision, including "constitutional torts," within the scope of the Oklahoma Governmental Tort Claims Act's ("GTCA") provisions. Plaintiff's claim made pursuant to *Bosh* now clearly fall within the GTCA's grant of immunity for claims or losses arising from "the "[p]rovision, equipping, operation or maintenance of any prison, jail or correctional facility...." Likewise, Plaintiff's claims of negligence fall within this grant of immunity as well as the GTCA's grant of immunity for acts of an independent contractor and for failure to adopt or enforce any law, statute, regulation, or policy. Plaintiff fails to state a cognizable claim against the BOCC. Accordingly, his claims should be dismissed.

---

[1] Plaintiff had also alleged that his rights under Article 2, §§ 7 and 9 of the Oklahoma Constitution had been violated. On April 2, 2019, Plaintiff dismissed his claims based on Article 2, §§ 7 and 9 of the Oklahoma Constitution without prejudice.

## SHERIFF REGALADO, NOT THE BOCC, IS RESPONSIBLE
## FOR THE OFFICIAL ACTS OF HIS DEPUTY SHERIFFS AND DETENTION OFFICERS

Plaintiff impermissibly seeks to impose vicarious liability upon the BOCC for the acts of detention officers employed at the county jail. State law requires that the Sheriff answer for the acts and/or omissions of such detention personnel. 19 O.S. § 513 provides that **"[t]he Sheriff shall have the charge and custody of the jail of his county,** and all the prisoners in the same, **and shall keep such jail himself, or by his deputy or jailer, for whose acts he** and his sureties **shall be liable."** (Emphasis added). 19 O.S. § 547(A) further states that **"[t]he sheriff shall be responsible for the official acts of the undersheriff and deputy sheriffs."** (Emphasis added).

Suits against a county officer in his or her official capacity are expressly envisioned by 19 O.S. § 6[2] and 12 O.S. § 2025(D)(2);[3] furthermore, a suit against the sheriff in his official capacity is a suit against the county. *See Pellegrino v. State ex rel. Cameron University ex rel. Board of Regents of State,* 2003 OK 2, ¶ 5, 63 P.3d 535, 537 ("A suit against a governmental officer in his or her 'official capacity' is the same as a suit against the entity that the officer represents, and is an attempt to impose liability upon that entity"). *See also Speight v. Presley,* 2008 OK 99, ¶ 20, 203 P.3d 173 ("Suit against a government officer in his or her official capacity is actually a suit

---

[2]"When a judgment shall be rendered against the board of commissioners of any county, **or against any county officer in any action prosecuted by or against him in his official name,** where the same should be paid by the county, no execution shall issue upon the said judgment, but a tax sufficient to pay same shall be levied and collected in like manner as other county taxes, and when collected shall be paid by the county treasurer on the delivery of a proper receipt and the signing of an acknowledgment on the court record of said judgment, by the party in whose favor the judgment was rendered, or by his attorney of record, that same has been satisfied." 19 O.S. § 6 (emphasis added).
[3]"When a public officer sues or is sued in the official capacity of the public officer, the public officer may be described as a party by the official title of the public officer rather than by name; but the court may require the name of the public officer to be added." 12 O.S. § 2025(D)(2).

against the entity that the officer represents and is an attempt to impose liability upon the governmental entity").[4]

Pursuant to 19 O.S. §§ 513 and 547(A), vicarious liability claims, such as the one alleged by Plaintiff, must be brought against the county sheriff, not the board of county commissioners. The dicta in *Pelligrino* that "designating an employee in his or official capacity as a named defendant for this type of [governmental tort] claim is improper," and in *Speight* that "[d]esignating an employee in his or her official capacity as a named defendant ... is improper under the GTCA," should be ignored by this Court because neither *Pelligrino* nor *Speight* concerned a county sheriff's statutory liability for the official acts of his deputy or jailer under 19 O.S. §§ 513 and 547(A).

The above-mentioned dicta in *Pelligrino* and *Speight* arise from the admonition in 51 O.S. § 153(C) that: "In no instance shall an employee of the state or the political subdivision acting within the scope of his employment be named as a defendant." *Pelligrino* at ¶ 6, and *Speight* at ¶ 20. Rather than limiting their holding to the facts before them, which would have been all that was necessary to render decision, both Courts ventured into theoretical territory by declaring any "official capacity" suits improper under the GTCA. Clearly, however, neither opinion contemplated suits against the county based on the official acts of a sheriff's deputy or jailer, because both 19 O.S. §§ 513 and 547(A) expressly provide that the sheriff shall be responsible for the official acts of the deputies and shall be liable for the acts of his deputy or jailer.

The statutes imposing vicarious liability on the sheriff for the official acts of his deputies and jailers and the GTCA's admonition against suing employees acting within the scope of their

---

[4]*See also Lopez v. LeMaster*, 172 F.3d 756, 762 (10th Cir. 1999) (suit against Jackson County Sheriff in his official capacity is the equivalent of a suit against Jackson County, Oklahoma); *Kentucky v. Graham*, 473 U.S. 159, 165-67, n.14 (1985) (an official capacity "suit is, in all respects other than name, to be treated as a suit against the entity").

employment can be easily squared with one another. "The goal of the court is always to construe apparently conflicting legislative enactments dealing with the same subject together as a harmonious whole so as to give effect to each provision." *McNeill v. City of Tulsa*, 1998 OK 2, ¶ 9, 953 P.2d 329 (*citing Abbott v. Board of Trustees of Oscar Rose, Etc.*, 1978 OK 129, 586 P.2d 1098). When the county sheriff is sued vicariously in his "official capacity" under the doctrine of *respondeat superior*, he is not being sued for acts done by him within the scope of *his* employment, but rather, for acts done by one of his deputies or jailers in the scope of their employment. Moreover, when the party sued is the sheriff in his official capacity, it is not the county's employee that is being sued, but the county itself. *See Pellegrino*, at ¶ 5, and *Speight* at ¶ 20. Such lawsuits do not violate § 153(C)'s bar against naming employees acting within the scope of their employment as defendants.

The BOCC is not vicariously liable under the doctrine of *respondeat superior* for the acts of a deputy sheriff or jailer. Under Oklahoma law, the BOCC has "no statutory duty to hire, train, supervise or discipline the county sheriffs or their deputies." *Estate of Crowell ex. rel. Boen v. Board of County Commissioners of the County of Cleveland*, 2010 OK 5, ¶ 23, 237 P.3d 134, 142. "The District Attorney and the Sheriff are the only two [county] offices which involve *any* law enforcement duties." 1979 OK AG 98, ¶ 1 (emphasis added). "Boards of county commissioners derive their powers and authority wholly from the statutes, and acts performed by them must be done pursuant to authority granted by valid legislative action." *Tulsa Exposition & Fair Corp. v. Board of County Commissioners of Tulsa County*, 1970 OK 67, ¶ 27, 468 P.2d 501, 508.

Every deputy sheriff and detention officer is appointed to his or her job by the county sheriff and serves at the pleasure of the county sheriff. *See* 19 O.S. § 162 ("Every county officer ... appoint[s] such regular and special deputies as are essential to the performance of the duties of

[his or her] office"); 19 O.S. § 161 ("Deputy" means "employees appointed to assist a county officer in the performance of the official duties of the county officer"); and 19 O.S. § 547(A) (county sheriff "may revoke ... appointments [of the undersheriff and deputy sheriffs] at the pleasure of the sheriff; ... and detention officers shall serve a five-year probationary period during which the ... detention officer shall be considered an at-will employee"). The county sheriff is an independently elected county official, 19 O.S. § 131, duty-bound to preserve the public peace, 19 O.S. § 516, responsible for training the jailers who work at the county jail, 19 O.S. § 513.1, *responsible for the official acts of his undersheriff and deputy sheriffs*, 19 O.S. § 547(A), and *liable for the acts of his jailers,* 19 O.S. § 513.

The plaintiff in *Estate of Crowell ex rel. Boen v. Board of County Comm'rs of the County of Cleveland*, 2010 OK 5, ¶ 0, 237 P.3d 134, had sued both the Cleveland County Sheriff in his official capacity and the Board of County Commissioners of Cleveland County for alleged negligence and deliberate indifference under 42 U.S.C. § 1983 in tending to decedent's medical needs. Although judgments "were entered for all of the defendants on the issue of negligence," *id.* at fn. 12, plaintiff appealed the trial court's grant of summary judgment regarding her civil rights claim.

The Oklahoma Supreme Court in *Estate of Crowell* permitted the case to continue against the Cleveland County Sheriff in his official capacity, but as a matter of Oklahoma law it upheld the trial court's grant of summary judgment to the Board of County Commissioners:

> Upon review, we conclude the evidentiary material in the case at hand (1) demonstrates material facts are in dispute that preclude summary judgment in favor of the sheriff's employees on the issue of the deliberate indifference, and (2) circumstantial evidence supports a reasonable inference that the Sheriff, as the supervising authority, likewise acted with deliberate indifference.

We reach a different conclusion, however, concerning the personal representative's claims against the Board of County Commissioners of Cleveland County. Under Oklahoma law, the sheriff is the final policymaker for a county jail. *The sheriff, and not the board, is responsible for medical care in Oklahoma.* Also, the board of county commissioners is not liable under 42 U.S.C. § 1983 because the board has no statutory duty to hire, train, supervise, or discipline county sheriffs or deputies. Therefore, the summary judgment in favor of the Board of County Commissioners of Cleveland County was proper as a matter of law.

*Id.* at ¶¶ 22 and 23 (emphasis added).

*Speight v. Presley, supra*, adds further support to the BOCC's position. In *Speight*, the plaintiff brought suit under the GTCA against the Oklahoma County Court Clerk, alleging that the negligent maintenance of court files led to the issuance of a warrant for plaintiff's arrest. Plaintiff also sued the Board of County Commissioners under the doctrine of *respondeat superior*, despite the fact that the Board had no power to control the court clerk nor responsibility for the court clerk's judicial functions. The Court in *Speight* explained that the State of Oklahoma was the responsible entity under *respondeat superior* when it comes to the Clerk's performance of ministerial duties on behalf of the state court system, not the Board of County Commissioners:

> In the processing of traffic cases, [the Court] Clerk is acting as an arm of the [state] court system. The Board of County Commissioners is not part of the traffic court process nor do they have supervisory control over the district court clerk when engaged in that process. Neither is the Board the overseer of the Clerk's office with regard to court data that the Clerk inputs into the OCIS system. Plaintiffs have pointed to no provisions that reflect any involvement of the Board of County Commissioners in the district court clerk's performance of ministerial duties on behalf of the courts pursuant to Oklahoma law.
>
> \*     \*     \*
>
> Oklahoma law recognizes the application of the doctrine of respondeat superior to the Governmental Tort Claims Act. The respondeat superior rule rests on the premise that when exercising delegated authority, the employee stands under the complete control of the employer. *[The] Board [of County Commissioners] cannot be called upon to respond in damages under the doctrine of respondeat superior*

*for Clerk's performance of judicial functions which are neither the Board's responsibility, nor within the Board's power to control.*

*Speight* at ¶¶ 13 & 14, 203 P.3d at 176-77 (citations omitted and emphasis added).

Vicarious liability for the official acts of a deputy sheriff or jailer is established as a matter of Oklahoma law on the county sheriff. *See* 19 O.S. §§ 513 and 547(A). Accordingly, this Court should dismiss any and all claims brought in Plaintiff's Amended Petition against the BOCC based on *respondeat superior* arising from the official acts of any Tulsa County Sheriff's Office employees at the county jail (a/k/a detention personnel).

II.
## THE BOCC IS IMMUNE FROM PLAINTIFF'S CLAIM MADE PURUSANT TO *BOSH V. CHEROKEE COUNTY GOVERNMENTAL BUILDING AUTHORITY*

In *Vanderpool v. State*, the Oklahoma Supreme Court abrogated the judicially created **common law** doctrine of governmental immunity from tort suits. 1983 OK 82, 672 P.2d 1153. In doing so, it recognized that it was only abrogating the judicially created and recognized doctrine of governmental immunity and not rendering ineffective the Legislature's ability to establish governmental immunity and define its terms and conditions by statute. *Id.* at ¶ 26, 672 P.2d at 1157; *see also Fuller v. Odom*, 1987 OK 64, ¶ 3, 741 P.2d 449, 451; *Perry v. City of Norman*, 2014 OK 119, ¶ 13, 341 P.3d 689, 692.

The Legislature responded by explicitly adopting the doctrine of governmental immunity from tort suits. *See* 51 O.S. § 152.1(A)("The State of Oklahoma does hereby adopt the doctrine of sovereign immunity.")."The state, its political subdivisions, and all of their employees acting within the scope of their employment, whether performing governmental or proprietary functions, shall be immune from liability for torts." *Id.* The liability of a political subdivision under the GTCA is exclusive and constitutes the extent of its tort liability. *See* 51 O.S. § 153(B). The

GTCA's grant of immunity is waived *only* in the manner and to the extent provided for in the Act. *See* 51 O.S. § 152.1(B). Accordingly, in tort cases involving political subdivisions of the State, "the Court begins with the understanding that the [political subdivision] is immune from tort suit unless the Legislature has expressly waived that immunity." *Barrios v. Haskell County Public Facilities Authority*, 2018 OK 90, ¶ 8, 432 P.3d 233, 237; *see also State ex rel. Williamson v. Superior Court of Seminole County*, 1958 OK 52, ¶ 6, 323 P.2d 979, 981 ("It is fundamental that the State cannot be sued in any manner, or upon any liability, constitutional, statutory, or contractual, unless there is express consent thereto."); *State ex rel. Department of Highways v. McKnight*, 1972 OK 3, ¶ 34, 496 P.2d 775, 782 ("the statutes must clearly permit the state to be sued or the right to do so will not exist.").

In *Bosh v. Cherokee County Governmental Buildings Authority*, 2013 OK 9, 305 P.3d 994, the Court addressed a conflict between an exemption in the GTCA and Article 2, § 30 of the Oklahoma Constitution. Plaintiff, a pre-trial detainee, brought suit against the Cherokee County Governmental Building Authority based on allegations that jailers had attacked and beat him while he was handcuffed while awaiting to be booked into jail. 2013 OK 9, ¶¶ 2-3, 305 P.3d at 996. Plaintiff brought suit in federal court alleging a claim of excessive force under Article 2, § 30. *Id.* at ¶¶ 5-6, 305 P.3d at 997. In order to resolve the issue, the federal court certified three questions to the Oklahoma Supreme Court, the first involving whether a cause of action existed under Article 2, § 30 of the Oklahoma Constitution in spite of the provisions of the GTCA. *Id.* at ¶ 0, 305 P.3d at 995

In answering that question, the Court observed that the GTCA had expressly provided for immunity from liability arising from the operation of a jail pursuant to 51 O.S. § 155(25). *Id.* at ¶ 17, n. 28, 305 P.3d at 1000. It further observed that in its decision in *Washington v. Barry*, 2002

OK 45, 55 P.3d 1036, it held at a cause of action for prison inmates to recover for excessive force *may* exist under the provisions of Article 2, § 9 of the Oklahoma Constitution, and that same cause of action *may* also exist under Article 2, § 30 for pretrial detainees and arrestees, despite the GTCA's provisions. *Id.* at ¶¶ 18, 21-22, 305. P.3d 1000-1001. The Court, in conformance with its precedent, concluded that the GTCA could not be construed as "immunizing the state completely from all liability for violations of the constitutional rights of its citizens," and created a private cause of action for excessive force under Article 2, § 30, despite the limitations of the GTCA. *Id.* at ¶ 23, 305 P.3d 1001.

Much like it did after *Vanderpool*, the Legislature, in response to *Bosh*, amended the GTCA to redefine and clarify the boundaries of governmental immunity. Of particular relevance to Plaintiff's claims, it amended the definition of "tort" to "a legal wrong, independent of contract, involving violation of a duty imposed by general law, statute, *the Constitution of the State of Oklahoma*, or otherwise, resulting in a loss to any person, association or corporation as the proximate result of an act or omission of a political subdivision or the state or an employee acting within the scope of employment." Act of April 21, 2014, ch. 77, sec. 1, § 152(14), 2014 O.S.L. at 249 (codified at 51 O.S.Supp.2015 § 152(14))(emphasis added). When *Bosh* was decided, "tort" was defined by the GTCA as "a legal wrong, independent of contract, involving violation of a duty imposed by general law or otherwise, resulting in a loss to any person, association or corporation as the proximate result of an act or omission of a political subdivision or the state or an employee acting within the scope of employment." *See* 51 O.S.Supp.2010 § 152(14).

In *Barrios v. Haskell County Public Facilities Authority*, the Court was faced with determining whether or not the GTCA precluded suits based on violations of Article 2, §§ 7 and 9 of the Oklahoma Constitution. 2018 OK 90, ¶ 1, 432 P.3d at 235. The Court first observed that it

had "long recognized that the Legislature has the final say in defining the scope of the State's sovereign immunity from suit." *Barrios*, 2018 OK 90, ¶ 7, 432 P.3d 236-237. It also remarked that in its decision in *Vanderpool*, it had carefully noted that the Court "lacked power to withdraw immunity granted by legislative act." *Id.* (citing *Vanderpool*, 1983 OK 82, ¶ 24, 672 P.2d at 1157). The Court then looked to the text of the GTCA to determine "whether its limited waivers of sovereign immunity from tort suit encompass the particular tort at issue." *Barrios*, 2018 OK 90, ¶ 8, 432 P.3d at 237.

The Court pointed out that it had done just that in reaching its decision in *Bosh. Id.* It observed that the *Bosh* Court read the GTCA as "stopping short of 'immunizing the state completely from all liability for violations of the constitutional rights of its citizens.'" *Barrios*, 2018 OK 90, ¶ 9, 432 P.3d at 237 (citing *Bosh*, 2013 OK 9, ¶ 23, 305 P.3d at 1001.) It remarked that the text of the GTCA at the time it decided *Bosh* did not expressly include tort claims arising from alleged deprivations of rights guaranteed under the Oklahoma Constitution. *Id.* "Immunity cannot be read into a legislative text that is silent, doubtful, or ambiguous." *Gunn v. Consolidated Rural Water & Sewer District No. 1, Jefferson County*, 1992 OK 131, ¶ 7, 839 P.2d 1345, 1349. As the text of the GTCA did not expressly provide for immunity for those claims alleging a violation of Article 2, § 30, the *Bosh* Court recognized a **common law** tort remedy allowing suit for those claims. *Barrios*, 2018 OK 90, ¶ 9, n. 14, 432 P.3d at 238.

Just as it had in *Bosh*, the *Barrios* Court looked to the text of the GTCA to determine the contours of governmental liability enacted by the Legislature. 2018 OK 90, ¶ 10, 432 P.3d at 238. It specifically noted after *Bosh*, the Legislature had amended the definition of "tort" in the GTCA to include claims brought under the Oklahoma Constitution. *Id.* It also observed that in describing the scope of the State's tort liability, the Legislature had provided that the liability of the State

"under the [GTCA] shall be exclusive and shall constitute the extent of tort liability of the state, a political subdivision or employee arising from common law, statute, *the Oklahoma Constitution, or otherwise.*" *Id.* (citing Act of April 21, 2014, ch. 77, sec. 2, § 153(B), 2014 O.S.L. at 249 (codified at 51 O.S.Supp.2015 § 153(B))(emphasis added). It concluded that the Legislature's amendment specifying that the GTCA applies to tort suits alleging a violation of constitutional rights was an exercise in the Legislature's power to define the scope of the State's sovereign immunity. *Id.* Because "constitutional" torts now expressly fall within the GTCA's definition of tort, the Court concluded that the GTCA's specific grant of immunity in 51 O.S. § 155(25) barred plaintiff's claims under the Oklahoma Constitution. *Id.*

Plaintiff grounds his first claim in the Oklahoma Supreme Court's decision in *Bosh*, alleging that he was subjected to excessive force by TCSO deputies while he was incarcerated at the David L. Moss Criminal Justice Center. *See* Petition, ¶¶ 9-10, 15-16, 19. However, the *Bosh* decision can no longer support Plaintiff's claim against Tulsa County under the GTCA. As observed by the *Barrios* Court, the cause of action created in *Bosh* was not created by Article 2, § 30 itself, but rather by the Court through its common law power to create a cause of action. *See* 2018 OK 90, ¶ 9, n. 14, 432 P.3d at 238. By statutory mandate, the common law remains in full force in this state, unless a statute explicitly provides to the contrary. *See* 12 O.S. § 2. However, "the rule of the common law, that statutes in derogation thereof, shall be strictly construed, shall not be applicable to any general statute of Oklahoma; but all such statutes shall be liberally construed to promote their object." *Id.*; *see also Fuller*, 1987 OK 64, ¶¶ 4-5, 741 P.2d at 451-452. "Validly expressed legislative intent must *always* control over contrary notions of unwritten law." *Helderman v. Wright*, 2006 OK 86, n. 15, 152 P.3d 855 (emphasis added).

The Legislature, in an exercise of its power to define the boundaries of governmental immunity, expressly and unambiguously included claims made under the Oklahoma Constitution within the GTCA's definition of "tort." *See* 51 O.S. 152(14); *Barrios*, 2018 OK 90, ¶ 10, 432 P.3d at 238. The Legislature's expressed intent to include these claims within the GTCA's grant of immunity must control over any contrary common law determination of a court. *See* 12 O.S. § 2; *Helderman.* 2006 OK 86, n. 15, 152 P.3d 855. As "torts" under the GTCA now encompass "constitutional" torts, like the common law cause of action created in *Bosh*, those claims clearly fall within the GTCA's limits. *See* 51 O.S. §§ 152.1, 153(B). Plaintiff's claim alleging excessive use of force by deputies at the jail necessarily falls within § 155(25)'s provision exempting a loss or claim resulting from the "[p]rovision, equipping, operation or maintenance of any prison, jail or correctional facility...." The express language of the GTCA now clearly and explicitly does not permit Plaintiff to bring suit against the Tulsa County for this type of claim. *See Barrios*, 2018 OK 90, ¶ 8, 432 P.3d at 237; *McKnight*, 1972 OK 3, ¶ 34, 496 P.2d at 782; *Williamson*, 1958 OK 52, ¶ 6, 323 P.2d at 981. This Court lacks the power to "withdraw immunity granted by legislative act." *See Barrios*, 2018 OK 90, ¶ 7, 432 P.3d 237; *Vanderpool*, 1983 OK 82, ¶ 24, 672 P.2d at 1157. Accordingly, Plaintiff's claim made pursuant to *Bosh* must be dismissed.

III.
## THE BOCC IS IMMUNE FROM PLAINTIFF'S NEGLIGENCE CLAIM

As noted above, the State and its political subdivisions retain immunity from liability for certain claims or losses, as defined by statute. *See* 51 O.S. § 155. The State and its political subdivisions retain immunity from suit for losses or claims resulting from the "[p]rovision, equipping, operation or maintenance of any prison, jail or correctional facility...." 51 O.S. § 155(25); *see also Redding v. State*, 1994 OK 102, 822 P.2d 61 (State was immune from tort liability allegedly occurring during provision of medical care to a prisoner for injuries suffered during

prison softball game); *Medina v. State*, 1993 OK 21, 871 P.2d 1379 (state employee dispensing medicine to an inmate is an operative function of prison and State is exempt from liability under GTCA); *Purvey v. State*, 1995 OK 103, 905 P.2d 770 (claim of negligence based on prison officials issuing chain saws to prisoners on work program without proper training barred as an act performed in the operation of a penal institution); *State ex rel. Department of Corrections v. Burris*, 1995 OK 42, 894 P.2d 1122 (state immune from suit under this provision where plaintiff allegedly tripped over curb in visitor parking lot operated and maintained by prison).

Plaintiff alleges that the BOCC was negligent by inadequately treating or failing to treat Plaintiff's alleged injuries that occurred at the jail. *See* Amended Petition, ¶¶ 10-11, 27. However, his claims regarding negligent treatment of his alleged injuries or failure to treat his alleged injuries by the staff at the jail are necessarily claims resulting from the maintenance or operation of a jail. Thus, they fall within the specific exemption for losses or claims resulting from the "[p]rovision, equipping, operation or maintenance of any prison, jail or correctional facility...." 51 O.S. § 155(25). The BOCC is immune from liability under this provision of the GTCA for Plaintiff's claim. *See* 51 O.S. § 155(25).

Additionally, the BOCC is statutorily exempt from liability for the negligence of any Armor employee. Plaintiff alleges that Armor is a foreign corporation doing business in Tulsa County and was responsible for providing medical services and medication to Plaintiff while he was at the jail. *See* Amended Petition, ¶ 7. Pursuant to 51 O.S. § 155(18), the County shall not be liable if a loss or claim results from "[a]n act or omission of an independent contractor or consultant or his or her employees, agents, subcontractors or suppliers or of a person other than an employee of the [county] at the time the act or omission occurred." "Section 155(18) facially protects [the County] from liability flowing from the acts of its independent contractors." *Teeter v. City of*

14

*Edmond*, 2004 OK 5, ¶ 24, 85 P.3d 817, 824 (political subdivision entitled to summary judgment because § 155(18) of the GTCA precludes liability for the acts of an independent contractor). Thus, the BOCC is immune from suit for any alleged acts or omissions of Armor or its employees that resulted in injury to Plaintiff.

Plaintiff also appears to allege that the BOCC is liable for a number of allegedly deficient policies at the jail. *See* Amended Petition, ¶ 28. Pursuant to 51 O.S. § 155(4), the County shall not be liable if a loss or claim results from the "failure to adopt or enforce a law, whether valid or invalid, including, but not limited to, any statute, charter provision, ordinance, resolution, rule, regulation or written policy." *See GJA v. Oklahoma Department of Human Services*, 2015 OK CIV APP 32, ¶ 18, 347 P.3d 310, 314 (DHS was immune from liability under this section as plaintiff's allegations, viewed in a light most favorable to plaintiffs, only alleged that DHS failed to enforce law); *Felkins v. Oklahoma Firefighters Pension and Retirement System*, 2005 OK CIV APP 39, ¶ 13, 116 P.3d 195, 198 (OFPRS trustees were immune from suit under this subsection where plaintiffs alleged trustees failed to follow the law regarding certain military service retirement credits). Plaintiff's claims of negligence, as it relates to policies allegedly adopted or not adopted at the Jail regarding medical care clearly fall within this exemption. Therefore, the BOCC is statutorily immune from Plaintiff's claim. Plaintiff's negligence claim must be dismissed.

Respectfully submitted,

Matt Kehoe, OBA No. 22615
Assistant District Attorney | Civil Division
TULSA COUNTY DISTRICT ATTORNEY'S OFFICE
500 S Denver Ave, Ste. 800
Tulsa, OK 74103
(918) 596 - 4856 | mkehoe@tulsacounty.org

## CERTIFICATE OF MAILING

I hereby certify that on _April 29_, 2019, I caused a true and correct copy of this document to be placed in the U.S. mail, first class postage fully pre-paid, addressed to the following:

Brendan McHugh,
P.O. Box 1392
Claremore, OK 74018
Attorney for Plaintiff

Matt Kehoe



DISTRICT COURT
**F I L E D**

IN THE DISTRICT COURT FOR TULSA COUNTY MAY - 1 2019
STATE OF OKLAHOMA


DON NEWBERRY, Court Clerk
STATE OF OKLA. TULSA COUNTY

JOSHAWA CESSOR,    )
          )
  Plaintiff,     )
          )
v.         )  Case No. CJ-2018-4673
          )
BOARD OF COUNTY COMMISSIONERS )
OF TULSA COUNTY, a political subdivision )
and municipal corporation; and ARMOR )
CORRECTIONAL HEALTH SERVICES, )
INC., a foreign corporation,   )
          )
  Defendants.    )

## DEFENDANT ARMOR CORRECTIONAL HEALTH SERVICES, INC.'S SPECIAL ENTRY OF APPEARANCE AND MOTION TO DISMISS

COMES NOW, Defendant Armor Correctional Health Services, Inc. (hereinafter "Armor" or "Defendant") by and through the undersigned counsel, and specially appears solely for the purpose to move this Court to dismiss this action against said Defendant pursuant to 12 O.S. § 2012(B)(6) of the Oklahoma Pleading Code.

Defendant specifically reserves the right to assert all remaining defenses under the law, including, but not limited to, those enumerated in OKLA. STAT. tit. 12 § 2012(B). Furthermore, Defendant specifically reserves the right to answer Plaintiff's First Amended Petition and to assert all affirmative defenses including those enumerated in OKLA. STAT. tit. 12 § 2008(C), should this Motion be denied. In support thereof, Defendant respectfully states as follows:

## STATEMENT OF THE CASE

1. On July 5, 2016, Plaintiff commenced his original action in Tulsa County District Court as case number CJ-2016-2442; his original Petition named the Tulsa County Board of County Commissioners, former Tulsa County Sheriff Stanley Glanz, the Tulsa County Sheriff's

1



EXHIBIT K



Office, Tulsa County Sheriff Vic Regalado, an unknown employee of the Tulsa County Sheriff's Office, and Correctional Healthcare Management of Oklahoma, Inc. as defendants. *See* Exhibit 1, Plaintiff's Petition.

2.    On January 18, 2017, Defendant Regalado removed the original action, which originated in the Tulsa County District Court, to the United States District Court for the Northern District of Oklahoma. *See* Exhibit 2, Defendant Regalado's Notice of Removal.

3.    Defendant Regalado filed a Motion to Dismiss Plaintiff's Petition and in response, Plaintiff filed an Amended Complaint on March 8, 2017. *See* Exhibit 3, Plaintiff's First Amended Complaint.

4.    Subsequently, Plaintiff voluntarily dismissed his claims against all defendants on November 13, 2017. *See* Exhibit 4, Stipulation of Dismissal Without Prejudice.

5.    On November 13, 2018, Plaintiff refiled this action in Tulsa County District Court as case number CJ-2018-4673; naming only the Tulsa County Board of Commissioners and Armor Correctional Health Services, Inc. as Defendants. *See* Exhibit 5, Plaintiff's Petition.

6.    On November 30, 2018, Plaintiff filed an Amended Petition in this action in which he seems to assert a claim against this Defendant for negligence in providing Plaintiff medical care and treatment while he was incarcerated at the Tulsa County Jail. *See* Exhibit 6, Plaintiff's First Amended Petition.

7.    On April 2, 2019, Plaintiff voluntarily dismissed certain claims in his action. *See* Exhibit 7, Plaintiff's Partial Dismissal Without Prejudice.  With this in mind, Plaintiff does not appear to be asserting any claims based on the Oklahoma Constitution against this Defendant.

[Continued on next page]

2

# ARGUMENTS AND AUTHORITIES

Motions to dismiss are intended to test the law governing the claim or claims as opposed to the underlying facts. *Dani v. Miller*, 2016 OK 35, ¶ 10, 374 P.3d 779, 786-87 (Okla. 2016); *Indian Nat. Bank v. State of Oklahoma Dep't of Human Resources*, 880 P.2d 371, 375 (Okla. 1994) ("Generally, a petition may be dismissed as a matter of law for two reasons: 1) lack of any cognizable legal theory; or 2) insufficient facts under a cognizable legal theory."). In ruling on a motion to dismiss, the Court must limit its inquiry to the "well-pled" allegations in the petition, which are to be taken as true as well as the reasonable inferences drawn therefrom. *Fanning v. Brown*, 2004 OK 7, ¶ 4, 85 P.3d 841, 844; *Dill v. Rader*, 522 P.2d 650, 652 (Okla. Ct. App. 1975); *Miller v. Miller*, 1998 OK 24, ¶ 15, 956 P.2d 887, 894.

In evaluating the pleadings on a motion to dismiss, the Court should not credit legal conclusions and characterizations as factual allegations. Potential evidence that Plaintiff "might" present at trial must be ignored; the only proper assessment is whether the petition is legally sufficient to state a claim for which relief can be granted. *See Miller v. Glanz*, 948 F.2d 1562, 1565 (10th Cir. 1991), *aff'd* 989 F.2d 507 (10th Cir. 1991) ("The court's function on a Rule 12(b)(6) motion is not to weigh potential evidence that the parties might present at trial, but to assess whether the plaintiff's complaint alone is legally sufficient to state a claim for which relief may be granted."). Thus, a petition can properly be dismissed for lack of any cognizable legal theory or failure to plead sufficient facts under a cognizable legal theory. *Miller v. Miller*, at ¶ 15.

## PROPOSITION I: AS A STATUTORY EMPLOYEE OF THE STATE, DEFENDANT ARMOR IS IMMUNE FROM LIABILITY IN TORT PURSUANT TO THE OKLAHOMA GOVERNMENTAL TORT CLAIMS ACT.

Plaintiff's only identifiable claim against this Defendant must be dismissed as a matter of law because, under the Oklahoma Governmental Tort Claims Act ("GTCA"), Defendant is

considered an "employee" of the state and therefore is immune from liability in tort. The GTCA provides that "[t]he state, its political subdivisions, and <u>all of their employees</u> acting within the scope of their employment, whether performing governmental or proprietary functions, <u>shall be immune from liability</u>." OKLA. STAT. tit. 51, § 152.1(A) (emphasis added). Under the GTCA, the term "employee" includes "licensed medical professionals under contract with the city, county, or state entities who provide medical care to inmates or detainees in the custody or control of law enforcement agencies." OKLA. STAT. tit. 51, § 152(7)(b)(7).

Here, Plaintiff asserts a negligence claim against Armor, alleging that it failed to provide Plaintiff with prompt and adequate medical treatment. Exhibit 6, Plaintiff's First Amended Petition ¶¶ 28-29. Specifically, Plaintiff's allegations against this Defendant are in regards to jail physicians allegedly stating that it was impossible to determine whether Plaintiff's bones were broken (*id.* at ¶ 10), and medical personnel allegedly not providing any medical treatment in response to Plaintiff's injuries other than administering Tylenol (*id.*). Essentially these claims boil down to criticisms/disagreements of the care and treatment provided by Armor who has been alleged to have been "responsible, in part, for providing medical services and medication to Plaintiff...." *Id.* at ¶ 7. As alleged, Defendant falls squarely within the language of OKLA. STAT. tit 51 § 152(7)(b)(7) which provides that medical professionals under contract with the city, county or state are employees under the GTCA. Thus, as an employee, Defendant Armor is immune from liability in tort pursuant to the GTCA. Accordingly, Plaintiff's tort claim against Defendant Armor must be dismissed as a matter of law.

Moreover, in December of 2018, the Oklahoma Supreme Court encountered the issue of whether a private correctional healthcare contractor such as Armor, and not just its employees, are

4

subject to the OGTCA immunity. *See Barrios v. Haskell Cnty. Pub. Facilities Auth.,* 2018 OK 90.

In *Barrios,* the Court reasoned as follows:

> Generally speaking, the staff of a healthcare contractor at a jail are "employees" who are entitled to tort immunity under the GTCA by virtue of sections 152(7)(b), 153(A), and 155(25). *See* 51 O.S. Supp. 2015 § 152(7)(b) ("As used in The Governmental Tort Claims Act: . . . 7. 'Employee' means any person who is authorized to act on behalf of a political subdivision or the state whether that person is acting on a permanent or temporary basis, with or without being compensated or on a full-time basis . . . b. For the purpose of The Governmental Tort Claims Act, the following are employees of this state, regardless of the place in this state where duties as employees are performed: . . . (5) physicians who provide medical care to inmates pursuant to a contract with the Department of Corrections, [and] . . . (7) licensed medical professionals under contract with city, county, or state entities who provide medical care to inmates or detainees in the custody or control of law enforcement agencies . . ."); *id.* §§ 153(A), 155(25). We have not been asked whether Turn Key Health, LLC [a private healthcare contractor] or its staff are "employees" under section 152(7)(b) but have assumed that they are for purposes of answering the questions certified to us.

*Id.* at n. 5 (emphasis added).

As the Oklahoma Supreme Court explained, "in cases including tort claims against the State and state actors, the Court begins with the understanding that the State is statutorily immune from tort suit unless the Legislature has expressly waived that immunity." *Id.* at ¶ 8 (emphasis added). Pursuant to the Court's reasoning in *Barrios,* private correctional healthcare contractors, such as Armor, are considered state actors for the purposes of the GTCA. *See Id.* at n. 5.

According to the GTCA immunity provisions, state actors are exempt as a matter of law from liability for certain tort claims, such as those arising out of "[p]rovision, equipping, operation or maintenance of any prison, jail or correctional facility." OKLA. STAT. tit. 51, § 155(25). Based on this insulation from tort afforded by the GTCA, Defendant Armor cannot be held liable for any tort claims that arise out of providing healthcare services to inmates at Tulsa County jail, including Mr. Cessor (which is the sole basis of Plaintiff's claims against Armor in this case.) Therefore, consistent with the reasoning in *Barrios, supra,* the GTCA's grant of immunity extends to private

corporations contracting with the state or its political subdivisions to provide healthcare services, such as Armor, and not just their employees. *See Barrios*, 2018 OK 90, n. 5.

Finding the Court's reasoning in *Barrios* persuasive, the United States District Court for the Northern District of Oklahoma recently held that "Armor is an 'employee' under the GTCA and, therefore, is immune from tort liability," dismissing Plaintiff's state law claims of negligence on the basis of Armor's immunity under the GTCA. *Prince v. Turn Key*, Case No. 18-CV-0282, *9 (N.D. Okla. Jan. 16, 2019)(the court's Opinion and Order is attached as Exhibit 8). Likewise, in its decision in *Birdwell v. Glanz*, Case No. 15-CV-304-TCK-FHM (N.D. Okla. Mar. 12, 2019)(the Court's Opinion and Order is attached as Exhibit 9), the Northern District held that Armor Correctional Health Services, the private healthcare contractor providing medical services to inmates at the Tulsa County jail, is an "employee" under the GTCA and is thus "entitled to immunity from tort suits arising out of the 'operation or maintenance of any prison, jail, or correctional facility'." *See Id.* at 18 (citing OKLA. STAT. tit. 51, §§ 152(14) and 155(25)). The Court in *Birdwell* further expanded on the grounds for its ruling by stating that "the *Barrios* holding provides a strong indication that the Oklahoma Supreme Court would find both Armor and its employees . . . to be 'employees' under the GTCA who are entitled to immunity from tort liability." *Id.* at 18. In *Burke v. Reglaado et al.*, Case No. 18-CV-231-GKF-FHM (United States District Court for the Northern District of Oklahoma, March 28, 2019)(the Court's Opinion and Order is attached as Exhibit 10), Judge Frizzle, cited to *Barrios*, *Birdwell*, and *Prince*, as he summarily dismissed the plaintiff's state constitutional claim and negligence claim against Armor at the motion to dismiss stage. Accordingly, two (2) separate judges in the United States District Court for the Northern District of Oklahoma have found that Armor, as the contracted health care provider at the Tulsa County Jail, is an "employee" under the GTCA and immune from tort. It is

appropriate to take judicial notice of these findings of fact and conclusions of law and apply the same to the instant matter at hand.

Additionally, an Oklahoma state district court for Creek County recently held that "<u>Armor is an 'employee' under the GTCA</u>" and is thus "immune under the Governmental Tort Claims Act 51 O.S. § 151 et seq.," dismissing Plaintiff's negligence claim against Armor. *Holland v. Armor*, Case No. CJ-2018-35, ¶ II(E) (Creek Co. Dist. Ct. Okla. Feb. 25, 2019)(emphasis added)(the Court's Opinion and Order is attached as Exhibit 11).

The Oklahoma Supreme Court in *Barrios* spurred a landslide shift in both federal and state forums on the issue of whether the grant of the GTCA immunity extends to private corporations providing health care services in correctional facilities, such as Armor. *See Prince v. Armor*, 2019 WL 238153, *9 (N.D. Okla. Jan 16, 2019); *Holland v. Armor*, Case No. CJ-2018-35, ¶ II(E) (Creek Co. Dist. Ct. Okla. Feb. 25, 2019); *Birdwell v. Glanz*, 15-CV-304-TCK-FHM (N.D. Okla. Mar. 12, 2019); and *Burke v. Regalado*, 18-CV-231-GKF-FHM (N.D. Okla. March 28, 2019). The instant case and the above cited cases all involve independent companies that provide health care services to county jails, the same legal issue of whether the GTCA immunity extends to private corporations like Armor that contract with the state or its political subdivisions to provide healthcare services in correctional facilities, and a similar state law claim of negligence arising out of the allegedly inadequate medical care provided to the plaintiff by Armor during his incarceration in a county jail. As the allegations, arguments and corresponding analysis are nearly identical to the issues, claims, and defenses in the case at bar, they are on point, instructive, and very persuasive regarding Defendant's grounds for dismissal. According to these rulings and the plain language of Sections 152(7)(b)(7), 153(A), and 155(25) of the GTCA, Defendant Armor is immune from

liability for tort claims as a matter of law, and all such claims against Defendant Armor should be dismissed as a matter of law with prejudice to refiling.

## CONCLUSION

Dismissal of all of Plaintiff's claims against Armor is appropriate at this time as Plaintiff has failed to state a claim against it upon which relief can be granted.

WHEREFORE, Defendant herein respectfully requests this Court to dismiss Armor from this action. Defendant does not waive any other defenses in filing this Special Appearance and Motion to Dismiss.

Respectfully submitted,

SEAN P. SNIDER, OBA # 22307
ANTHONY C. WINTER, OBA # 32148
JOHNSON HANAN AND VOSLER
9801 N. Broadway Extension
Oklahoma City, OK 73114
Telephone: (405) 232-6100
Facsimile: (405) 232-6105
E-Mail: ssnider@johnsonhanan.com
E-Mail: awinter@johnsonhanan.com
*Attorneys for Defendant Armor*
*Correctional Health Services, Inc.*

8

## CERTIFICATE OF MAILING

I, hereby certified that a true and correct copy of the above and foregoing was mailed via first class mail on the 1st day of May, 2019, to the following:

Brendan M McHugh
P.O. Box 1392
Claremore, OK 74018
Telephone: (918) 608-0111
Facsimile: (918) 803-4910
and
Dana Jim
P.O. Box 1011
Vinta, OK 74301
Telephone: (918) 457-6626
Facsimile: (918) 517-3431
*Attorneys for Plaintiff*

_____
Anthony C. Winter

IN THE DISTRICT COURT IN AND FOR TULSA COUNTY
STATE OF OKLAHOMA

DISTRICT COURT
FILED

JUL - 5 2016

SALLY HOWE SMITH, COURT CLERK
STATE OF OKLA, TULSA COUNTY

JOSHAWA CESSOR, an individual )
                              )
    Plaintiff, )
                              )
                              )
v.                               )
                              )
BOARD OF COUNTY )
COMMISSIONERS OF TULSA )
COUNTY, a legislative entity, )
                              )
CORRECTIONAL HEALTHCARE )
MANAGEMENT OF OKLAHOMA, )
INC., a foreign corporation; )
                              )
TULSA COUNTY SHERIFF'S OFFICE, )
a governmental entity, and )
                              )
VIC REGALADO, in his official capacity )
As Tulsa County Sheriff, )
                              )
JOHN DOE, an individual and employee )
of Tulsa County Sheriff's Office, )
                              )
    Defendants. )

Case No.: **CJ-2016-02442**

Judge: **DANA LYNN KUEHN**

ATTORNEY LIEN CLAIM
JURY TRIAL DEMANDED

## PETITION

COMES NOW, the Plaintiff, Joshawa Cessor, (hereinafter "Plaintiff") by and through his

attorneys of record, Garrett Law Center, PLLC, and for his cause against the above named

Defendants, hereby alleges and states as follows:

### I.  PARTIES, JURISIDICTION, VENUE

    1.    At the time of the incident, Plaintiff resided in Broken Arrow, Tulsa County,

Oklahoma.

    2.    Defendant Board of County Commissioners of Tulsa County, Oklahoma

(hereinafter "Commissioners") is the legislative entity of Tulsa County, Oklahoma.

EXHIBIT
1

3.    Defendant , Correctional Healthcare Management of Oklahoma, Inc. ("CHMO"), is a foreign corporation doing business within Tulsa County, Oklahoma, and was at all times relevant hereto, responsible, in part, for providing supervision and control over the medical unit of the Tulsa jail wherein Tulsa County and other county inmates are and were housed during all relevant times referred to herein.

4.    Defendant Tulsa County Sheriff's Department is a governmental entity providing law enforcement to the residents of Tulsa County, including, without limitation, supervision of the David L. Moss Criminal Justice Center ("Tulsa jail").

5.    Defendant Vic Regalado is the current Tulsa County Sheriff.

6.    Defendant John Doe, an individual and employee of Tulsa County Sheriff's Department , is an individual whose identity is unknown now but may be revealed through the course of discovery.

7.    The incident giving rise to this case occurred at David L. Moss Correctional Center in the town of Tulsa, Tulsa County, State of Oklahoma.

8.    The actions of Defendants and its agents and/or employees were objectively unreasonable under the circumstances and exceeded the force necessary in violation of Article 2, Section 30, of the Oklahoma Constitution for which MCC and its agents and/or employees is liable in its capacity and for which Oklahoma Department of Corrections is liable under a theory of respondeat superior. *Bosh v. Cherokee County Building Authority, 305 P.3d 994 (Okla. 2013)*.

9.    Plaintiff has timely satisfied all the prerequisites for filing suit under the Oklahoma Governmental Tort Claims Act, and jurisdiction and venue are proper. (1) Plaintiff had (1) one year from the date of the incident to give notice of a claim. The incident occurred on August 7, 2015, and Plaintiff gave notice on October 9, 2015. (2) Defendant accepted service of

the Notice on October 16, 2015, and had until January 14, 2016, to either approve or deny Plaintiff's claim, in which the claim was constructively denied on January 14, 2016. (3) Plaintiff has until July 12, 2016, 180 days after Plaintiff's claim was constructively denied, to timely file suit.

## II.     STATEMENT OF FACT

10.     Plaintiff re-alleges and incorporates Paragraphs 1-9.

11.     On or about August 7, 2015, Plaintiff was taken into custody in Tulsa County for warrants in New Mexico.

12.     Plaintiff was transported to David L. Moss Criminal Justice Center.

13.     While in custody at David L. Moss, a jailor used excessive force on Plaintiff and broke Plaintiff's hand and arm in three (3) places.

14.     After the incident, Plaintiff was then repeatedly denied medical care.

15.     Defendants are liable under the Governmental Tort Claims Act, (the "Act") for the negligent actions of Defendant Doe which are detailed above, and there are no exceptions to liability in the Act that are applicable to Plaintiff's claim.

16.     In the alternative, and to the extent that a jury determines that the actions of Doe were malicious and outside the scope of his employment, the Act does not apply, and Doe is personally liable under state law for the injuries to Plaintiff.

17.     The force used by Defendant Doe was objectively unreasonable and needlessly excessive under the circumstances in violation of the Fourth Amendment to the United States Constitution.

18.     The actions of Defendant Doe were malicious and carried out with the specific intent to cause pain in violation of the due process clause of the Fourteenth Amendment to the United States Constitution.

19.     Defendant Doe's brutal attack on Plaintiff while he was defenseless with no ability to protect himself, is conduct sufficiently conscience shocking to violate the substantive due process clause of the Fourteenth Amendment to the United States Constitution.

### III.    NEGLIGENCE

20.     Plaintiff re-alleges and incorporates Paragraphs 1-19.

21.     Defendants had an affirmative duty to act reasonably and not place Plaintiff in harm.

22.     Defendants had an affirmative duty to act reasonably in treating, monitoring, and evaluation Plaintiff's health.

23.     Defendants breached their duty to Plaintiff.

24.     As a direct and proximate result of the allegation above, Plaintiff has suffered and continues to suffer damages including but not limited to severe emotional distress, mental anguish, physical injury, lost income, and loss of consortium.

25.     Each of the defendants involved in the incident giving rise to this litigation were acting under the color of law at all relevant times.

26.     The conduct of the government entities was in conscious disregard to the substantial risk of harm to Plaintiff.

27.     Defendants' acts or omissions were deliberately indifferent to Plaintiff's safety and well-being.

28.     The government defendants further failed to properly train their employees in the proper handling and procedures specific to the events giving rise to this litigation.

29.     The failure to train resulted in a deliberate indifference to the rights of Plaintiff.

30.     As a direct and proximate result of the allegation above, Plaintiff suffered a deprivation of his rights, privileges, and immunities secured by the Constitution and laws.

31.     As a direct and proximate result of the allegations above, Plaintiff suffered severe pain and suffering, great emotional distress, lost income, and medical expenses.

32.     Defendants' conduct was intentional, reckless, or callous disregard for Plaintiff's rights and Plaintiff is therefore entitled to an award of Punitive damages.

**WHEREFORE**, premises considered, Plaintiff prays for judgment against Defendants in an amount excess of Seventy-five Thousand Dollars ($75,000.00), together with costs, interest, reasonable attorney's fees, punitive damages, and any other relief which this Court deems just and reasonable.

GARRETT LAW CENTER, PLLC

D. Mitchell Garrett, Jr., OBA #20704
Amber Peckio Garrett, OBA #19908
Garrett Law Center PLLC
P. O. Box 1349
Tulsa, Oklahoma 74101-1349
Phone (918) 895-7216
Fax (918) 895-7217



IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA

# FILED

**'JAN 1 8 2017**

Mark C. McCartt, Clerk
U.S. DISTRICT COURT

| | | |
|---|---|---|
| (1) JOSHAWA CESSOR, an individual, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | |
| | ) | Case No. |
| (1) BOARD OF COUNTY COMMISSIONER | ) | |
| OF TULSA COUNTY, a legislative entity; | ) | |
| (2) CORRECTIONAL HEALTHCARE | ) | |
| MANAGEMENT OF OKLAHOMA, INC., | ) | |
| a foreign corporation; | ) | **17 CV – 0 3 6 JHP – FHM** |
| (3) TULSA COUNTY SHERIFF'S OFFICE, | ) | |
| a governmental entity, and | ) | |
| (4) VIC REGALADO, in his official capacity | ) | |
| as Tulsa County Sheriff; | ) | |
| (5) JOHN DOE, an individual and employee | ) | |
| of Tulsa County Sheriff's Office, | ) | |
| | ) | |
| Defendants. | ) | |

## NOTICE OF REMOVAL

Defendant Vic Regalado, in his official capacity, by and through his undersigned counsel, pursuant to 28 U.S.C. §§ 1331, 1441 and 1446, hereby notifies this Court that he is removing the above-captioned action currently pending in the District Court of Tulsa County, Oklahoma to the United States District Court for the Northern District of Oklahoma. In support of this Notice of Removal, Defendant states as follows:

1.     Plaintiff filed his Petition against Defendants in the District Court for Tulsa County, Oklahoma, on July 5, 2016 (the "State Court Lawsuit"). Defendant received service of Plaintiff's Petition on or about December 29, 2016. Thus, this Notice of Removal is filed with this Court within thirty (30) days of the receipt of Plaintiff's Complaint (or Petition) as required by 28 U.S.C. § 1446(b).

<div style="border:1px solid;">

**EXHIBIT**

**2**

</div>

2.     Defendant is filing a Status Report of Removed Action along with the filing of this Notice of Removal.  It is currently expected that, within seven (7) days of filing this Notice of Removal, Defendant will also be filing his motion requesting an additional twenty (20) days to file an answer or other responsive pleading.  Pursuant to LCvR 81.2, clear and legible copies of all documents filed or served in the case are attached as follows: Plaintiff's Petition as Exhibit "1", a copy of the summons served upon Defendant Regalado, in his official capacity, as Exhibit "2", and a copy of the Docket Sheet as Exhibit "3."

3.     The basis for removal to federal court is federal question jurisdiction pursuant to 28 U.S.C. § 1331.

4.     In accordance with 28 U.S.C. § 1446(d), Defendant is promptly filing a copy of this Notice of Removal with the Clerk of the District Court for Tulsa County, Oklahoma.

5.     In accordance with 28 U.S.C. § 1446(d), Defendant is also giving written notice to Plaintiff by promptly serving this Notice of Removal upon Plaintiff.

6.     As required by 28 U.S.C. § 1441, Defendant seeks to remove this case to the United States District Court for the Northern District of Oklahoma, which is the District Court embracing the place where the State Court Lawsuit has been filed.

## FEDERAL QUESTION JURISDICTION

7.     Plaintiff's Petition makes claims under 42 U.S.C. § 1983.  See Plaintiff's Petition, Exhibit "1."

8.     Accordingly, Plaintiff has invoked this Court's original jurisdiction on "a claim or right arising under the Constitution, treaties or laws of the United States."  28 U.S.C. §§ 1331 and 1441.

9.    Venue lies in this Court because Plaintiff's action is pending in this district and division. See 28 U.S.C. § 1441(a).

WHEREFORE, Defendant respectfully requests that the above-captioned action now pending in the District Court of Tulsa County, Oklahoma, be removed to the District Court for the Northern District of Oklahoma, and that said District Court assume jurisdiction of this action and enter such other and further orders as may be necessary to accomplish the requested removal and promote the ends of justice.

Dated this 18th day of January, 2017.

Respectfully submitted,

Kim M. Hall
OK Bar Number 16100
Assistant District Attorney
Tulsa County District Attorney's Office
500 S. Denver Ave., Suite 827
Tulsa, OK 74103
khall@tulsacounty.org
(918) 596-4845
ATTORNEY FOR DEFENDANT

## CERTIFICATE OF MAILING

I hereby certify that on 18th day of January, 2017, I caused a true and correct copy of this document to be placed in the United States mail, first class postage fully pre-paid, addressed to:

Joshawa Cessor
318 S. Eva Lane
Bloomfield, NM  87413

Kim M. Hall

3

IN THE DISTRICT COURT IN AND FOR TULSA COUNTY
STATE OF OKLAHOMA

DISTRICT COURT
**F I L E D**

JUL - 5 2016

SALLY HOWE SMITH, COURT CLERK
STATE OF OKLA, TULSA COUNTY

JOSHAWA CESSOR, an individual )
)
    Plaintiff, )
)
v. )
)
BOARD OF COUNTY )
COMMISSIONERS OF TULSA )
COUNTY, a legislative entity, )
)
CORRECTIONAL HEALTHCARE )
MANAGEMENT OF OKLAHOMA, )
INC., a foreign corporation; )
)
TULSA COUNTY SHERIFF'S OFFICE, )
a governmental entity, and )
)
VIC REGALADO, in his official capacity )
As Tulsa County Sheriff, )
)
JOHN DOE, an individual and employee )
of Tulsa County Sheriff's Office, )
)
    Defendants. )

**CJ-2016-02442**
Case No.: _____

**DANA LYNN KUEHN**
Judge: _____

**ATTORNEY LIEN CLAIM**
**JURY TRIAL DEMANDED**

2016 JUL -5 PM 4:44
SALLY HOWE SMITH
COURT CLERK

<u>**PETITION**</u>

    COMES NOW, the Plaintiff, Joshawa Cessor, (hereinafter "Plaintiff") by and through his

attorneys of record, Garrett Law Center, PLLC, and for his cause against the above-named

Defendants, hereby alleges and states as follows:

<u>I. PARTIES, JURISIDICTION, VENUE</u>

    1.   At the time of the incident, Plaintiff resided in Broken Arrow, Tulsa County,

Oklahoma.

    2.   Defendant Board of County Commissioners of Tulsa County, Oklahoma

(hereinafter "Commissioners") is the legislative entity of Tulsa County, Oklahoma.

EXHIBIT
1

3.     Defendant, Correctional Healthcare Management of Oklahoma, Inc. ("CHMO"), is a foreign corporation doing business within Tulsa County, Oklahoma, and was at all times relevant hereto, responsible, in part, for providing supervision and control over the medical unit of the Tulsa jail wherein Tulsa County and other county inmates are and were housed during all relevant times referred to herein.

4.     Defendant Tulsa County Sheriff's Department is a governmental entity providing law enforcement to the residents of Tulsa County, including, without limitation, supervision of the David L. Moss Criminal Justice Center ("Tulsa jail").

5.     Defendant Vic Regalado is the current Tulsa County Sheriff.

6.     Defendant John Doe, an individual and employee of Tulsa County Sheriff's Department, is an individual whose identity is unknown now but may be revealed through the course of discovery.

7.     The incident giving rise to this case occurred at David L. Moss Correctional Center in the town of Tulsa, Tulsa County, State of Oklahoma.

8.     The actions of Defendants and its agents and/or employees were objectively unreasonable under the circumstances and exceeded the force necessary in violation of Article 2, Section 30, of the Oklahoma Constitution for which MCC and its agents and/or employees is liable in its capacity and for which Oklahoma Department of Corrections is liable under a theory of respondeat superior. *Bosh v. Cherokee County Building Authority, 305 P.3d 994 (Okla. 2013).*

9.     Plaintiff has timely satisfied all the prerequisites for filing suit under the Oklahoma Governmental Tort Claims Act, and jurisdiction and venue are proper. (1) Plaintiff had (1) one year from the date of the incident to give notice of a claim. The incident occurred on August 7, 2015, and Plaintiff gave notice on October 9, 2015. (2) Defendant accepted service of

the Notice on October 16, 2015, and had until January 14, 2016, to either approve or deny Plaintiff's claim, in which the claim was constructively denied on January 14, 2016. (3) Plaintiff has until July 12, 2016, 180 days after Plaintiff's claim was constructively denied, to timely file suit.

## II.   STATEMENT OF FACT

10.     Plaintiff re-alleges and incorporates Paragraphs 1-9.

11.     On or about August 7, 2015, Plaintiff was taken into custody in Tulsa County for warrants in New Mexico.

12.     Plaintiff was transported to David L. Moss Criminal Justice Center.

13.     While in custody at David L. Moss, a jailor used excessive force on Plaintiff and broke Plaintiff's hand and arm in three (3) places.

14.     After the incident, Plaintiff was then repeatedly denied medical care.

15.     Defendants are liable under the Governmental Tort Claims Act, (the "Act") for the negligent actions of Defendant Doe which are detailed above, and there are no exceptions to liability in the Act that are applicable to Plaintiff's claim.

16.     In the alternative, and to the extent that a jury determines that the actions of Doe were malicious and outside the scope of his employment, the Act does not apply, and Doe is personally liable under state law for the injuries to Plaintiff.

17.     The force used by Defendant Doe was objectively unreasonable and needlessly excessive under the circumstances in violation of the Fourth Amendment to the United States Constitution.

18.     The actions of Defendant Doe were malicious and carried out with the specific intent to cause pain in violation of the due process clause of the Fourteenth Amendment to the United States Constitution.

19.     Defendant Doe's brutal attack on Plaintiff while he was defenseless with no ability to protect himself, is conduct sufficiently conscience shocking to violate the substantive due process clause of the Fourteenth Amendment to the United States Constitution.

### III.   NEGLIGENCE

20.     Plaintiff re-alleges and incorporates Paragraphs 1-19.

21.     Defendants had an affirmative duty to act reasonably and not place Plaintiff in harm.

22.     Defendants had an affirmative duty to act reasonably in treating, monitoring, and evaluation Plaintiff's health.

23.     Defendants breached their duty to Plaintiff.

24.     As a direct and proximate result of the allegation above, Plaintiff has suffered and continues to suffer damages including but not limited to severe emotional distress, mental anguish, physical injury, lost income, and loss of consortium.

25.     Each of the defendants involved in the incident giving rise to this litigation were acting under the color of law at all relevant times.

26.     The conduct of the government entities was in conscious disregard to the substantial risk of harm to Plaintiff.

27.     Defendants' acts or omissions were deliberately indifferent to Plaintiff's safety and well-being.

28.   The government defendants further failed to properly train their employees in the proper handling and procedures specific to the events giving rise to this litigation.

29.   The failure to train resulted in a deliberate indifference to the rights of Plaintiff.

30.   As a direct and proximate result of the allegation above, Plaintiff suffered a deprivation of his rights, privileges, and immunities secured by the Constitution and laws.

31.   As a direct and proximate result of the allegations above, Plaintiff suffered severe pain and suffering, great emotional distress, lost income, and medical expenses.

32.   Defendants' conduct was intentional, reckless, or callous disregard for Plaintiff's rights and Plaintiff is therefore entitled to an award of Punitive damages.

**WHEREFORE**, premises considered, Plaintiff prays for judgment against Defendants in an amount excess of Seventy-five Thousand Dollars ($75,000.00), together with costs, interest, reasonable attorney's fees, punitive damages, and any other relief which this Court deems just and reasonable.

GARRETT LAW CENTER, PLLC

D. Mitchell Garrett, Jr., OBA #20704
Amber Peckio Garrett, OBA #19908
Garrett Law Center PLLC
P. O. Box 1349
Tulsa, Oklahoma  74101-1349
Phone (918) 895-7216
Fax (918) 895-7217

IN THE DISTRICT COURT IN AND FOR TULSA COUNTY
STATE OF OKLAHOMA

JOSHAWA CESSOR, an individual

    Plaintiff,

v.

BOARD OF COUNTY
COMMISSIONERS OF TULSA
COUNTY, a legislative entity,

CORRECTIONAL     HEALTHCARE
MANAGEMENT OF OKLAHOMA,
INC., a foreign corporation;

TULSA COUNTY SHERIFF'S OFFICE,
a governmental entity, and

VIC REGALADO, in his official capacity
As Tulsa County Sheriff;

JOHN DOE, an individual and employee
of Tulsa County Sheriff's Office,

    Defendants.

2016 DEC 29 AM 11: 30

Case No.: CJ-16-2442

Judge: Kuehn

DISTRICT COURT
**F I L E D**

DEC 29 2016

SALLY HOWE SMITH, COURT CLERK
STATE OF OKLA. TULSA COUNTY

**SUMMONS**

To the above-named Defendant(s): *Vic Regalado Tulsa County Sheriff's Office*

    You have been sued by the above-named plaintiff(s), and you are directed to file a written answer to the attached petition in the court at the above address within twenty (20) days after service of this summons upon you exclusive of the day of service. Within the same time, a copy of your answer must be delivered or mailed to the attorney for the plaintiff. Unless you answer the petition within the time stated judgment will be rendered against you with the costs of the action.

    If Interrogatories and Request for Production of Documents are served with this Petition, you are directed to answer the Interrogatories and produce the documents requested within forty-five (45) days after service of these Interrogatories and Request for Production of Documents.

Issued this _20_ day of _12_ 2016 SALLY HOWE SMITH, COURT CLERK Court Clerk

By: _____ Deputy Court Clerk

(Seal)
Attorney(s) for Plaintiff(s):

Name:    GARRETT LAW CENTER, PLLC.
Address:  P.O. Box 1349
        Tulsa, OK 74101-1349
        (918) 895-7216

This summons was served on _December 29 2016_
                                    (Date of Service)

                             _Sandra Epperson_
                            (Signature of person serving summons)

YOU MAY SEEK THE ADVICE OF AN ATTORNEY ON ANY MATTER CONNECTED WITH THIS SUIT OR YOUR ANSWER. SUCH ATTORNEY SHOULD BE CONSULTED IMMEDIATELY SO THAT AN ANSWER MAY BE FILED WITHIN THE TIME LIMIT STATED IN THE SUMMONS.

EXHIBIT
2

**RETURN OF SERVICE**
**PERSONAL SERVICE**

I Certify that I received the foregoing summons on this _____ day of _____, 2016, and that I delivered a copy of said summons with a copy of the petition attached to each of the following named defendants personally in _____ County at the address and on the date set forth opposite each name, to wit:

| Name of Defendant: | Address: | Date of Service: |
|---|---|---|
| .......................... | .......................... | ................ |
| .......................... | .......................... | ................ |
| .......................... | .......................... | ................ |

**FEES**

Fee for service $_____, Mileage $_____, Total $

Dated this _____ day of _____, 2016.

Process Server:

By:_____

_____County, Oklahoma

**RETURN OF SERVICE**
**USUAL PLACE OF RESIDENCE**

I certify I received the foregoing summons on the ......... day of ........................., 2015, and that on ............., I served .............. ..... ..................... by leaving a copy of said summons with a copy of the petition attached at ............................. which is his usual place of residence, with ...................., a person over fifteen (15) years of age who resides therein.

**RETURN OF SERVICE**
**CERTIFICATE OF SERVICE BY MAIL**

I certify that I mailed copies of the foregoing summons with a copy of the petition attached to the following named defendant(s) at the address shown by certified mail, addressee only, return receipt requested on the ......... day of ....................., 2016, and receipt thereof on the dates shown:

| Name of Defendant: | Address: | Date of Service: |
|---|---|---|
| _____ | _____ | _____ |
| _____ | _____ | _____ |

PROOF OF SERVICE

**E.T.A.**
Private Process Service
**State of Oklahoma**

County _Tulsa_ ___ State _Okla._ ___ Federal ___ Case # _CJ-16-2442_

_Joshana Cessor_ ___ vs _Vic Regalado - Tulsa County Sheriff_

**Documents Served:** I, being duly sworn, certify that I received the foregoing, to wit on ___
Small Claims Affidavit / Money Judgment: ___ X _Summons w/ Petition or Complaint_ ___ Citation for Contempt ___
Hearing on Assets ___ Small Claims Replevin ___
Other ___

**Method of Service:** Service Made Pursuant to _X_ Oklahoma/Title 12 O.S. Section 158.1 ___ Federal Rule 4-Other ___
(A) That on _December 28 2016_ at _10:30_ (A)pm, I served the above indicated document (s) on the within named ___
_Vic Regalado_ ___ at _305 W 1st ST, Tulsa, OK 74103_ ___
(B) Additionally, on ___ at ___ am. Pm. I served the document (s) indicated on the within named ___

**MANNER OF SERVICE:** And served the same according to law in the following manner, to wit:
**Personal Service**
by delivering a true copy of said process to the above named and informing such person of their contents.
**Usual Place of Residence**
by leaving a copy of said process for the above named with ___
a resident / family member, who is fifteen years of age or older, at the above listed address which is the usual place of residence of the above entity / individual, and informing such person of their contents.
**Corporation / Partnership / Unincorporated Association / Government Entities, Etc.**
_X_ by delivering a copy of said process to _Vic Regalado Tulsa County Sheriff's Office_ ___
he / she being the service agent authorized to accept service, managing agent in charge, an officer, a partner, owner, or the Attorney of record for the above named / individual, and informing such person of their contents.
**Posted Service**
by affixing a copy of said process to the premises at the address indicated, which is in the possession of the above named individual.
**No Service / Not Found**
Said process WAS NOT SERVED on the above named for reasons stated: ___ Evading Service, ___ Property Vacant,
___ Bad address / No such address, ___ Service Canceled ___ Other ___
**Other Information:** ___

Subscribed and sworn to before me this ___                    Undersigned declares under penalty of perjury
                                                              that the foregoing is true and correct
___ day of ___ 20 ___
                                                      Server _Sandra Esperanza_ 12/29/16 Time 11:5
Notary Public / Court Clerk          Comm. Exp.

CASE # _CJ-16-2442_                    **Statement of Fees:**
Process Fee: $ _50-_                    Bad Address / Endeavor: $ ___          Total $ _50-_
Rush Fee: $ ___                        Skip / Locate / Research: $ ___
Additional: $ ___                      Mileage ___ $ ___
Hourly: $ ___                          Other: ___ $ ___



# OKLAHOMA
## State Courts Network

The information on this page is NOT an official record. Do not rely on the correctness or completeness of this information. Verify all information with the official record keeper. The information contained in this report is provided in compliance with the Oklahoma Open Records Act, 51 O.S. 24A.1. Use of this information is governed by this act, as well as other applicable state and federal laws.

## IN THE DISTRICT COURT IN AND FOR TULSA COUNTY, OKLAHOMA

JOSHAWA CESSOR,
    Plaintiff,

v.

BOARD OF COUNTY COMMISIONERS OF TULSA
COUNTY,
    Defendant, and
CORRECTIONAL HEALTHCARE MANAGEMENT OF
OKLAHOMA INC,
    Defendant, and
TULSA COUNTY SHERIFF'S OFFICE,
    Defendant, and
VIC REGALADO,
    Defendant, and
JOHN DOE
    Defendant.

No. CJ-2016-2442
(Civil relief more than $10,000: NEGLIGENCE
(GENERAL))

Filed: 07/05/2016

Judge: Kuehn, Dana

## PARTIES

BOARD OF COUNTY COMMISIONERS OF TULSA COUNTY, Defendant
CESSOR, JOSHAWA, Plaintiff
CORRECTIONAL HEALTHCARE MANAGEMENT OF OKLAHOMA INC, Defendant
REGALADO, VIC, Defendant
TULSA COUNTY SHERIFF'S OFFICE, Defendant

## ATTORNEYS

None

## EVENTS

None

## ISSUES

For cases filed before 1/1/2000, ancillary issues may not appear except in the docket.

EXHIBIT
3

**Issue # 1.**   Issue: NEGLIGENCE (GENERAL) (NEGL)
Filed By: CESSOR, JOSHAWA
Filed Date: 07/05/2016

Disposition Information

**Party Name**

**Defendant:**
BOARD OF COUNTY COMMISIONERS OF TULSA COUNTY

**Defendant:**
CORRECTIONAL HEALTHCARE MANAGEMENT OF OKLAHOMA INC

**Defendant:** TULSA COUNTY SHERIFF'S OFFICE

**Defendant:** REGALADO, VIC

# DOCKET

| Date | Code | Description | Count | Party | Amount |
|------|------|-------------|-------|-------|--------|
| 07-05-2016 | TEXT | CIVIL RELIEF MORE THAN $10,000 INITIAL FILING. | 1 | | |
| 07-05-2016 | NEGL | NEGLIGENCE (GENERAL) | | | $ 7.00 |
| 07-05-2016 | DMFE | DISPUTE MEDIATION FEE | | | $ 163.00 |
| 07-05-2016 | PFE1 | PETITION Document Available (#1033579731) 🖼TIFF  📄PDF | | | $ 6.00 |
| 07-05-2016 | PFE7 | LAW LIBRARY FEE | | | $ 25.00 |
| 07-05-2016 | OCISR | OKLAHOMA COURT INFORMATION SYSTEM REVOLVING FUND | | | $ 1.55 |
| 07-05-2016 | OCJC | OKLAHOMA COUNCIL ON JUDICIAL COMPLAINTS REVOLVING FUND | | | $ 5.00 |
| 07-05-2016 | OCASA | OKLAHOMA COURT APPOINTED SPECIAL ADVOCATES | | | $ 10.00 |
| 07-05-2016 | SSFCHSCPC | SHERIFF'S SERVICE FEE FOR COURTHOUSE SECURITY PER BOARD OF COUNTY COMMISSIONER | | | $ 1.00 |
| 07-05-2016 | CCADMINCSF | COURT CLERK ADMINISTRATIVE FEE ON COURTHOUSE SECURITY PER BOARD OF COUNTY COMMISSIONER | | | $ 0.16 |
| 07-05-2016 | CCADMIN0155 | COURT CLERK ADMINISTRATIVE FEE ON $1.55 COLLECTION | | | $ 0.45 |
| 07-05-2016 | SJFIS | STATE JUDICIAL REVOLVING FUND - INTERPRETER AND TRANSLATOR SERVICES | | | $ 0.23 |
| 07-05-2016 | | DISTRICT COURT ADMINISTRATIVE FEE ON $1.55 COLLECTIONS | | | $ 0.75 |
| 07-05-2016 | | DISTRICT COURT ADMINISTRATIVE FEE ON $5 COLLECTIONS | | | |

| Date | Code | Description | Count | Party | Amount |
|------|------|-------------|-------|-------|--------|
| 07-05-2016 | | DISTRICT COURT ADMINISTRATIVE FEE ON COURTHOUSE SECURITY PER BOARD OF COUNTY COMMISSIONER | | | $ 1.50 |
| 07-05-2016 | CCADMIN04 | COURT CLERK ADMINISTRATIVE FEE ON COLLECTIONS | | | $ 0.50 |
| 07-05-2016 | LTF | LENGTHY TRIAL FUND | | | $ 10.00 |
| 07-05-2016 | TEXT | OCIS HAS AUTOMATICALLY ASSIGNED JUDGE KUEHN, DANA TO THIS CASE. | | | |
| 07-05-2016 | ACCOUNT | RECEIPT # 2016-3367206 ON 07/05/2016. PAYOR:GARRETT LAW CENTER TOTAL AMOUNT PAID: $224.66. LINE ITEMS: CJ-2016-2442: $163.00 ON AC01 CLERK FEES. CJ-2016-2442: $6.00 ON AC23 LAW LIBRARY FEE. CJ-2016-2442: $1.66 ON AC31 COURT CLERK REVOLVING FUND. CJ-2016-2442: $5.00 ON AC58 OKLAHOMA COURT APPOINTED SPECIAL ADVOCATES. CJ-2016-2442: $1.55 ON AC59 COUNCIL ON JUDICIAL COMPLAINTS REVOLVING FUND. CJ-2016-2442: $7.00 ON AC64 DISPUTE MEDIATION FEES. CJ-2016-2442: $0.45 ON AC65 STATE JUDICIAL REVOLVING FUND, INTERPRETER SVCS. CJ-2016-2442: $2.48 ON AC67 DISTRICT COURT REVOLVING FUND. CJ-2016-2442: $25.00 ON AC79 OCIS REVOLVING FUND. CJ-2016-2442: $10.00 ON AC81 LENGTHY TRIAL FUND. CJ-2016-2442: $2.52 ON AC88 SHERIFF'S SERVICE FEE FOR COURT HOUSE SECURITY. | | | |
| 07-05-2016 | ADJUST | ADJUSTING ENTRY: MONIES DUE TO AC09-CARD ALLOCATION | | | $ 0.19 |
| 07-05-2016 | ACCOUNT | ADJUSTING ENTRY: MONIES DUE TO THE FOLLOWING AGENCIES REDUCED BY THE FOLLOWING AMOUNTS: CJ-2016-2442: AC88 SHERIFF'S SERVICE FEE FOR COURT HOUSE SECURITY -$0.19 | | | |
| 07-05-2016 | ACCOUNT | RECEIPT # 2016-3367208 ON 07/05/2016. PAYOR:D GARRETT TOTAL AMOUNT PAID: $7.48. LINE ITEMS: CJ-2016-2442: $0.19 ON AC09 CARD ALLOCATIONS. CJ-2016-2442: $7.29 ON AC88 SHERIFF'S SERVICE FEE FOR COURT HOUSE SECURITY. | | | |

| Date | Code | Description | Count | Party | Amount |
|------|------|-------------|-------|-------|--------|
| | | | | | $ 40.00 |
| 12-20-2016 | SMF | SUMMONS FEE-4 | | | |
| 12-20-2016 | ACCOUNT | RECEIPT # 2016-3469648 ON 12/20/2016. PAYOR: GARRETT LAW CENTER PLLC TOTAL AMOUNT PAID: $ 40.00. LINE ITEMS: CJ-2016-2442: $40.00 ON AC01 CLERK FEES. | | | |
| 12-28-2016 | S | PARTY HAS BEEN SUCCESSFULLY SERVED. BOARD OF COUNTY COMMISSIONERS OF TULSA COUNTY SERVED / CORP SERV TO VICKI ADAMS / ON 12-29-16 BY PS  Document Available (#1035219012) ▤TIFF  ▥PDF | | BOARD OF COUNTY COMMISSIONERS OF TULSA COUNTY | |
| 12-29-2016 | S | PARTY HAS BEEN SUCCESSFULLY SERVED. VIC REGALADO SERVED / CORP SERV TO VIC REGALADO / ON 12-27-16 BY PS  Document Available (#1035219014) ▤TIFF  ▥PDF | | REGALADO, VIC | |
| 01-05-2017 | MO | MOTION TO WITHDRAW AS ATTORNEY OF RECORD / A2J  Document Available (#1035214656) ▤TIFF  ▥PDF | | | |
| 01-05-2017 | CTFREE | KUEHN, DANA: ORDER ENTERED ALLOWING GARRETT LAW CENTER, P.L.L.C. TO WITHDRAW AS COUNSEL OF RECORD FOR PLAINTIFF JOSHAWA CESSOR.  PLAINTIFF HAS 30 DAYS TO ENTER AN APPEARANCE OF A NEW ATTORNEY OR WILL BE DEEMED TO REPRESENT HIMSELF PRO SE. FAILURE TO LITIGATE WILL RESULT IN DISMISSAL. | | | |
| 01-11-2017 | P | PETITION ORDER ALLOWING WITHDRAWAL / GARRET LAW CENTER PLLC / CERTIFICTE OF SERVICE  Document Available (#1035224865) ▤TIFF  ▥PDF | | CESSOR, JOSHAWA | |

**IN THE UNITED STATES DISTRICT COURT FOR
THE NORTHERN DISTRICT OF OKLAHOMA**

| | | |
|---|---|---|
| (1) JOSHAWA CESSOR, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| (1) BOARD OF COUNTY COMMISIONERS | ) | |
| OF TULSA COUNTY, a political sub- | ) | |
| division and municipal corporation, | ) | Case No. 17-CV-036-JHP-FHM |
| (2) STANLEY GLANZ, individually, | ) | |
| (3) VIC REGALADO, in his official capacity; | ) | **ATTORNEY LIEN CLAIMED** |
| (4) CORRECTIONAL HEALTHCARE | ) | |
| MANAGEMENT OF OKLAHOMA, INC., | ) | |
| a foreign corporation, | ) | **JURY TRIAL DEMANDED** |
| | ) | |
| Defendants. | ) | |

**FIRST AMENDED COMPLAINT**

The Plaintiff Joshawa Cessor ("Plaintiff") hereby submits his First Amended Complaint in

the above captioned matter.  In support thereof, Plaintiff alleges and states as follows:

1.     Plaintiff is an individual who is domiciled in the State of New Mexico and at the

time of the conduct alleged herein was a resident of Broken Arrow, Oklahoma.

3.     Defendant Board of County Commissioners of Tulsa County ("BCCTC") is a

political subdivision and municipal corporation.

4.     Defendant Vic Regalado ("Regalado") is the Sheriff at Tulsa County Jail and this

action is against him in his official capacity as Sheriff of Tulsa County.

5.     Defendant Stanley Glanz ("Glanz") was the Tulsa County Sheriff during Plaintiff's

incarceration and this action is against him in his individual capacity.

6.     Numerous John and Jane Does were employed at the Tulsa County Jail during

the events at issue herein.

1

EXHIBIT

3

7.     That beginning in early September 2015 until approximately September 15th 2015 Plaintiff was incarcerated at the Tulsa County Jail as a pretrial detainee being held on a warrant issued by the State of New Mexico.

8.     Board of County Commissioners of Tulsa County ("BCCTC") is a political subdivision and municipal corporation and the governing entity of Tulsa County Jail and pursuant to 19 O.S. § 4 is the proper entity to be sued on behalf of Tulsa County Jail.

9.     Defendant Correctional Healthcare Management of Oklahoma, Inc. ("CHMO"), was, at all times relevant hereto, a foreign corporation doing business in Tulsa County, Oklahoma.   CHMO was, at all times relevant hereto, responsible, in part, for providing medical services and medication to Plaintiff while he was in the custody of the Tulsa County Sheriff's Department. CHMO was additionally responsible, in part, for implementing Tulsa County Jail policies regarding medical and mental health care, assisting in developing those policies and in training and supervising its employees.

10.     Plaintiff files this first amended complaint pursuant to Fed. R. Civ. P. 15 which allows the filing of an amendment within 21 days of service of a motion to dismiss under Rule 12. Plaintiff abandons all claims and assertions of his Petition not expressly alleged herein. The filing of this first amended complaint supercedes Plaintiff's Petition filed July 5th 2016 in Tulsa County District Court and renders moot the motion to dismiss filed by Defendant Vic Regalado on February 15th 2017 [Doc. No. 8]. Accordingly, Plaintiff will not respond to that motion.

11.     While incarcerated at the Tulsa County Jail, Plaintiff was subjected to cruel and unusual punishment and an unreasonable seizure prohibited by the United States Constitution and applicable in this context thru the 4th and 14th Amendments to the United States Constitution to Plaintiff as a pretrial detainee.  Such conduct is also violative of Article 2, § 30 of the Oklahoma Constitution.

2

12.     That on or about September 8th 2015 while incarcerated in the Tulsa County Jail,

employees of the Tulsa County Jail handcuffed Plaintiff excessively resulting in a fracture and

displacement of his right hand as well as paresthesia.  The conduct of the individual employees

of the jail is unlawful in that it is excessive force under the United States and Oklahoma

Constitutions.  Specifically, while being processed into Tulsa Jail, Plaintiff disclosed that he was

in the past hospitalized in New Mexico for suicidal tendencies with depression, anxiety and

mental health issues.  This resulted in Plaintiff being placed him in a medical/mental unit of the

jail.  Plaintiff was placed in a jail cell with no clothes and a sheet to cover himself and the guard

derisively laughed at him while placing him in the cell with his clothing.  While there, Plaintiff

began to threaten to call the Mayor and/or an attorney to complain about the conditions in the

jail and his treatment.  Numerous deputies and Sheriff Glanz appeared and Plaintiff was placed

in handcuffs resulting in his hand making a loud popping/cracking sound.  Plaintiff immediately

hollered in pain.  Nevertheless, despite the need for medical attention, Plaintiff was placed in a

cell.  Plaintiff requested medical care and was in excessive pain for over 20 hours before he was

finally taken to an x-ray technician at jail who diagnosed Plaintiff with what was described as a

triad break.   Subsequently, two physicians with the jail and/or CHMO stated that it was not

possible to determine if it was broken and no treatment was rendered by them to Plaintiff.

Plaintiff was only given Tylenol a few days later after his mother, resulting in severe and

unnecessary pain to Plaintiff.  Plaintiff made numerous written requests thru the KIOSK system

and subsequently Plaintiff attempted retrieve such requests, the requests were no longer visible

and Plaintiff's KIOSK records were wiped clean as there were no other records.   After his

release from Tulsa Jail,  it was confirmed that Plaintiff had indeed broken his wrist.

13.     After fracturing Plaintiff's wrist, individual employees of the Tulsa County Jail exacerbated Plaintiff's condition by refusing to provide medical treatment to Plaintiff also in violation of Plaintiff's constitutional rights under the United States and Oklahoma Constitutions. Further, Plaintiff had mental health needs in that he was diagnosed with anxiety and had other mental health issues that should have been adequately responded to.

14.     The jurisdiction of this Court is proper under 28 U.S.C. § 1331 because Plaintiff's claims arise under the Constitution of the United States, particularly the 4th and 14th Amendments to the United States Constitution as actionable thru and 42 U.S.C. § 1983.

15.     This Court has supplemental jurisdiction over the state law claims asserted herein pursuant to 28 U.S.C. § 1367, since the state claims arise from the same case or controversy.

16.     Venue is proper in this district because a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in this District.

17.     Defendant Glanz was at all times relevant hereto, the Sheriff of Tulsa County, Oklahoma, residing in Tulsa County, Oklahoma.  Glanz, as Sheriff and the head of the Tulsa County Sheriff's Department, was, at all times relevant hereto, responsible for ensuring the safety and well-being of inmates detained and housed at the Tulsa County Jail, including the provision of appropriate medical care and treatment to inmates in need of such care, pursuant to 57 O.S. § 47.

18.     In addition, Defendant Glanz was at all times pertinent hereto, responsible for creating, adopting, approving, ratifying, and enforcing the rules, regulations, policies, practices, procedures, and/or customs of the Tulsa County Sheriff's Department and Tulsa County Jail, including the policies, practices, procedures, and/or customs that violated Plaintiff's rights as set forth in this Amended Complaint. Defendant Glanz is sued in his individual capacity.

4

**COUNT I**

**42 U.S.C. § 1983 – VIOLATIONS OF THE 4TH AND 14TH AMENDMENTS TO THE UNITED STATES CONSTITUTION**

**(As to Defendant Glanz in his individual capacity, Defendant Regalado in his official capacity, and CHMO)**

19.     In support of Count I, Plaintiff restates and re-alleges the foregoing allegations in their entirety as though fully set forth herein.

20.     That while incarcerated in the Tulsa Jail, Plaintiff was subjected to excessive force by certain unknown individuals, John and Jane Does, and once the responsible individuals are learned of and determined with knowledge, a separate excessive force claim will be alleged as to them upon leave of the Court at the time this information is discovered.

21.     The action and inaction by the Defendants named herein constitutes deliberate indifference to the known federal constitutional rights of Plaintiff; specifically:

a.     Plaintiff was injured by a Tulsa County Jail employee resulting in excessive force and significant injuries to Plaintiff.

b.     Defendants were deliberately indifferent to Plaintiff's medical needs by failing to provide medical assistance to Plaintiff after being requested to do so and having actual knowledge of a medical need.

c.     Defendants' failure provide medical assistance resulted in signification exacerbation of Plaintiff's condition.

22.     The above described conduct is a direct result of the inadequate training and the failure to properly train employees of the Tulsa County Jail.  This policy is set forth and described in the Order of the Court by Honorable Judge John E. Dowdell in Burke v. Glanz, et al., No. 11-CV-720-JED-PJC, Opinion and Order, (N.D. Okla. July 20th 2016) [Doc. No. 304]. Specifically, on three occasions, the staffing, medical treatment of inmates at the Tulsa Jail was

found to be deficient.  Further, Defendant CHMO violated the constitutional rights of inmates by neglecting their medical needs. This resulted in a pattern and policy and actual notice of the deficiencies.

23.     Defendants had actual knowledge of all the above described conditions of confinement and all three acted with reckless indifference for the rights of the Plaintiff.

## A.     Individual Capacity Liability- Defendant Glanz

24.     Plaintiff re-alleges and incorporates by reference the above paragraphs as though fully set forth herein.

25.     There is an affirmative link between the aforementioned acts and/or omissions of Defendants in being deliberately indifferent to Plaintiff's serious medical needs, health and safety and policies, practices and/or customs which Glanz promulgated, created, implemented and/or possessed responsibility for.

26.     Such policies, practices and/or customs include, but are not limited to:

a.     The failure to promulgate, implement or enforce, adequate mental health policies responsive to the serious medical needs of inmates like Plaintiff;

b.     Inadequate medical triage screening that fails to identity inmates with serious medical or mental health needs;

c.     Severe limitation of the use of off-site medical, mental health and diagnostic service providers, even in emergency situations;

d.     Untimely medical and mental health examinations and treatment;

e.     Understaffing the medical unit; and

f.     The failure to adequately train jail personnel and staff with respect to the proper assessment, classification and treatment of inmates with serious medical and mental health needs.

6

27.     Glanz knew and/or it was obvious that the maintenance of the aforementioned policies, practices and/or customs posed an excessive risk to the health and safety of inmates.

28.     Glanz disregarded the known and/or obvious risks to the health and safety of inmates like Plaintiff.

29.     Glanz, through his continued encouragement, ratification, and approval of the aforementioned policies, practices, and/or customs, in spite of their known and/or obvious inadequacies and dangers, has been deliberately indifferent to inmates', including Plaintiff's, serious medical needs.

30.     There is an affirmative link between the unconstitutional acts of his subordinates and Glanz's adoption and/or maintenance of the aforementioned policies, practices and/or customs.

**B.     Official Capacity Liability – Defendant Regalado & Municipal Liability – Defendant CHMO**

31.     Plaintiff re-alleges and incorporates by reference the above paragraphs as though fully set forth herein.

32.     CHMO and Regalado are each a "person" for purposes of 42 U.S.C. § 1983.

33.     At all times pertinent hereto, CHMO and Regalado were acting under color of state law.

34.     CHMO was charged with implementing and assisting in developing the policies of the Tulsa County Sheriff's Department with respect to the medical and mental health care of inmates at the Tulsa County Jail and has shared responsibility to adequately train and supervise its employees.  Sheriff Regaldo is the current office holder as the Sheriff of Tulsa County and is in charge of the Tulsa Jail and is accordingly sued in his official capacity.

7

35.     There is an affirmative link between the deprivation of Plaintiff's right to be free of cruel and unusual punishment and the policies, practices and/or customs that Tulsa Jail and CHMO promulgated, created, implemented and/or possessed responsibility for.

36.     Such policies, practices and/or customs include, but are not limited to:

a.     The failure to promulgate, implement or enforce adequate mental health policies responsive to the serious medical needs of inmates like Plaintiff.

b.     Inadequate medical triage screening that fails to identify inmates with serious medical or mental health needs;

c.     Severe limitation of the use of off-site medical, mental health and diagnostic service providers, even in emergency situations;

d.     Untimely medical and mental health examinations and treatment;

e.     Understaffing the medical unit; and

f.     The failure to adequately train CHMO and Tulsa Jail employees and/or agents with respect to the proper assessment, classification and treatment of inmates with serious needs.

37.     Defendants knew it was obvious that the maintenance of the aforementioned policies, practices and/or customs posed an excessive risk to the health and safety of inmates like Plaintiff.

38.     Defendants tacitly encouraged, ratified, and/or approved of the acts and/or omissions alleged herein, knew and/or it was obvious that such conduct was unjustified and would result in violations of constitutional rights, and was deliberately indifferent to the serious medical and mental health needs of inmates.

39.     As a direct and proximate result of unlawful policies, practices and/or customs, Plaintiff has suffered injuries and damages as alleged herein.

40.   That pursuant to 42 U.S.C. § 1983, Plaintiff's constitutional rights should be vindicated.

41.   Defendant Glanz has acted with conscious disregard to the federally secured rights of Plaintiff and as such, punitive damages in excess of $10,000.00 should be assessed against them.

42.   As a result of Defendants' conduct, Plaintiff has suffered actual damages in excess of $75,000.00.

43.   Plaintiff has incurred attorney fees and costs pursuing this matter and pursuant to 42 U.S.C. § 1988 Plaintiff should be reimbursed a reasonable award of attorney fees and costs.

44.   In the event that actual damages are not provable, nominal damages should be issued as a means to redress the civil rights of Plaintiff.

## COUNT II

## NEGLIGENCE

## (As to Defendants BCCTC and CHMO)

45.   Plaintiff re-alleges and incorporates by reference the above paragraphs as though fully set forth herein.

46.   Prior to filing this action, Plaintiff fully exhausted his rights pursuant to the Oklahoma Governmental Tort Claims Act, 51 O.S. § 151 *et. seq.* (OGTCA).

47.   As a result of the negligence of Defendants BCCTC and CHMO, Plaintiff sustained damages.

48.   Defendants BCCTC and CHMO owed a duty to Plaintiff, and all other inmates in custody, to use reasonable care to provide inmates in need of medical attention with appropriate assessment, classification and treatment of inmates with serious needs.

9

49.     As a direct and proximate cause of the negligence of BCCTC and CHMO, Plaintiff has suffered damages, in excess of $75,000.00.

## COUNT III

## OKLAHOMA CONSTITUTION-BOSH CLAIM

### (As to Defendant BCCTC and CHMO)

50.     Plaintiff re-alleges and incorporates by reference the above paragraphs as though fully set forth herein.

51.     Additionally, and/or alternatively, Defendants   BCCTC and CHMO violated Plaintiff's rights under the Oklahoma Constitution, and a cause of action exists pursuant to Bosh v. Cherokee County Building Authority, 2013 OK 9, 305 P.3d 994, for violating Plaintiff's rights under Art. 2, § 30 of the Oklahoma Constitution.

52.     Defendant Regalado has waived any applicable immunity under the OGTCA and therefore a Bosh claim is not alleged as to him.

WHEREFORE, Plaintiff requests an award of actual damages in excess of $75,000.00 against all Defendants, an award of punitive damages against Defendant Glanz in excess of $10,000.00, the costs of this action, pre and post judgment interest, reasonable attorney fees and costs, that Defendants be jointly and severally liable and any other and further relief that this Court deems proper.

S/Brendan M. McHugh
Brendan M. McHugh, OBA #18422
Attorney for Plaintiff
P.O. Box 1392
Claremore, OK 74018
Tele: (918) 608-0111
Fax: (918) 803-4910
and
Dana Jim, OBA #19495

10

P.O. Box 1011
Vinita, OK 74301
Tele:  918-457-6626
Fax: 918-517-3431
Co-Counsel for Plaintiff

## CERTIFICATE OF ELECTRONIC DELIVERY

I certify that I delivered via this Court's ECF system a true and correct copy of this document on the 8th day of March 2017 to:

Kim Hall, OBA # 16100
Assistant District Attorney, Civil Division
Tulsa County, District Attorney's Office
500 S. Denver, Ste. 827
Attorney for Defendant Regaldo in his official capacity


S/Brendan M. McHugh

12

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA

(1) JOSHAWA CESSOR,                )
                                      )
        Plaintiff,            )
                                        )
v.                                  )     CASE NO. 17-CV-036-JHP-FHM
                                      )
(1) BOARD OF COUNTY COMMISSIONERS of )
    TULSA COUNTY, a political subdivision and  )
    Municipal corporation,        )
(2) STANLEY GLANZ, individually,    )
(3) VIC REGALADO, in his official capacity;  )
(4) CORRECTIONAL HEALTHCARE    )
    MANAGEMENT OF OKLAHOMA, INC.,  )
    a foreign corporation,        )
                                        )
        Defendants.        )

## STIPULATION OF DISMISSAL WITHOUT PREJUDICE

IT IS HEREBY STIPULATED and agreed by and between the undersigned attorneys for Plaintiff and Defendants that Plaintiff's claims are dismissed in their entirety without prejudice pursuant Fed. R. Civ. P. 41(a)(1).

Respectfully submitted,

Dated: November 13, 2017

s/Terry S. O'Donnell
Terry S. O'Donnell, OBA#13110
Savage, O'Donnell, Affeldt,
   Weintraub & Johnson
110 West 7th Street, Suite 1010
Tulsa, OK 74119
918 599 8400
918 599 8444 (Facsimile)
TSO@SAVAGELAW.CC
Counsel for Vic Regalado and Stanley Glanz

1

EXHIBIT
4

Dated:   November 13, 2017

s/Brendan M. McHugh
Brendan M. McHugh, OBA#18422
P.O. Box 1392
Claremore, OK 74018
Counsel for Plaintiff


Dated: November 13, 2017

s/Dana Jim
Dana Jim, OBA#19495
P.O. Box 1011
Vinita, OK 74301
Counsel for Plaintiff



IN THE DISTRICT COURT OF TULSA COUNTY
STATE OF OKLAHOMA

DISTRICT COURT
**F I L E D**

NOV 1 3 2018

DON NEWBERRY, Court Clerk
STATE OF OKLA. TULSA COUNTY

JOSHAWA CESSOR,                                )
                                               )
        Plaintiff,                             )        DANA LYNN KUEHN
                                               )
v.                                             )        **CJ-2018-04673**
                                               )
BOARD OF COUNTY COMMISIONERS                   )        Refiled from Case No. CJ-2016-2442
OF TULSA COUNTY, a political sub-              )
division and municipal corporation;           )        **ATTORNEY LIEN CLAIMED**
and                                            )        **JURY TRIAL DEMANDED**
ARMOR CORRECTIONAL HEALTH                      )
SERVICES, INC., a foreign corporation,         )
                                               )
        Defendants.                            )

## PETITION

The Plaintiff Joshawa Cessor ("Plaintiff") hereby submits his Petition in the above

captioned matter. In support thereof, Plaintiff alleges and states as follows:

1.      Plaintiff is an individual who sustained injuries while in the Tulsa County

Jail and resided in Broken Arrow, Oklahoma at all material times herein.

2.      Defendant Board of County Commissioners of Tulsa County ("BCCTC") is a

political subdivision and municipal corporation.

3.      Stanley Glanz ("Glanz") was the Tulsa County Sheriff during Plaintiff's

incarceration.

4.      Numerous John and Jane Does were employed at the Tulsa County Jail

during the events at issue herein.

1

EXHIBIT
5

5.     That beginning in early September 2015 until approximately September 15th 2015 Plaintiff was incarcerated at the Tulsa County Jail as a pretrial detainee being held on a warrant issued by the State of New Mexico.

6.     Board of County Commissioners of Tulsa County ("BCCTC") is a political subdivision and municipal corporation and the governing entity of Tulsa County Jail and pursuant to 19 O.S. § 4 is the proper entity to be sued on behalf of Tulsa County Jail.

7.     Defendant ARMOR CORRECTIONAL HEALTH SERVICES, INC. (ACHS) was, at all times relevant hereto, a foreign corporation doing business in Tulsa County, Oklahoma.     ACHS was, at all times relevant hereto, responsible, in part, for providing medical services and medication to Plaintiff while he was in the custody of the Tulsa County Sheriff's Department. ACHS was additionally responsible, in part, for implementing Tulsa County Jail policies regarding medical and mental health care, assisting in developing those policies and in training and supervising its employees.

8.     That Plaintiff previously filed this case in Tulsa County Case No. CJ-2016-2442 and such matter was subsequently removed and dismissed without prejudice on 11/13/2017 and as such this re-filing is timely.

9.     While incarcerated at the Tulsa County Jail, Plaintiff was subjected to an unreasonable seizure prohibited by the Oklahoma Constitution, specifically art. 2 §§ 7 & 30 as a pretrial detainee.

10.     That on or about September 8th 2015 while incarcerated in the Tulsa County Jail, employees of the Tulsa County Jail handcuffed Plaintiff excessively resulting in a fracture and displacement of his right hand as well as paresthesia.  The conduct of

2

the individual employees of the jail is unlawful in that it is excessive force prohibited by the Oklahoma Constitution. Specifically, while being processed into Tulsa County Jail, Plaintiff disclosed that he was in the past hospitalized in New Mexico for suicidal tendencies with depression, anxiety and mental health issues. This resulted in Plaintiff being placed him in a medical/mental unit of the jail. Plaintiff was placed in a jail cell with no clothes and a sheet to cover himself and the guard derisively laughed at him while placing him in the cell with his clothing. While there, Plaintiff began to threaten to call the Mayor and/or an attorney to complain about the conditions in the jail and his treatment. Numerous deputies and Sheriff Glanz appeared and Plaintiff was placed in handcuffs resulting in his hand making a loud popping/cracking sound. Plaintiff immediately hollered in pain. Nevertheless, despite the need for medical attention, Plaintiff was placed in a cell. Plaintiff requested medical care and was in excessive pain for over 20 hours before he was finally taken to an x-ray technician at jail who diagnosed Plaintiff with what was described as a triad break. Subsequently, two physicians with the jail and/or ACHS stated that it was not possible to determine if it was broken and no treatment was rendered by them to Plaintiff. Plaintiff was only given Tylenol a few days later, resulting in severe and unnecessary pain to Plaintiff. Plaintiff made numerous written requests thru the KIOSK system and subsequently Plaintiff attempted to retrieve such requests, the requests were no longer visible and Plaintiff's KIOSK records were wiped clean as there were no other records. After his release from Tulsa County Jail, it was confirmed that Plaintiff had indeed broken his wrist.

11.   After fracturing Plaintiff's wrist, individual employees of the Tulsa County Jail exacerbated Plaintiff's condition by refusing to provide medical treatment to Plaintiff also in violation of Plaintiff's constitutional rights under the Oklahoma Constitution. Further, Plaintiff had mental health needs in that he was diagnosed with anxiety and had other mental health issues that should have been adequately responded to.

12.   Glanz was at all times relevant hereto, the Sheriff of Tulsa County, Oklahoma, residing in Tulsa County, Oklahoma. Glanz, as Sheriff and the head of the Tulsa County Sheriff's Department, was, at all times relevant hereto, responsible for ensuring the safety and well-being of inmates detained and housed at the Tulsa County Jail, including the provision of appropriate medical care and treatment to inmates in need of such care, pursuant to 57 O.S. § 47.

13.   In addition, Glanz was at all times pertinent hereto, responsible for creating, adopting, approving, ratifying, and enforcing the rules, regulations, policies, practices, procedures, and/or customs of the Tulsa County Sheriff's Department and Tulsa County Jail, including the policies, practices, procedures, and/or customs that violated Plaintiff's rights under the Oklahoma Constitution as set forth in this Petition.

## COUNT I

## OKLAHOMA CONSTITUTION – BOSH CLAIM

### As to Defendant BCCTC

14.   In support of Count I, Plaintiff restates and re-alleges the foregoing allegations in their entirety as though fully set forth herein.

4

15.     That while incarcerated in the Tulsa County Jail, Plaintiff was subjected to excessive force in violation of Oklahoma law by certain unknown individuals, John and Jane Does, and once the responsible individuals are learned of and determined with knowledge, a separate excessive force claim will be alleged as to them upon leave of the Court at the time this information is discovered.

16.     Plaintiff was injured by a Tulsa County Jail employee resulting in excessive force and significant injuries to Plaintiff.

17.     Defendants neglected Plaintiff's medical needs by failing to provide medical assistance to Plaintiff after being requested to do so and having actual or constructive knowledge of a medical need.

18.     Defendants' failure provide medical assistance resulted in signification exacerbation of Plaintiff's condition.

19.     Additionally, and/or alternatively, Defendants BCCTC and ACHS violated Plaintiff's rights under the Oklahoma Constitution, and a cause of action exists pursuant to Bosh v. Cherokee County Building Authority, 2013 OK 9, 305 P.3d 994, for violating Plaintiff's rights under Art. 2, § 30 and Art. 2 § 7 of the Oklahoma Constitution

20.     The above described conduct is a direct result of the inadequate training and the failure to properly train employees of the Tulsa County Jail.  This policy is set forth and described in the Order of the Court by Honorable Judge John E. Dowdell in Burke v. Glanz, et al., No. 11-CV-720-JED-PJC, Opinion and Order, (N.D. Okla. July 20th 2016).  Specifically, on three occasions, the staffing, medical treatment of inmates at the Tulsa County Jail was found to be deficient.  Further, Defendant ACHS violated the

5

constitutional rights of inmates by neglecting their medical needs. This resulted in a pattern and policy and actual notice of the deficiencies such that the failure to correct violates Oklahoma law.

21.    Such policies, practices and/or customs include, but are not limited to:

a.    The failure to promulgate, implement or enforce, adequate mental health policies responsive to the serious medical needs of inmates like Plaintiff;

b.    Inadequate medical triage screening that fails to identity inmates with serious medical or mental health needs;

c.    Severe limitation of the use of off-site medical, mental health and diagnostic service providers, even in emergency situations;

d.    Untimely medical and mental health examinations and treatment;

e.    Understaffing the medical unit; and

f.    The failure to adequately train jail personnel and staff with respect to the proper assessment, classification and treatment of inmates with serious medical and mental health needs.

22.    As a result of the above conduct, Plaintiff has suffered injuries and damages as alleged herein.

23..    As a result of Defendants' conduct, Plaintiff has suffered actual damages in excess of $10,000.00.

## COUNT II

## NEGLIGENCE

## (As to Defendants BCCTC and ACHS)

6

24. Plaintiff re-alleges and incorporates by reference the above paragraphs as though fully set forth herein.

25. Prior to filing this action, Plaintiff fully exhausted his rights pursuant to the Oklahoma Governmental Tort Claims Act, 51 O.S. § 151 *et. seq.* (OGTCA).

26. As a result of the negligence of Defendants BCCTC and ACHS, Plaintiff sustained damages.

27. Defendants BCCTC and ACHS owed a duty to Plaintiff, and all other inmates in custody, to use reasonable care to provide inmates in need of medical attention with appropriate assessment, classification and treatment of inmates with serious needs. ACHS was charged with implementing and assisting in developing the policies of the Tulsa County Sheriff's Department with respect to the medical and mental health care of inmates at the Tulsa County Jail and has shared responsibility to adequately train and supervise its employees.

28. The negligence and Oklahoma Constitutional Such policies, practices and/or customs include, but are not limited to:

   a. The failure to promulgate, implement or enforce adequate mental health policies responsive to the serious medical needs of inmates like Plaintiff.

   b. Inadequate medical triage screening that fails to identify inmates with serious medical or mental health needs;

   c. Severe limitation of the use of off-site medical, mental health and diagnostic service providers, even in emergency situations;

   d. Untimely medical and mental health examinations and treatment;

7

e.     Understaffing the medical unit; and

f.     The failure to adequately train ACHS and Tulsa County Jail employees and/or agents with respect to the proper assessment, classification and treatment of inmates with serious needs.

29.     Defendants knew it was obvious that the maintenance of the aforementioned policies, practices and/or customs posed an excessive risk to the health and safety of inmates like Plaintiff.

30.     As a direct and proximate cause of the negligence of BCCTC and ACHS, Plaintiff has suffered damages, in excess of $75,000.00.

WHEREFORE, Plaintiff requests an award of actual damages in excess of $10,000.00 against all Defendants, an award of punitive damages against Defendant ACHS in excess of $10,000.00, the costs of this action, and any other and further relief that this Court deems proper.

Brendan M. McHugh, OBA #18422
Attorney for Plaintiff
P.O. Box 1392
Claremore, OK 74018
Tele: (918) 608-0111
Fax: (918) 803-4910
and
Dana Jim, OBA #19495
P.O. Box 1011
Vinita, OK 74301
Tele: 918-457-6626
Fax: 918-517-3431
Co-Counsel for Plaintiff

8





JOSHAWA CESSOR, )
)
    Plaintiff, )
)
v. )   Case No. CJ-2018-4673
)
BOARD OF COUNTY COMMISSIONERS )   Refiled from Case No. CJ-2016-2442
OF TULSA COUNTY, a political sub- )
division and municipal corporation; )   **ATTORNEY LIEN CLAIMED**
and ARMOR CORRECTIONAL HEALTH )   **JURY TRIAL DEMANDED**
SERVICES, INC., a foreign corporation, )
)
    Defendants. )

### FIRST AMENDED PETITION

The Plaintiff Joshawa Cessor ("Plaintiff") hereby submits his First Amended Petition

in the above captioned matter. In support thereof, Plaintiff alleges and states as follows:

    1.    Plaintiff is an individual who sustained injuries while in the Tulsa County Jail

and resided in Broken Arrow, Oklahoma at all material times herein.

    2.    Defendant Board of County Commissioners of Tulsa County ("BCCTC") is a

political subdivision and municipal corporation.

    3.    Stanley Glanz ("Glanz") was the Tulsa County Sheriff during Plaintiff's

incarceration.

    4.    Numerous John and Jane Does were employed at the Tulsa County Jail

during the events at issue herein.

    5.    That beginning in early September 2015 until approximately September 15th

2015 Plaintiff was incarcerated at the Tulsa County Jail as a pretrial detainee being held

on a warrant issued by the State of New Mexico.

EXHIBIT
6

6.     Board of County Commissioners of Tulsa County ("BCCTC") is a political subdivision and municipal corporation and the governing entity of Tulsa County Jail and pursuant to 19 O.S. § 4 is the proper entity to be sued on behalf of Tulsa County Jail.

7.     Defendant Armor Correctional Health Services, Inc. (ACHS) was, at all times relevant hereto, a foreign corporation doing business in Tulsa County, Oklahoma.   ACHS was, at all times relevant hereto, responsible, in part, for providing medical services and medication to Plaintiff while he was in the custody of the Tulsa County Sheriff's Department. ACHS was additionally responsible, in part, for implementing Tulsa County Jail policies regarding medical and mental health care, assisting in developing those policies and in training and supervising its employees.

8.     That Plaintiff previously filed this case in Tulsa County Case No. CJ-2016-2442 and such matter was subsequently removed and dismissed without prejudice on November 13, 2017, and as such this re-filing is timely.  Further, Plaintiff filed his Petition in Tulsa County Case No. CJ-2018-4673 on November 13, 2018, and amendment is permissible under 12 O.S. § 2015.

9.     While incarcerated at the Tulsa County Jail, Plaintiff was subjected to an unreasonable seizure prohibited by the Oklahoma Constitution, specifically Art. 2 §§ 7, 9, and 30 as a pretrial detainee.

10.     That on or about September 8th 2015 while incarcerated in the Tulsa County Jail, employees of the Tulsa County Jail handcuffed Plaintiff excessively resulting in a fracture and displacement of his right hand as well as paresthesia.  The conduct of the individual employees of the jail is unlawful in that it is excessive force prohibited by the

2

EXHIBIT
6

Oklahoma Constitution. Specifically, while being processed into Tulsa County Jail, Plaintiff disclosed that he was in the past hospitalized in New Mexico for suicidal tendencies with depression, anxiety and mental health issues. This resulted in Plaintiff being placed him in a medical/mental unit of the jail. Plaintiff was placed in a jail cell with no clothes and a sheet to cover himself and the guard derisively laughed at him while placing him in the cell with his clothing. While there, Plaintiff began to threaten to call the Mayor and/or an attorney to complain about the conditions in the jail and his treatment. Numerous deputies and Sheriff Glanz appeared and Plaintiff was placed in handcuffs resulting in his hand making a loud popping/cracking sound. Plaintiff immediately hollered in pain. Nevertheless, despite the need for medical attention, Plaintiff was placed in a cell. Plaintiff requested medical care and was in excessive pain for over 20 hours before he was finally taken to an x-ray technician at jail who diagnosed Plaintiff with what was described as a triad break. Subsequently, two physicians with the jail and/or ACHS stated that it was not possible to determine if it was broken and no treatment was rendered by them to Plaintiff. Plaintiff was only given Tylenol a few days later, resulting in severe and unnecessary pain to Plaintiff. Plaintiff made numerous written requests thru the KIOSK system and subsequently Plaintiff attempted to retrieve such requests, the requests were no longer visible and Plaintiff's KIOSK records were wiped clean as there were no other records. After his release from Tulsa County Jail, it was confirmed that Plaintiff had indeed broken his wrist.

11.    After fracturing Plaintiff's wrist, individual employees of the Tulsa County Jail exacerbated Plaintiff's condition by refusing to provide medical treatment to Plaintiff

3

also in violation of Plaintiff's constitutional rights under the Oklahoma Constitution. Further, Plaintiff had mental health needs in that he was diagnosed with anxiety and had other mental health issues that should have been adequately responded to.

12. Glanz was at all times relevant hereto, the Sheriff of Tulsa County, Oklahoma, residing in Tulsa County, Oklahoma. Glanz, as Sheriff and the head of the Tulsa County Sheriff's Department, was, at all times relevant hereto, responsible for ensuring the safety and well-being of inmates detained and housed at the Tulsa County Jail, including the provision of appropriate medical care and treatment to inmates in need of such care, pursuant to 57 O.S. § 47.

13. In addition, Glanz was at all times pertinent hereto, responsible for creating, adopting, approving, ratifying, and enforcing the rules, regulations, policies, practices, procedures, and/or customs of the Tulsa County Sheriff's Department and Tulsa County Jail, including the policies, practices, procedures, and/or customs that violated Plaintiff's rights under the Oklahoma Constitution as set forth in this Petition.

## COUNT I

## OKLAHOMA CONSTITUTION – BOSH CLAIM

### As to Defendant BCCTC

14. In support of Count I, Plaintiff restates and re-alleges the foregoing allegations in their entirety as though fully set forth herein.

15. That while incarcerated in the Tulsa County Jail, Plaintiff was subjected to excessive force in violation of Oklahoma law by certain unknown individuals, John and Jane Does, and once the responsible individuals are learned of and determined with

knowledge, a separate excessive force claim will be alleged as to them upon leave of the Court at the time this information is discovered.

16.     Plaintiff was injured by a Tulsa County Jail employee resulting in excessive force and significant injuries to Plaintiff.

17.     Defendants neglected Plaintiff's medical needs by failing to provide medical assistance to Plaintiff after being requested to do so and having actual or constructive knowledge of a medical need.

18.     Defendants' failure provide medical assistance resulted in signification exacerbation of Plaintiff's condition.

19.     Additionally, and/or alternatively, Defendants BCCTC and ACHS violated Plaintiff's rights under the Oklahoma Constitution, and a cause of action exists pursuant to Bosh v. Cherokee County Building Authority, 2013 OK 9, 305 P.3d 994, for violating Plaintiff's rights under Art. 2 §§ 7, 9, and 30 of the Oklahoma Constitution.

20.     The above described conduct is a direct result of the inadequate training and the failure to properly train employees of the Tulsa County Jail. This policy is set forth and described in the Order of the Court by Honorable Judge John E. Dowdell in Burke v. Glanz, et al., No. 11-CV-720-JED-PJC, Opinion and Order (N.D. Okla. July 20th 2016). Specifically, on three occasions, the staffing, medical treatment of inmates at the Tulsa County Jail was found to be deficient. Further, Defendant ACHS violated the constitutional rights of inmates by neglecting their medical needs. This resulted in a pattern and policy and actual notice of the deficiencies such that the failure to correct violates Oklahoma law.

21. Such policies, practices and/or customs include, but are not limited to:

a. The failure to promulgate, implement or enforce, adequate mental health policies responsive to the serious medical needs of inmates like Plaintiff;

b. Inadequate medical triage screening that fails to identity inmates with serious medical or mental health needs;

c. Severe limitation of the use of off-site medical, mental health and diagnostic service providers, even in emergency situations;

d. Untimely medical and mental health examinations and treatment;

e. Understaffing the medical unit; and

f. The failure to adequately train jail personnel and staff with respect to the proper assessment, classification and treatment of inmates with serious medical and mental health needs.

22. As a result of the above conduct, Plaintiff has suffered injuries and damages as alleged herein.

23. As a result of Defendants' conduct, Plaintiff has suffered actual damages in excess of $10,000.00.

## COUNT II

## NEGLIGENCE

## (As to Defendants BCCTC and ACHS)

24. Plaintiff re-alleges and incorporates by reference the above paragraphs as though fully set forth herein.

25.     Prior to filing this action, Plaintiff fully exhausted his rights pursuant to the Oklahoma Governmental Tort Claims Act, 51 O.S. § 151 *et. seq.* (OGTCA).

26.     As a result of the negligence of Defendants BCCTC and ACHS, Plaintiff sustained damages.

27.     Defendants BCCTC and ACHS owed a duty to Plaintiff, and all other inmates in custody, to use reasonable care to provide inmates in need of medical attention with appropriate assessment, classification and treatment of inmates with serious needs. ACHS was charged with implementing and assisting in developing the policies of the Tulsa County Sheriff's Department with respect to the medical and mental health care of inmates at the Tulsa County Jail and has shared responsibility to adequately train and supervise its employees.

28.     The negligence and Oklahoma Constitutional violations Such policies, practices and/or customs include, but are not limited to:

a.     The failure to promulgate, implement or enforce adequate mental health policies responsive to the serious medical needs of inmates like Plaintiff.

b.     Inadequate medical triage screening that fails to identify inmates with serious medical or mental health needs;

c.     Severe limitation of the use of off-site medical, mental health and diagnostic service providers, even in emergency situations;

d.     Untimely medical and mental health examinations and treatment;

e.     Understaffing the medical unit; and

f.    The failure to adequately train ACHS and Tulsa County Jail employees and/or agents with respect to the proper assessment, classification and treatment of inmates with serious needs.

29.    Defendants knew it was obvious that the maintenance of the aforementioned policies, practices and/or customs posed an excessive risk to the health and safety of inmates like Plaintiff.

30.    As a direct and proximate cause of the negligence of BCCTC and ACHS, Plaintiff has suffered damages, in excess of $75,000.00.

WHEREFORE, Plaintiff requests an award of actual damages in excess of $10,000.00 against all Defendants, an award of punitive damages against Defendant ACHS in excess of $10,000.00, the costs of this action, and any other and further relief that this Court deems proper.

Brendan M. McHugh, OBA #18422
Attorney for Plaintiff
P.O. Box 1392
Claremore, OK 74018
Tele: (918) 608-0111
Fax: (918) 803-4910
and
Dana Jim, OBA #19495
P.O. Box 1011
Vinita, OK 74301
Tele: 918-457-6626
Fax: 918-517-3431
Co-Counsel for Plaintiff



IN THE DISTRICT COURT OF TULSA COUNTY
STATE OF OKLAHOMA



DISTRICT COURT
**FILED**

APR 02 2019

DON NEWBERRY, Court Clerk
STATE OF OKLA. TULSA COUNTY

JOSHAWA CESSOR,                          )
                                         )
          Plaintiff,                     )
                                         )
v.                                       )        Case No. CJ-2018-4673
                                         )
BOARD OF COUNTY COMMISIONERS             )   Re-filed from Case No. CJ-2018-2442
OF TULSA COUNTY, a political sub-        )
division and municipal corporation;      )        **ATTORNEY LIEN CLAIMED**
STANLEY GLANZ, individually;             )
VIC REGALADO, in his official capacity;  )        **JURY TRIAL DEMANDED**
and ARMOR CORRECTIONAL HEALTH            )
SERVICES, INC., a foreign corporation,   )
                                         )
          Defendants.                    )

### PLAINTIFF'S PARTIAL DISMISSAL WITHOUT PREJUDICE

COMES NOW the Plaintiff and dismisses without prejudice pursuant to

BARRIOS v. HASKELL COUNTY PUBLIC FACILITIES AUTHORITY; FOUTCH v.

TURN KEY HEALTH, 2018 OK 90, _____ P. 3d _____ (not yet released for

publication) his claims predicated on art. 2 §§ 7 & 9 of the Oklahoma

Constitution. Plaintiff still asserts his Bosh claim predicated on art. 2 § 30 of the

Oklahoma Constitution and all other claims set forth in his first amended petition.

                              _____
                              Brendan M. McHugh, OBA #18422
                              Attorney for Plaintiff
                              P.O. Box 1392
                              Claremore, OK 74018
                              Tele:(918) 608-0111
                              Fax: (918) 803-4910
                              Attorneys for Plaintiffs

1

**EXHIBIT**

**7**

UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF OKLAHOMA

WESLEY PRINCE,               )
                                     )
            Plaintiff,         )
                                     )
v.                              )         Case No. 18-CV-0282-CVE-JFJ
                                     )
TURN KEY HEALTH CLINICS, LLC,  )
                                     )
            Defendant.[1]     )

**OPINION AND ORDER**

Now before the Court is defendant Turn Key Health Clinics, LLC's motion to dismiss (Dkt. # 23) the amended complaint (Dkt. # 20) pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. Plaintiff filed a response in opposition to Turn Key's motion (Dkt. # 38), and Turn Key filed a reply (Dkt. # 44). Turn Key subsequently filed a notice of supplemental legal authority (Dkt. # 49).

**I.**

On July 18, 2018, plaintiff filed an amended complaint (Dkt. # 20) against, inter alia, Turn Key asserting a cause of action for negligence under the Oklahoma Governmental Tort Claims Act (OGTCA) and common law (count one), and a cause of action for deliberate indifference and conditions of confinement pursuant to 42 U.S.C. § 1983 (count two). Id. at 9-13.

---

[1]    Plaintiff originally brought this action against sixteen defendants. On June 18, 2018, plaintiff filed an amended complaint (Dkt. # 20), terminating defendants Board of County Commissioners for the County of Tulsa and Tulsa County Sheriff Vic Regalado. On July 23, 2018, plaintiff filed a stipulation of dismissal (Dkt. # 39) without prejudice as to defendants William Cooper, Flint Junod, Jesse White, Jane Kirby, Jon Echols, Trent Smith, Cindy Bilyeu, Nicole Cobb, Tamera Jackson, Danny Hickman, and Rhett Burnett. On August 17, 2018 and August 20, 2018, plaintiff filed joint stipulations of dismissal (Dkt. ## 45, 48) as to defendants City of Tulsa and Stephen Tidwell, respectively. Therefore, defendant Turn Key Health Clinics, LLC is to sole defendant remaining in this case.

EXHIBIT

8

Defendant Turn Key is an Oklahoma for-profit corporation that has contracted with the Board of County Commissioners for Tulsa County ("the Board") and Tulsa County Sheriff Vic Regalado to deliver mental and medical healthcare to arrestees at the David L. Moss Criminal Justice Center (DLMCJC). Id. at 2-3. Plaintiff alleges that, through these government contracts, Turn Key assumes responsibility for the government's obligation under state and federal law to provide healthcare services to people who are not free to seek healthcare for themselves. Id. at 3-4. Plaintiff alleges that Turn Key has implemented policies, procedures, customs, or practices to reduce the cost of healthcare services in a manner that would maintain or increase their profit margin. Id. at 4. Plaintiff claims that Turn Key's contract does not contain any provisions creating or establishing a mandatory minimum expenditure for the provision of healthcare services, and that the contract incentivizes cost-cutting measures in the delivery of healthcare services at DLMCJC in order to benefit Turn Key's investors. Id. at 4-5. Plaintiff alleges that, as a result, DLMCJC arrestees are deprived of adequate medical care. Id. at 5.

Plaintiff alleges that, on the evening of January 9, 2017, he became disoriented and wandered off of his job-site as a result of acute symptoms associated with renal failure and the onset of respiratory failure due to pneumonia. Id. Plaintiff asserts that at around 11:00 p.m. he encountered a Tulsa Police Department (TPD) officer, who, concerned for plaintiff's "obvious distress," called an ambulance to evaluate him. Id. Plaintiff claims that another TPD officer arrived shortly thereafter and arrested plaintiff on suspicion of public intoxication.[2] Id.

---

[2]     Plaintiff alleges that the arresting officer did not administer a field test or permit the medical providers to evaluate him prior to arresting him. Dkt. # 20, at 5. The allegations regarding the acts or omissions of the TPD officers are no longer at issue, however, because the City of Tulsa has been terminated as a defendant in this case. Dkt. # 45.

Plaintiff was processed into DLMCJC at 12:10 a.m. on January 10, 2017, and, approximately

four hours later, he received an intake screening by Turn Key's intake employee. Id. at 6. Plaintiff

alleges that he informed Turn Key's intake employee that (1) he was not a drug user; (2) he was

suffering from a medical emergency; and (3) he was in need of immediate medical assistance. Id.

Plaintiff claims that Turn Key's intake employee disregarded plaintiff's statements, physical

conditions, and "obvious signs of distress" by failing to properly screen, diagnose, or treat plaintiff

for his "serious, life-threatening" condition. Id. According to plaintiff, Turn Key's intake employee

noted that plaintiff was intoxicated and potentially a danger to himself, and placed plaintiff on

suicide watch, but failed to order any drug screen or have plaintiff assessed by a medical doctor. Id.

Plaintiff claims that the Turn Key intake employee's decision not to order a drug screen was directly

related to Turn Key's cost-saving practices, and that such practices exposed plaintiff to a "substantial

risk of serious harm by failing to take reasonable steps to determine the nature of [plaintiff's]

worsening medical condition." Id.

Plaintiff alleges that Turn Key recommended him for general population housing, which

plaintiff argues was in violation of Oklahoma jail standards requiring close supervision of persons

in need of medical care. Id. Plaintiff alleges that Turn Key's classification of plaintiff was

inadequate, and was directly caused by Turn Key's failure to provide adequate training and resources

to the intake employee related to the Oklahoma jail standards, the National Commission on

Correctional Health Care (NCCHC) standards, and "basic constitutional duties regarding the

provision of adequate medical care and supervision." Id. at 7.

Plaintiff alleges that at approximately 10:00 a.m. on January 10, 2017, a Turn Key therapist

noted that plaintiff appeared to be getting more intoxicated, was unsure of where he was or how he

3

got there, and was unable to take care of himself. Id. Plaintiff alleges that, despite this note, plaintiff was not administered a drug test or provided care, and was placed back in general population. Id. Plaintiff alleges that when he returned to the general population, he and other inmates at DLMCJC begged "Jailers"[3] to get help for plaintiff. Id.

Plaintiff alleges that on January 11, 2017 at approximately 6:06 p.m., plaintiff was moved to the infirmary at DLMCJC. Id. Plaintiff alleges that, despite not administering a drug test, Turn Key put plaintiff on an opiate withdrawal protocol. Id. Further, plaintiff alleges that Turn Key ordered multiple medications, despite the fact that no testing was done, no hands-on medical care was provided by a physician, and no diagnosis had been made. Id. Plaintiff alleges that, for the next six days, his condition continued to worsen as his kidneys and lungs began shutting down. Id. Plaintiff alleges that his condition had deteriorated to a point where he was unresponsive, disoriented, and having difficulty breathing. Id. at 8. Plaintiff alleges that Turn Key did not conduct further testing or inquiry into plaintiff's condition. Id. at 7.

Plaintiff alleges that, on January 17, 2017, Turn Key diagnosed plaintiff with pneumonia and administered two liters of normal saline. Id. at 8. At some point on January 17, plaintiff was transported to St. John Medical Center (SJMC). Plaintiff claims that SJMC hospital records do not memorialize any effort at DLMCJC to initiate antibiotics prior to his arrival at the emergency department. Id. Plaintiff alleges that the SJMC records further indicate that Turn Key employees were well aware that plaintiff's conditions had begun seven days prior to his arrival at the emergency department. Id. Plaintiff alleges that the emergency department determined that plaintiff was

---

[3] Plaintiff does not define the term "Jailers." The Court assumes that plaintiff is referring to jail officials, rather than Turn Key employees.

4

suffering from renal and respiratory failure and, therefore, he was intubated and admitted to the intensive care unit (ICU) in critical condition. Id. Plaintiff alleges that, due to his kidney failure, he was placed on hemodialysis at least once per day from January 17 - 21, 2017, and again on January 23, 2017. Id. at 9. Plaintiff alleges that he was moved from the ICU to a regular patient room on January 22, 2017, and remained there for another six days until his discharge on January 28, 2017. Id.

## II.

In considering a motion to dismiss under Rule 12(b)(6), a court must determine whether the claimant has stated a claim upon which relief may be granted. A motion to dismiss is properly granted when a complaint provides no "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007). A complaint must contain enough "facts to state a claim to relief that is plausible on its face" and the factual allegations "must be enough to raise a right to relief above the speculative level." Id. (citations omitted). "Once a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint." Id. at 562. For the purpose of making the dismissal determination, a court must accept all the well-pleaded allegations of the complaint as true, even if doubtful in fact, and must construe the allegations in the light most favorable to a claimant. Id. at 555; Alvarado v. KOB-TV, L.L.C., 493 F.3d 1210, 1215 (10th Cir. 2007); Moffett v. Halliburton Energy Servs., Inc., 291 F.3d 1227, 1231 (10th Cir. 2002).

## III.

Defendant seeks dismissal of plaintiff's amended complaint pursuant to Rule 12(b)(6), arguing that plaintiff has failed to state a claim upon which relief can be granted under federal law

or Oklahoma state law. Dkt. # 23. The Court first addresses defendant's arguments for dismissing

plaintiff's federal law claim (count two), and then turns to defendant's arguments for dismissing

plaintiff's Oklahoma state law claim (count one).

### A. 42 U.S.C. § 1983

In order to state a viable claim under § 1983, a plaintiff must plead that the conduct

complained of was committed by a person acting under color of state law, and that such conduct

deprived the plaintiff of a right, privilege, or immunity secured by the Constitution and laws of the

United States. West v. Atkins, 487 U.S. 42, 48 (1988).

### 1. Acting Under Color of State Law

"Under Section 1983, liability attaches only to conduct occurring 'under color of state law.'

Thus, the only proper defendants in a Section 1983 claim are those who 'represent [the state] in some

capacity, whether they act in accordance with their authority or misuse it.'" Gallagher v. Neil Young

Freedom Concert, 49 F.3d 1442, 1447 (10th Cir. 1995) (quoting Nat'l Collegiate Athletic Ass'n v.

Tarkanian, 488 U.S. 179, 191 (1998)) (alteration in original). As a grounds for its motion to dismiss,

Turn Key argues that it is not the proper defendant for plaintiff's § 1983 claim based on conditions

of confinement,[4] because the requirement to provide humane conditions of confinement applies to

jail officials and the sheriff, not to a private medical contractor such as Turn Key. Dkt. # 23, at 17.

---

[4]  Plaintiff asserts two bases for his § 1983 claim: deliberate indifference and conditions of confinement. Although defendant argues that Turn Key is not the proper defendant for the "conditions of confinement" basis only, both the "deliberate indifference" basis and the "conditions of confinement" basis relate to the government's obligation to provide adequate medical care to detainees. See Wilson v. Seiter, 501 U.S. 294, 299 n.1 (1991) ("[I]f an individual prisoner is deprived of needed medical treatment, that is a condition of *his* confinement"). Therefore, the analysis for determining whether Turn Key can be considered to have been acting under color of state law in providing medical care to plaintiff and, thus, whether Turn Key is a proper defendant for plaintiff's § 1983 claim is the same for both bases of plaintiff's § 1983 claim.

Most defendants in § 1983 suits are public employees, but in certain circumstances, private persons can also act under color of state law. In West, the Supreme Court held that a private doctor, who had contracted with the state to medical services to inmates, was acting under color of state law for purposes of a § 1983 suit. West, 487 U.S. at 44, 54-55. The Court reasoned that, because "[t]he State was constitutionally obligated to provide medical treatment to injured inmates, . . . the delegation of that traditionally exclusive function to a private physician gave rise to a finding of state action." Am. Mfrs. Mut. Ins. Co. v. Sullivan, 526 U.S. 40, 55 (1999) (summarizing the Court's reasoning in West). Thus, as a matter of law, a private party that has contracted to provide healthcare services to inmates and pretrial detainees is acting under color of state law in providing those services and is, therefore, a proper defendant in a § 1983 suit.

Here, plaintiff alleges that the Board and the Tulsa County Sheriff are obligated under state and federal law to provide medical care to inmates and pretrial detainees, and that Turn Key, a private corporation, has assumed responsibility for this obligation by contracting with the Board and the sheriff to deliver those healthcare services. Dkt. # 20, at 2-4. The Court finds that such allegations are sufficient to plausibly allege that Turn Key was acting under color of state law for purposes of § 1983 when undertaking its duties to provide medical care to plaintiff. Accordingly, the Court finds that Turn Key is the proper defendant for plaintiff's § 1983 claim.

### 2. "Persons" to Whom § 1983 Applies and Municipal Liability Theory

Before turning to whether plaintiff has sufficiently alleged the deprivation of a constitutional right, the Court must first consider whether a corporation--as opposed to an individual--acting under color of state law can be considered a "person" subject to liability under § 1983, and, if so, under what theory. In Monell v. Department of Social Services of New York, 436 U.S. 658 (1978), the

Supreme Court held that a municipality is "included among those persons to whom § 1983 applies," but it cannot be held liable under § 1983 solely because it employs a tortfeasor (i.e., pursuant to a respondeat superior theory). Id. at 690-91. Rather, a municipality can be held liable under § 1983 only if it has an "official municipal policy of some nature" that "'causes' an employee to violate another's constitutional rights." Id. at 691-92. The Tenth Circuit has held that Monell's municipal liability theory applies equally to private entities acting under color of state law. Dubbs v. Head Start, Inc., 336 F.3d 1194, 1216 n.13 (10th Cir. 2003). Thus, in order to maintain a § 1983 claim against Turn Key, plaintiff must sufficiently allege a theory of municipal liability.[5]

Defendant argues that plaintiff has failed to allege facts sufficient to state a constitutional claim based on municipal liability. To establish municipal liability, a plaintiff must show (1) the existence of a policy or custom, and (2) that there is a direct causal link between the policy or custom and the constitutional injury alleged. Bryson v. Oklahoma City, 627 F.3d 784, 788 (2010). "When the asserted policy consists of the failure to act, the plaintiff must demonstrate that the municipality's inaction was the result of 'deliberate indifference' to the rights of its inhabitants." Hinton v. City of Elwood, Kan., 997 F.2d 774, 782 (10th Cir. 1993). The Tenth Circuit has described several types of actions which may constitute a municipal policy or custom:

---

[5]      Accordingly, Turn Key may not be sued under § 1983 based on a theory of respondeat superior. Nonetheless, plaintiff argues that the federalism concerns that compelled the Supreme Court's bar against respondeat superior liability in Monell are not present here and, therefore, the Court may impose respondeat superior liability for constitutional violations committed by corporate entities. Dkt. # 38, at 11. However, the Tenth Circuit case law clearly establishes that private corporations acting under color of state law cannot be held liable under § 1983 based on a theory of respondeat superior. This Court is bound by that clearly established precedent.

(1) "a formal regulation or policy statement"; (2) an informal custom "amoun[ting] to 'a widespread practice that, although not authorized by written law or express municipal policy, is so permanent and well settled as to constitute a custom or usage with the force of law'"; (3) "the decisions of employees with final policy-making authority"; (4) "the ratification by such final policymakers of the decisions–and the basis for them–of subordinates to whom authority was delegated subject to these policymakers' review and approval"; or (5) the "failure to adequately train or supervise employees, so long as that failure results from 'deliberate indifference' to the injuries that may be caused."

Bryson, 627 F.3d at 788 (quoting Brammer-Hoelter v. Twin Peaks Charter Acad., 602 F.3d 1175, 1189-90 (10th Cir. 2010)). Plaintiff relies on the first and the fifth of these potential grounds for municipal liability.[6]

### a. Formal Policy or Regulation

Plaintiff alleges that Turn Key has a policy of reducing the cost of healthcare services in a manner that would maintain or increase its profit margin. Dkt. # 20, at 4. Plaintiff further alleges that Turn Key's contract incentivizes cost-cutting measures in the delivery of healthcare services at DLMCJC to benefit Turn Key's investors, while depriving arrestees at DLMCJC from receiving adequate medical care. Id. at 5. Taking the allegations in plaintiff's complaint as true, the Court finds that plaintiff has alleged facts sufficient–albeit, minimally sufficient–to plausibly allege the existence of a policy or custom of cost-saving.

---

[6]   Defendant argues that plaintiff cannot maintain a § 1983 claim against Turn Key under a municipal liability theory because Turn Key did not have final decision-making authority for DLMCJC. As noted, however, Bryson provides that "the decisions of employees with final policy-making authority" and "the ratification by such final policymakers of the decisions . . . of subordinates" are simply two of five alternative grounds for establishing municipal liability. Where a plaintiff relies on any of the three remaining grounds for municipal liability, as plaintiff does here, the defendant need not have final decision-making authority. Accordingly, the Court rejects defendant's argument that the § 1983 claim must be dismissed because Turn Key does not have final decision-making authority for DLMCJC.

In terms of causation, plaintiff alleges that Turn Key's cost-saving practices directly resulted in the Turn Key intake employee's decision not to order a drug screen at intake. However, this allegation, without more, fails to directly link the cost-saving practices to the constitutional injury alleged. As discussed in more detail below, the constitutional injury alleged is the denial of adequate medical care. Plaintiff does not assert that his constitutional injury resulted from an intake employee's decision not to order a drug screen at intake (and, in any case, the Court assumes that the failure to order a drug screen, without more, would not state a prima facie claim of Eighth Amendment cruel and unusual punishment based on the denial of medical care). Even assuming, for the purposes of analysis, that the alleged failure to order a drug screen is one of many alleged acts or omissions that, combined, amount to a denial of medical care, plaintiff fails to allege any other specific acts or omissions that were directly caused by Turn Key's cost-saving practice. Similarly, the Court finds that plaintiff's allegation that the cost-saving practices "exposed plaintiff to a substantial risk of serious harm by failing to take reasonable steps to determine the nature of plaintiff's worsening medical condition" is generalized and speculative. To sufficiently allege causation for the purposes of municipal liability, plaintiff must allege the specific treatments or care that he was denied as a result of the cost-saving practices.[7] Moreover, to move beyond the realm of

---

[7]       In Sherman v. Klenke, 653 Fed. App'x 580 (10th Cir. 2006), the Tenth Circuit stated that it "find[s] persuasive the Third Circuit's decision in Winslow v. Prison Health Services[, 406 Fed. App'x 671 (3d Cir. 2011).]" Id. at 592 (This and other cited unpublished decisions are not precedential, but may be cited for their persuasive value. See Fed. R. App. P. 32.1; 10th Cir. R. 32.1.). In Winslow, the Third Circuit explained that, to sufficiently plead that a cost-cutting policy caused the alleged violation, the complaint must allege "(1) what the relevant policies are, (2) what basis [plaintiff] has for thinking that policies to save money affected his medical treatment, [and] (3) what specific treatment he was denied as a result of these policies." Winslow, 406 Fed. App'x at 674. This Court agrees with the Tenth Circuit that the Third Circuit's decision in Winslow is persuasive.

speculation, plaintiff must allege his basis for asserting that the denial of those treatments or care was a result of the cost-saving practices.[8] Accordingly, the Court finds that plaintiff failed to sufficiently allege that Turn Key has a formal policy or custom that directly caused the constitutional injury alleged.

### b. Failure to Adequately Train Employees

Plaintiff also relies on the fifth of the potential grounds for municipal liability, which is the failure to adequately train or supervise employees. In City of Canton v. Harris, 489 U.S. 378 (1989), the Supreme Court set forth the requirements for maintenance of an action for failure to adequately train: plaintiff must identify a particular deficiency in the training program and show a causal link between the training deficiency and the plaintiff's constitutional injury. Id. at 391. Here, plaintiff alleges that Turn Key failed to "provide adequate training and resources to the intake employee related to the Oklahoma Jail Standards, the NCCHC standards, and basic constitutional duties regarding the provision of adequate medical care and supervision." Dkt. # 20, at 7. As an initial matter, it is relevant that plaintiff alleges that Turn Key failed to provide adequate training and resources to "the intake employee," as opposed to all employees or all intake employees. Id. (emphasis added). In Canton, the Supreme Court explained that the fact "[t]hat a particular officer may be unsatisfactorily trained will not alone suffice to fasten liability on the city, for the officer's shortcomings may have resulted from factors other than a faulty training program." Canton, 489 U.S. at 390-91. Therefore, to the extent plaintiff alleges that Turn Key failed to provide

---

[8]    The Monell opinion stresses the importance of the "causation" element for municipal liability. The Court explains that "Congress did not intend § 1983 liability to attach where such causation was absent." Monell, 436 U.S. at 692. Moreover, the "causation" element is the factor that distinguishes the municipal liability theory from the respondeat superior theory.

adequate training to only the Turn Key intake employee that assisted plaintiff, such an allegation is insufficient to establish a policy or custom for municipal liability. Assuming, for the purposes of analysis, that plaintiff is alleging that Turn Key's training program for all employees is inadequate, the particular deficiency identified by plaintiff is the failure to train on the Oklahoma Jail Standards, the NCCHC standards, and basic constitutional duties regarding the provision of adequate medical care and supervision. In terms of causation, plaintiff alleges that the failure to adequately train "directly caused" Turn Key's "inadequate classification" of plaintiff when recommending him for general population housing, because such a classification violated the Oklahoma jail standards. However, the Court finds that such an allegation fails to show a causal link between the training deficiency and the constitutional injury alleged. The constitutional injury alleged is not that plaintiff was placed in general population housing. As discussed, the constitutional injury alleged is the denial of adequate medical care. Accordingly, plaintiff must allege how the failure to adequately train directly caused the denial of adequate medical care.

Moreover, as noted, "municipal liability based on a policy of inadequate training requires proof of the municipality's 'deliberate indifference' to its inhabitants–i.e. the failure to train must 'reflect a "deliberate" or "conscious" choice by a municipality.'" Barney v. Pulsipher, 143 F.3d 1299, 1307 (10th Cir. 1998).

> The deliberate indifference standard may be satisfied when the municipality has actual or constructive notice that its action or failure to act is substantially certain to result in a constitutional violation, and it consciously or deliberately chooses to disregard the risk of harm. In most instances, notice can be established by proving the existence of a pattern of tortious conduct. In a "narrow range of circumstances," however, deliberate indifference may be found absent a pattern of unconstitutional behavior if a violation of federal rights is "highly predictable" or "plainly obvious" consequence of a

12

> municipality's action or inaction, such as when a municipality fails to train an employee in specific skills needed to handle recurring situations, thus presenting an obvious potential for constitutional violations.

Id. at 1307-08.  Plaintiff does not allege any facts whatsoever that would allow the Court to reasonably infer that the alleged failure to provide adequate training resulted from Turn Key's deliberate indifference.  Although plaintiff alleges that "Turn Key knew from prior incidents that its practices caused constitutional violations, and that future constitutional violations were a highly predictable or plainly obvious consequence of enforcing them," plaintiff does not explain whether he is referring to the alleged cost-saving practices or the alleged failure to train, and does not identify those "prior incidents."  Moreover, plaintiff's allegation is merely a bare recitation of Barney's requirements for establishing deliberate indifference in the municipal liability context. See Ashcroft v. Iqbal, 556 U.S. 662, 578 (2009) (holding that complaints that offer no more than "labels and conclusions" or "a formulaic recitations of the elements of action will not do").  Accordingly, the Court finds that plaintiff failed to sufficiently allege municipal liability based on either a formal regulation or policy statement, or a failure to provide adequate training to employees.

### 3. Conduct Violated a Constitutional Right

Even if plaintiff had sufficiently alleged municipal liability, plaintiff must also sufficiently allege that he was deprived of a right, privilege, or immunity secured by the Constitution and laws of the United States.  Plaintiff's amended complaint purports to state a claim for deliberate indifference[9] and conditions of confinement relating to the provision of adequate medical care and supervision.  Dkt. # 20, at 7, 11.  It is well-established that states have a duty, imposed under either

---

[9]   "Deliberate indifference . . . is defined differently for Eighth Amendment and municipal liability purposes." Barney, 143 F.3d at 1307 n.5.

13

the Eighth Amendment (as applied to the states through the Fourteenth Amendment) with respect to convicted prisoners, or the Due Process Clause of the Fourteenth Amendment with respect to pretrial detainees in state custody, to "provide humane conditions of confinement by ensuring inmates receive the basic necessities of adequate . . . medical care . . . ." Barney v. Pulsipher, 143 F.3d 1299, 1310 (10th Cir. 1998) (citing Farmer v. Brennan, 511 U.S. 825, 832-33 (1994)). Because plaintiff was a pretrial detainee, the Due Process Clause governs his claim of unconstitutional medical care; however, the Eighth Amendment standard provides the benchmark for such claims. Craig v. Eberly, 164 F.3d 490, 495 (10th Cir. 1998). Therefore, the Court considers whether plaintiff has sufficiently alleged a claim under the Eighth Amendment.[10]

To demonstrate a prima facie case of Eighth Amendment cruel and unusual punishment based on the denial of medical care, a plaintiff must establish that the defendant acted with "deliberate indifference to [his] serious medical needs." Estelle v. Gamble, 429 U.S. 97, 106 (1976). There are two components to this standard: first, a plaintiff must make an "objective" showing that the deprivation was "sufficiently serious"; and, second, a plaintiff must make a "subjective" showing that the defendant acted with "a sufficiently culpable state of mind." Wilson, 501 U.S. at 298.

---

[10]     As a grounds for its motion to dismiss, defendant argues that plaintiff's amended complaint does not articulate the specific constitutional right of which he was allegedly deprived. The Court notes that, although plaintiff does not use the phrases "Eighth Amendment," "Due Process Clause," or "Fourteenth Amendment" in his amended complaint, the failure to cite to specific constitutional provisions does not necessitate dismissal. Plaintiff clearly identifies deliberate indifference to his medical needs and conditions of confinement as the bases of his § 1983 claim. As noted, it is well-established that pretrial detainees have a constitutional right to adequate medical care. In fact, defendant concedes that "it is reasonable to infer from the plain language of the Complaint that Plaintiff is asserting an Eighth Amendment violation based on his claim of inadequate medical care." Dkt. # 23, at 10. Therefore, the Court finds that plaintiff sufficiently identified a constitutional right.

14

Plaintiff argues that he does not need to establish the subjective component of the deliberate indifference standard for an Eighth Amendment violation, because "deliberate indifference in the entity context is an objective standard." Dkt. # 20, at 6. Plaintiff is correct that "deliberate indifference" in the municipal liability context is an objective standard; however, plaintiff fails to realize that he is required to allege municipal liability in addition to the underlying constitutional violation. See Monell, 436 U.S. at 692. Therefore, the "deliberate indifference" standard in the municipal liability context is separate from, and in addition to, the "deliberate indifference" standard in the Eighth Amendment context. Accordingly, plaintiff is required to sufficiently allege both the objective component and the subjective component of the deliberate indifference standard for an Eighth Amendment violation.

### a. Objective Component

To satisfy the objective component, an inmate must allege facts to demonstrate that the deprivation was "sufficiently serious." Sealock v. Colorado, 218 F.3d 1205, 1209 (10th Cir. 2000). "A medical need is sufficiently serious 'if it is one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention.'" Id. (quoting Hunt v. Uphoff, 199 F.3d 1220, 1224 (10th Cir. 1999)). "[T]he question raised by the objective prong of the deliberate indifference test is whether the alleged harm (such as heart damage) is sufficiently serious . . ., rather than whether the symptoms displayed to the prison employee are sufficiently serious . . . ." Mata v. Saiz, 427 F.3d 745, 753 (10th Cir. 2005). Even when there is a sufficiently serious medical need, however, delayed "medical care only constitutes an Eighth Amendment violation where the plaintiff can show that the delay resulted in substantial harm." Id. at 1210.

Plaintiff alleges that he was suffering from renal and respiratory failure due to pneumonia. The Court finds that when an individual is suffering from renal and respiratory failure due to pneumonia, which is a potentially fatal medical condition, the need for medical care is so obvious that even a lay person would recognize the necessity for a doctor's attention. Therefore, plaintiff has shown that his medical need was sufficiently serious to require prompt medical attention.

Second, the Court must consider whether plaintiff has alleged facts sufficient to show that the delay in medical care resulted in substantial harm. "[T]he substantial harm requirement may be satisfied by lifelong handicap, permanent loss, or considerable pain." Garrett v. Stratman, 254 F.3d 946, 950 (10th Cir. 2001). Plaintiff does not allege that he suffered lifelong handicap or permanent loss. Thus, the only basis for satisfying the "substantial harm" requirement is by showing that plaintiff suffered considerable pain. However, nowhere in plaintiff's amended complaint does he allege that he was in any pain, let alone considerable pain.[11] While the Court assumes that an individual suffering from renal and respiratory failure is not comfortable, the plaintiff is the only person who can allege whether and to what extent he was experiencing pain. The Court cannot simply assume that plaintiff was suffering considerable pain absent any allegations to reasonably support such an inference. The Court finds that plaintiff has failed to allege facts sufficient to show that the delay in medical care resulted in substantial harm. Accordingly, plaintiff has failed to sufficiently plead the objective component of a claim for denial of adequate medical care under the Eighth Amendment.

---

[11] In his response to the motion to dismiss (Dkt. # 38), plaintiff alleges for the first time that the medical conditions plaintiff was suffering were "painful." Even if the response to a motion to dismiss could amend plaintiff's complaint, which it cannot, plaintiff still fails to allege "considerable" pain.

b. Subjective Component

To satisfy the subjective component, plaintiff must allege facts to demonstrate that a Turn Key employee, acting pursuant to Turn Key policy or custom, "'kn[ew] of and disregard[ed] an excessive risk to inmate health or safety.'" Sealock, 218 F.3d at 1209 (quoting Farmer, 511 U.S. at 837). "[T]he official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Farmer, 511 U.S. at 837.

In connection with his argument that he need not allege the subjective component of his claim for denial of adequate medical care, plaintiff argues that he "is not required to establish the individual liability of any single employee." Dkt. # 38, at 10. The Court agrees that an individual employee need not be held liable in order to hold Turn Key liable under § 1983; however, plaintiff is still required to allege that an individual employee or employees violated plaintiff's constitutional rights. As Monell makes clear, a municipality can be held liable under § 1983 only if it has an "official municipal policy of some nature" that "'causes' an employee to violate another's constitutional rights." Monell, 436 U.S. at 691-92 (emphasis added). "[A] municipality will not be held liable [for constitutional violations] where there was no underlying constitutional violation by

any of its officers."[12] Hinton, 997 F.2d at 782; see also Martinez v. Beggs, 563 F.3d 1082, 1091 (10th Cir. 2009); Olsen v. Layton Hills Mall, 312 F.3d 1304, 1318 (10th Cir. 2002) ("Although Appellant may indeed show that Officer King has committed the prerequisite underlying Eighth Amendment violation, Appellant has not taken the subsequent step of linking the possible violation to a municipality custom or policy.").

Here, plaintiff identifies only one Turn Key employee, the Turn Key intake employee, whose acts and omissions were allegedly taken pursuant to a Turn Key policy or custom. Therefore, the Court must consider whether plaintiff has sufficiently alleged that the Turn Key intake employee knew of and disregarded an excessive risk to inmate health or safety. Plaintiff alleges that he informed the Turn Key intake employee that (1) he was not a drug user; (2) he was suffering from a medical emergency; and (3) he was in need of immediate medical assistance. Moreover, plaintiff alleges that, at the time, he was demonstrating obvious signs of distress, and that approximately five hours earlier, a TPD officer had called an ambulance to evaluate him out of concern for plaintiff's "obvious distress." Plaintiff alleges that, despite his express plea for medical assistance, his physical

---

[12]   Plaintiff cites to Garcia v. Salt Lake County, 768 F.3d 303 (10th Cir. 1985), as support for his argument that plaintiff is not required to establish the individual liability of any single employee. In Garcia, the Tenth Circuit concluded that "[a]lthough the acts or omissions of no one employee may violate an individual's constitutional rights, the combined act or omissions of several employees acting under a governmental policy or custom may violate an individual's constitutional rights." Id. at 310. Plaintiff did not allege this "collective action/inaction" theory in his amended complaint; rather, plaintiff raises the "collective action/inaction" theory for the first time in his response to the motion to dismiss (Dkt. # 38). Moreover, plaintiff identifies only one Turn Key employee (the intake employee) whose acts or omissions were allegedly taken pursuant to a Turn Key policy or custom and allegedly violated plaintiff's constitutional rights. Even if plaintiff is not able to name or identify additional individuals, plaintiff must, at the very least, allege the acts or omissions taken by other individuals in order to rely on a "collective action/inaction" theory.

18

conditions, and his obvious signs of distress, the intake employee did not take any steps to screen, diagnose, or treat plaintiff, did not have plaintiff assessed by a medical doctor, and assigned plaintiff to general population housing. The Court finds that such allegations are sufficient to plausibly allege that the Turn Key employee knew of and disregarded an excessive risk to inmate health or safety.

Although the Court has determined that plaintiff failed to sufficiently allege all elements of his § 1983 claim based on municipal liability, it is mindful of the difficulty a plaintiff may encounter in trying navigate the pleading requirements for a § 1983 claim based on a violation of the Eighth Amendment where the action is brought against a private corporation based on municipal liability. Accordingly, this Court finds that defendant's motion to dismiss count two of the amended complaint should be granted, but that plaintiff should be granted leave to file a second amended complaint to correct the insufficiencies identified herein, if he can do so under Federal Rule of Civil Procedure 11.[13]

---

[13]   Because the Court has dismissed count two, defendant's argument related to punitive damages is moot. However, if plaintiff does file a second amended complaint, the following analysis will apply to punitive damages. Defendant argues that, even though it is a private corporation, it should be afforded the immunity from punitive damages that is afforded to municipalities. Defendant does not cite any authority that addresses whether punitive damages may be recovered when an § 1983 action is brought against a private corporation based on a theory of municipal liability. In response, plaintiff cites to Revilla v. Glanz, 8 F. Supp. 3d 1336 (N.D. Okla. 2014), in which this Court held that a private entity is not entitled to the punitive damages bar that applies to governmental entities. The Supreme Court's reasoning in City of Newport v. Fact Concerts, Inc., 453 U.S. 247 (1981), which held that local governments are immune from punitive damages under § 1983, largely hinged upon the fact that the traditional purposes of punitive damages would not be served by imposing punitive damages upon local governments, because taxpayers would foot the bill, governments would likely have to increase taxes or reduce public services, and such an award would place the local government's financial integrity in serious risk. Id. at 267-70. As this Court explained in Revilla, those same purposes do not apply to a private corporation.

### B. Oklahoma State Law

Plaintiff also brings a claim for negligence under the Oklahoma Governmental Tort Claims Act (OGTCA) and common law (count one). Defendant argues that plaintiff has failed to plead sufficient facts to establish the elements of causation and damages in his negligence claim against Turn Key. Moreover, defendant argues that, pursuant to the OGTCA, Turn Key is immune from liability for any claims of negligence under state law. Defendant filed a notice of supplemental legal authority (Dkt. # 49), bringing to the Court's attention the Oklahoma Supreme Court's recent decision in Barrios v. Haskell County Public Facilities Auth. et al., 2018 OK 90 (Okla. Dec. 4, 2018). In Barrios, the Oklahoma Supreme Court explains that the OGTCA, as amended in 2014, specifies that the state's immunity from suit extends even to torts arising from alleged deprivations of constitutional rights. The question, however, is whether this immunity extends to private corporations, such as Turn Key, that contract with the state to provide healthcare services. The Barrios opinion states that "the staff of a healthcare contractor at a jail are 'employees' who are entitled to tort immunity under the GTCA . . . . We have not been asked whether Turn Key Health, LLC or its staff are 'employees' under section 152(7)(b), but have assumed they are for purposes of answering the questions certified to us." Id. at 5 n.5. Although the Oklahoma Supreme Court did not definitively hold that Turn Key is an "employee" under the OGTCA, the Court finds persuasive the court's reasoning for assuming that Turn Key is an "employee." The Court finds that Turn Key is an "employee" under the OGTCA and, therefore, is immune from tort liability. Accordingly, defendant's motion to dismiss plaintiff's state law claim for negligence under common law and the OGTCA (count one) should be granted.

**IT IS THEREFORE ORDERED** that defendant's motion to dismiss (Dkt. #23) is **granted.**

**IT IS FURTHER ORDERED** that plaintiff is granted leave to file a second amended complaint alleging his claim under 42 U.S.C. § 1983 only, no later than **January 25, 2019.**

**DATED** this 16th day of January, 2019.

CLAIRE V. EAGAN
UNITED STATES DISTRICT JUDGE

21

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA

SCOTT BIRDWELL,                                )
                                               )
            Plaintiff,                         )
                                               )
vs.                                            )     Case No. 15-CV-304-TCK-FHM
                                               )
STANLEY GLANZ, in his personal capacity;       )
VIC REGALADO, SHERIFF OF TULSA                 )
COUNTY, in his official capacity; BOARD        )
OF COUNTY COMMISSIONERS OF                     )
TULSA COUNTY; ARMOR                            )
CORRECTIONAL HEALTH SERVICES,                  )
INC.; NURSE CUNNINGHAM; and JOHN               )
ABRAHAM, M.D.,                                 )
                                               )
            Defendants.                        )

## OPINION AND ORDER

Before the Court are Defendants Stanley Glanz's and Vic Regalado's Motion for Summary Judgment (Doc. 118), Defendant Armor Correctional Health Services, Inc.'s Motion for Summary Judgment (Doc. 120), Defendant John Abraham's Motion for Summary Judgment (Doc. 121) and Defendant Nurse Cunningham's Motion for Summary Judgment (Doc. 122).[1] For reasons discussed below, these Motions for Summary Judgment are **GRANTED**.

I.      **Statement of Undisputed Material Facts**

This case concerns the adequacy of the medical care that Plaintiff received in the Tulsa County Jail ("Jail") during three weeks in June of 2014. During this time, medical services and medication in the Jail were provided in part by Defendant Armor Correctional Health Services, Inc. ("Armor"). Defendants John Abraham ("Dr. Abraham") and Nurse Cunningham were

---

[1] Defendant Board of County Commissioners of Tulsa County ("BOCC") also filled a Motion for Summary Judgment. (Doc. 115.) After BOCC filed its Motion for Summary Judgment, Plaintiff withdrew his claims against BOCC. (Doc. 149.)

1

EXHIBIT
9

employees of Armor. (Doc. 74, ¶ 5-7.) On June 7, 2014, while Plaintiff Scott Birdwell ("Plaintiff") was incarcerated in the Jail, he was assaulted by another inmate with an unknown object and sustained a serious laceration above his left eye. (Doc. 118, pg. 2; Doc. 118-3, pg. 11; Doc. 143-1 pg. 2). Upon his entry into the infirmary, Plaintiff asked to be sent to the hospital. (Doc. 143-2, pg. 7.) John Abraham ("Dr. Abraham"), the medical director of the Jail, told Plaintiff that he didn't think Plaintiff needed to go to the emergency room. (Doc. 143-2, pg. 8; Doc. 143-4, pg. 2-7.) Plaintiff disagreed with this assessment. (Doc. 143-2, pg. 11.)

Dr. Abraham immediately administered local anesthetic and sutured up the laceration in the Jail infirmary. He did not have Plaintiff sign a written informed consent form, and Plaintiff felt as if he did not have a choice. (Doc. 143-2, pg. 10.) Dr. Abraham took 90 minutes to put in 23 stitches (also called "sutures"). (Doc. 143-2, pg. 5.) Due to the length of the procedure, Dr. Abraham had to pause to administer additional anesthesia.[2] (Doc. 118-3, pg. 12-13.) According to Dr. Abraham's note describing the suturing, he used lidocaine with epinephrine to anesthetize the area he was suturing. Epinephrine was not the appropriate anesthetic to use, as it presents the risk of tissue death. (Doc. 120-6, pg. 131-132; Doc. 145-3, pg. 83.) After suturing up Plaintiff's wound, Dr. Abraham prescribed Plaintiff acetaminophen with codeine, as well as naproxen. (Doc. 143-3, pg. 83; Doc. 120, ¶ 48, 49; Doc. 145, ¶ 48, 49.) However, Dr. Abraham's notes on the procedure do not indicate that he tested Plaintiff's visual acuity. (Doc. 145-3, pg. 83.)

---

[2] In his briefing, Plaintiff contends that Dr. Abraham's suturing caused him pain. *See, e.g.,* Doc. 146, pg. 8-9. However, this fact is contradicted by Plaintiff's own testimony, in which he testified that when the initial dose of local anesthetic started to wear off, Dr. Abraham paused the suturing procedure to readminister anesthetic. (Doc. 146-2, pg. 4-5.) Where a factual contention is contradicted by Plaintiff's own testimony, it is "blatantly contradicted by the record," and the Court will not adopt it. *See George v. Newman,* 726 F. App'x 699, 704 (10th Cir. 2018) (unpublished) citing *Scott,* 550 U.S. at 380. *See infra* n. 4.

The parties agree that the eyebrow is a very difficult area to suture over and suturing is a painful procedure. (Doc. 120, ¶ 30; Doc. 145, ¶ 30.) Plaintiff, however, testified he believed that Dr. Abraham was not experienced enough to perform the suturing. (Doc. 143-2, pg. 10.) Plaintiff has also testified that Nurse Gail Osburn told him that Dr. Abraham told her that he should have sent Plaintiff to the hospital. (Doc. 147-2, pg. 11-12.)[3]

After the suturing procedure, Plaintiff told Dr. Abraham that he "had a funny feeling" and that he thought there was a more serious underlying condition. Dr. Abraham, however, responded to Plaintiff that these symptoms are to be expected, that the symptoms were directly related to the laceration, and that he believed that Plaintiff's symptoms would go away in a couple of days. (Doc. 120, ¶ 40, 41; Doc. 145, ¶ 40, 41.) Additionally, after the suturing procedure, Dr. Abraham said, in the presence of both Plaintiff and Nurse Latrice Cunningham ("Nurse Cunningham"), that Plaintiff should have his sutures removed "after five days." (Doc. 120-5, pg. 22; Doc. 145-4, pg. 34-35.) Though it is not clear from the record on whom the responsibility to initiate Plaintiff's appointment to have the sutures removed was imposed, for the purposes of these motions for summary judgment, the Court will assume that it was the Jail medical staff's responsibility to arrange the appointment for removing the stitches. However, the parties agree that Plaintiff did not report any ear drainage to Dr. Abraham during the June 7, 2014 encounter. Additionally, Plaintiff's Medical Administration Record indicates, and Plaintiff does not appear to contest, that except for rare occasions when Plaintiff was not present, he was given near-daily pain medication

---

[3] This statement is hearsay and would not be admissible at trial. However, Plaintiff could produce Nurse Gail Osburn as a witness at trial to testify not to the accuracy of Dr. Abraham's statement but to the fact that he said it to her. Dr. Abraham's statement, regardless of its accuracy may demonstrate that Plaintiff has satisfied the subjective component as to Dr. Abraham. Accordingly, Plaintiff's inadmissible hearsay testimony is admissible on summary judgment to the existence of Dr. Abraham's statement only, not its accuracy. *See* Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1996).

from at least the time of his assault to the time of his June 26, 2014 release to Creek County Jail. (Doc. 120-2; Doc. 145-3, pg. 59-61.)

Plaintiff made a kiosk call on June 10, 2014, three days after he was assaulted. In it, he said that his "EYE [W]AS HURTING VERY BAD AND [HIS VISION WAS] VERY BLURRY. JUST GOT 23 STITCHES BUT THEY DIDN'T EVEN LOOK AT MY EYE BALL." (Doc. 120-3, pg. 5.) The next day, June 11, 2014, Michael Eubank, LPN, ("Nurse Eubank") the sick call nurse, assessed Plaintiff's eye. Nurse Eubank noted eye redness and drainage that began "4 days ago." Plaintiff described his pain level as "moderate" and attributed the pain to the assault he suffered on June 7, 2014. Nurse Eubank also noted that Plaintiff had "blood in the eye from altercation." During that visit, Nurse Eubank also gave Plaintiff some Ibuprofen for a toothache, and instructed Plaintiff to return to sick call if his symptoms worsen or persist more than seven days. (Doc. 120-2, pg. 36-38.)[4] There is no evidence in the records of Nurse Eubank testing Plaintiff's visual acuity. (Doc. 145-3, pg. 36.)

After his examination by Nurse Eubank, Plaintiff made daily requests to have his sutures removed. He made his first request on June 12, 2014, five days after the sutures were placed. He placed these daily requests until his sutures were removed on June 17, 2014. (Doc. 143-4, pg. 36; Doc. 145, pg. 15.) The parties agree that while Plaintiff was making these requests, on June 14, 2014, John Laymon, APRN, placed a phone order indicating that Plaintiff's stitches needed to be

---

[4] Though Plaintiff does not recall this examination by Nurse Eubank, he does not appear to contest that it actually occurred. (Doc. 143, pg. 8; Doc. 143-2, pg. 73-74.) To the extent that he does contest that it actually occurred, "[w]here opposing parties tell two different stories, one of which is blatantly contradicted by the record . . . a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." See Scott v. Harris, 550 U.S. 372, 378 (2007). In this case, Plaintiff's "Full Patient History" presents a detailed account of Nurse Eubank's examination, which Plaintiff simply states that he does not recall. (Doc. 120-2, pg. 36-38; Doc. 143-2, pg. 73-74.) However, it does not appear that Plaintiff alleges any fraud or alteration in these records. Absent any allegation or indication that the records are unreliable, the Court will accept the records as accurate on this point.

4

removed. However, there is no evidence either that Plaintiff's stitches were actually removed on that date, or that Plaintiff failed to attend an appointment on that date. Plaintiff's expert, Dr. Wilson, has testified that Plaintiff experienced increased pain due to this delay in removing his sutures. (Doc. 145-5, pg. 3; 145-6, pg. 2.)

There is considerable ambiguity in the record regarding the timing of the removal of Plaintiff's sutures. Though Plaintiff's position throughout his briefing is not entirely uniform, Plaintiff testified that his sutures were removed on June 17, 2014, by Nurse Cunningham. (Doc. 122-5, pg. 70). Plaintiff further testified that by the time his sutures were removed, skin had grown over the sutures. (Doc. 147-2, pg. 20.) He also testified that Nurse Cunningham said that she had never removed sutures before, and that when she removed his stitches, she did not use anesthetic, and removed them not by cutting, but by pulling and tugging. (Doc. 147-2, pg. 19-21.) Plaintiff testified that the removal was more painful than the initial assault, and caused the wound to reopen, though Nurse Cunningham resealed it with a butterfly Band-Aid. (Doc. 147-2, pg. 20-21.)[5] Plaintiff also testified that Nurse Cunningham's inept removal of his sutures made the aftermath of the removal more painful. (Doc. 147-2, pg. 21.) Plaintiff's expert also contends that it caused increased scarring. (Doc. 145-5, pg. 4-5.) Though Defendants have presented considerable evidence that contradicts Plaintiff's testimony, due to the ambiguity in the record, and for the purposes of the motions for summary judgment, the Court will adopt Plaintiff's version of events.

---

[5] Plaintiff testified in his deposition on February 9, 2017 that he "still [has] stitches underneath [his] skin." (Doc. 120-5, pg. 25.) However, this testimony is belied by the medical records in this case. On October 22, 2015, Plaintiff had a CT scan, the findings of which make no mention of sutures remaining in his head. (Doc. 120-12, pg. 1; Doc. 120-8, pg. 37.) As with Nurse Eubank's examination of Plaintiff on June 11, 2014, Plaintiff does not allege fraud in this CT scan. Accordingly, the Court will accept the medical records as accurate on this point. *See* supra n.2. Moreover, even if there is a genuine dispute of fact as to whether Plaintiff still has stitches in his face, the dispute is not material, as even with this fact, Plaintiff will not have shown more than negligence. *See infra* III.B.4.

However, as Plaintiff notes, one of the records inconsistent with Plaintiff's recollection contains a note of "CONTINUED EYE PAIN AFTER ALTERCATION" dated June 20, 2014. (Doc. 145-3, pg. 63.)

On June 23, 2014, Plaintiff placed a kiosk call complaining of "BLURRED VISION, MIGRAINS, SHOOTING PAINS AND DRAINAGE IN MY EAR FROM GETTING HIT IN TH[E] HEAD T[W]O WEEK[S] AGO SATURDAY." He also reported that the stitches were "grown in" at the time they were removed, and that removing the stitches reopened his wound. (Doc. 120-3, pg. 6.) The next day, on June 24, 2014, Dr. Abraham saw Plaintiff in the infirmary. In his note, Dr. Abraham noted that he had seen Plaintiff both the previous week and on that day. Plaintiff had complained of persistent eye pain in his left eye, and no improvement with naproxen, as well as paresthesia (numbness of his face), and migraine-type symptoms, including blurred vision and a new complaint of light sensitivity. Dr. Abraham noted that Plaintiff appeared uncomfortable, but that the suture site was healing well, though it was tender to palpitation. (Doc. 143-3, pg. 83.)

At the end of Plaintiff's appointment, Dr. Abraham ordered an x-ray, a referral to optometry for visual changes, and medication to treat both pain and Plaintiff's potential conditions. He also noted that he would consider an ophthalmology or ENT referral based on optometry and x-ray evaluations. (Doc. 120-2, pg. 83.) Plaintiff's "facial/head xrays special attention to left orbit to r/o facial and orbital fractures" was completed on June 25, 2014. (Doc. 120-2, pg. 64.) The parties agree that Plaintiff's x-ray was normal and he sustained no fractures as a result of the assault. (Doc. 120, ¶ 105.) However, Plaintiff was transferred out of the Tulsa County Jail on June 26, 2014, the day after his x-ray, and so was unable to attend his optometry appointment. (Doc. 120, ¶ 110.)

6

## II.     Summary Judgment Standard

Summary judgment is proper only if "there is no genuine issue as to any material fact, and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). The moving party bears the burden of showing that no genuine issue of material fact exists. *See Zamora v. Elite Logistics, Inc.*, 449 F.3d 1106, 1112 (10th Cir. 2006). In its summary judgment analysis, the Court resolves all factual disputes and draws all reasonable inferences in favor of the non-moving party. *Id.* However, the party seeking to overcome a motion for summary judgment "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).

A movant that "will not bear the burden of persuasion at trial need not negate the nonmovant's claim," but may "simply . . . point[] out to the court a lack of evidence for the nonmovant on an essential element of the nonmovant's claim." *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 671 (10th Cir. 1998) (internal citations omitted). If the movant makes this prima facie showing, "the burden shifts to the nonmovant to go beyond the pleadings and 'set forth specific facts' that would be admissible in evidence in the event of trial from which a rational trier of fact could find for the nonmovant." *Id.* (citing FED. R. CIV. P. 56(e)). To meet this burden, the nonmovant must set forth facts "by reference to affidavits, deposition transcripts, or specific exhibits incorporated therein." *Id.* (citing *Thomas v. Wichita Coca-Cola Bottling Co.*, 968 F.2d 1022, 1024 (10th Cir.), *cert. denied*, 506 U.S. 1013 (1992)). "In response to a motion for summary judgment, a party cannot rest on ignorance of facts, on speculation, or on suspicion, and may not escape summary judgment in the mere hope that something will turn up at trial. The mere possibility that a factual dispute may exist, without more, is not sufficient to overcome convincing presentation by the moving party." *Conaway v. Smith*, 853 F.2d 789, 794 (10th Cir. 1988) (internal citations omitted).

III.   Section 1983 Claim for Cruel and Unusual Punishment

A.   Eighth Amendment Standard

The government is obligated to provide medical care to prisoners and pretrial detainees, and failure to do so may violate the Eighth Amendment. *See Olsen v. Layton Hills Mall*, 312 F.3d 1304, 1315 (10th Cir. 2002); *Estelle v. Gamble*, 429 U.S. 97, 103-04 (1976.)   On an Eighth Amendment claim, a Plaintiff must show deliberate indifference to a substantial risk of serious harm. *See Tennant v. Miller*, 589 F. App'x 884, 885 (10th Cir. 2014) (unpublished) citing *Farmer v. Brennan*, 511 U.S. 825, 828 (1994). The claim contains both objective and subjective elements. To satisfy the objective component, Plaintiff must first produce objective evidence that the deprivation at issue was in fact "sufficiently serious." *See Mata v. Saiz*, 427 F.3d 745, 751 (10th Cir. 2005).  A medical need is sufficiently serious if "it is one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *See Sealock v. Colorado*, 218 F.3d 1205, 1209 (10th Cir. 2000). The purpose of the objective component analysis is to "limit claims to significant, as opposed to trivial, suffering." *See Mata*, 427 F.3d at 753.  The Court looks to whether the "alleged harm" is sufficiently serious, rather than whether the symptoms displayed are sufficiently serious. *See id.*

However, while prisoners are entitled to medical care throughout their incarceration, they are not entitled to insist on a particular course of treatment. *See Callahan v. Poppell*, 471 F.3d 1155, 1159 (10th Cir. 2006); *Green v. Branson*, 108 F.3d 1296, 1304 (10th Cir. 1997). Moreover, undisputed facts that establish only that a medical professional has been negligent in diagnosing or treating a medical condition will not survive summary judgment under the Eighth Amendment. Neither medical malpractice nor a disagreement about medical judgment constitutes deliberate indifference. *See Green*, 108 F.3d at 1303. Accordingly, where medical records indicate that the

8

Plaintiff has received a consistent course of treatment for the medical ailments complained of, these facts will not demonstrate deliberate indifference. *See Debrow v. Kaiser*, 42 F. App'x 269 (10th Cir. 2002) citing *Smart v. Villar*, 547 F.2d 112, 114 (10th Cir. 1976). However, a delay in providing treatment may violate the Eighth Amendment. *See Mata*, 427 F.3d at 751.

To satisfy the subjective component of the deliberate indifference test, Plaintiff must present evidence of the prison official's culpable state of mind. *See Mata*, 427 F.3d at 751. The state of mind required for deliberate indifference is akin to that of criminal recklessness—conscious disregard for a substantial risk of serious harm. *See Farmer*, 511 U.S. at 836. In a prison context, this means that the official must both be aware of the facts from which the inference could be drawn that a substantial risk of serious harm exists, and must also draw the inference. *See Farmer*, 511 U.S. at 837. However, a prison medical professional who serves "solely . . . as a gatekeeper for other medical personnel capable of treating the condition" may be held liable under the deliberate indifference standard if she "delays or refuses to fulfill that gatekeeper role."

### B. Objective Component Analysis

Because analysis of the objective component will be the same for all Defendants against whom an Eighth Amendment claim is made, the Court considers it without reference to any specific Defendant. Plaintiff appears to argue that the following deprivations were sufficiently serious to satisfy the objective component:

(1.)   That he was not sent to the emergency room to be sutured after the initial assault

(2.)   That Dr. Abraham failed to have Plaintiff sign a consent form

(3.)   That Dr. Abraham sutured Plaintiff's wounds poorly, both by taking too long to suture Plaintiff's wound and by using an inappropriate anesthetic

(4.)   That Plaintiff's sutures were not removed in an appropriate timeframe

9

(5.)   That Nurse Cunningham had never removed sutures before, and her removal of the sutures

caused him pain, and caused the wound to reopen

(6.)   That the prison medical staff failed to provide testing for ongoing symptoms

First, the two cases that Plaintiff cites in support of his claim that these undisputed facts

satisfy the objective component are inapposite, as both cases concern lacerations sustained in

failure to protect claims. *See, e.g., Spencer v. Hussan,* No. 10-CV-822A, 2013 WL 5223816, at

*4 (W.D.N.Y. Sept. 13, 2013) (laceration requiring five sutures was sufficiently serious to satisfy

the objective prong of an Eighth Amendment claim in a failure to protect claim); *Green v. Leubner,*

No. 07-CV-1035, 2009 WL 3064749, at *6 (N.D.N.Y. Sept. 22, 2009) (laceration requiring 18

steri-strips was sufficiently serious to satisfy the objective prong of an Eighth Amendment claim

in a failure to protect claim). By contrast, in this case, Plaintiff has explicitly agreed that neither

Armor nor the prison medical staff are responsible for his initial assault on June 7, 2014. (Doc.

120, ¶ 9; Doc. 145, ¶ 13). Accordingly, the simple fact of his injury cannot by itself satisfy the

objective component. Rather, the alleged deprivations themselves must be sufficiently serious to

satisfy the objective component.

### 1.   Dr. Abraham suturing Plaintiff's wounds poorly in the Jail infirmary. rather than sending him to the emergency room

Neither Dr. Abraham's failure to send Plaintiff to the emergency room, nor his alleged

inadequate suturing of Plaintiff's wound satisfy the objective component. The Parties agree that

Dr. Abraham provided Plaintiff with medical care by suturing his wound in the Jail infirmary.

Instead, Plaintiff criticizes Dr. Abraham's failure to send him to the emergency room, for taking

too long to suture the wound, and for using the wrong anesthetic. As Plaintiff himself concedes,

he just disagrees with the type of treatment that Dr. Abraham provided. Plaintiff has submitted

evidence that Dr. Abraham did not send Plaintiff to the emergency room, that he took 90 minutes

to suture Plaintiff's wound, and that he used the incorrect anesthetic. This evidence supports, at most, a conclusion that Dr. Abraham was negligent in diagnosing or treating a medical condition. Mere negligence does not become a constitutional claim merely because the victim is a prisoner. *See Spencer v. Abbott*, 731 F. App'x 731, 744 (10th Cir. 2017) citing *Estelle v. Gambel*, 429 U.S. 97, 106 (1976) (undisputed facts that establish that a physician has been negligent in diagnosing or treating a medical condition do not establish medical mistreatment under the Eighth Amendment. Medical malpractice does not become a constitutional violation merely because the victim is a prisoner.); *Mata*, 427 F.3d at 751. Accordingly, neither the fact that Dr. Abraham did not sent Plaintiff to the emergency room nor the type of treatment he provided in the Jail infirmary is sufficiently serious to satisfy the objective component of deliberate indifference.

### 2.   Lack of Consent Form

It is not clear whether Plaintiff's testimony that Dr. Abraham did not have him sign a consent form at the beginning of the procedure is an independent allegation of harm, or merely a component of Plaintiff's contention that he should have been sent to the emergency room to be sutured. Nonetheless, failure to have Plaintiff sign a consent form does not rise to the level of a constitutional violation. The deprivation is not so serious that it denied "the minimal civilized measure of life's necessities" or "pos[ed] a substantial risk of serious harm." *See Farmer*, 511 U.S. at 832.

### 3.   Plaintiff's stiches were not removed in an appropriate timeframe

The delay in removing Plaintiff's stitches also fails to satisfy the objective component. While a delay in providing medical treatment may violate the Eighth Amendment, these delays "only constitute an Eighth Amendment violation where the plaintiff can show the delay resulted in substantial harm." *See Mata*, 427 F.3d at 751. The substantial harm requirement "may be satisfied by lifelong handicap, permanent loss, or considerable pain." *Id.* (internal citations

omitted.) However, delays that have been found to violate the Eighth Amendment have frequently involved life-threatening situations and instances where it is apparent that delay would exacerbate the prisoner's medical problems. *See Rashad v. Doughty*, 4 F. App'x 558, 561 (10th Cir. 2001) citing *Hunt v. Uphoff*, 199 F.3d 1220, 1224 (10th Cir. 1999).

In this case, it is undisputed that Plaintiff's sutures should have been removed five days after they were put in, but that they were not removed until ten days after they were put in. (Doc. 122-5, pg. 70; Doc. 147-4, pg. 41.) It is also undisputed that on June 14, 2014, a member of the Jail medical staff placed an order for Plaintiff's sutures to be removed, and that order was not followed. Finally, it is undisputed that because of this delay, skin had grown over the sutures, and the process of removing them was more painful than the initial assault, and caused the wound to reopen and be resealed with a butterfly Band Aid. Plaintiff argues that this level of pain satisfies the "considerable pain" element of substantial harm, thus satisfying the objective component.

However, while Plaintiff's pain was no doubt serious, it does not rise to the level of other situations which have satisfied the "considerable pain" element of substantial harm. For example, in *Sealock v. Colorado*, evidence of a several hour delay in treatment where a plaintiff presented with severe chest pain which he reasonably believed was caused by a heart attack, was sufficiently serious to satisfy the objective component. *See* 218 F.3d 1205, 1210 (10th Cir. 2000). Similarly, in *Al-Turki v. Robinson*, a prisoner satisfied the objective component where the record proved he endured pain from kidney stones so severe that he collapsed, vomited, and believed he was dying, and received neither medical treatment to reduce his pain, or a diagnosis that could have alleviated his fear of death. 762 F.3d 1188, 1193 (10th Cir. 2014). In *Oxendine v. Kaplan*, the Court held that a prisoner satisfied the objective component where, among other harms, a prisoner experienced considerable pain for at least fifteen days as her finger rotted. 241 F.3d 1272, 1278 (10th Cir. 2001).

12

In this case, Dr. Wilson testified that sutures that are not timely removed can cause pain, and noted in his expert report that Plaintiff in fact experienced increased pain from the delay. (Doc. 145-5, pg. 3; Doc. 145-6, pg. 2.) While Dr. Wilson did not specify the level of pain that Plaintiff experienced, because Plaintiff testified that his sutures were removed five days late, Plaintiff can only have endured this pain for five days. Moreover, the Court has before it no allegations or evidence indicating that Plaintiff's pain was severe or life-threatening. Medical records indicate that Plaintiff received near-daily pain-medication during this five-day delay, unlike the Plaintiffs in *Oxendine*, *Sealock*, and *Al-Turki*. (Doc. 120-2; Doc. 145-3, pg. 59-61.) The lack of any evidence, testimony, or even allegation that Plaintiff's pain from the delay of his sutures was severe or life-threatening, coupled with his regular access to pain medication, indicates that this pain does not rise to the level of "considerable pain" as described in cases where the Tenth Circuit has found considerable pain.

Similarly, Plaintiff has testified that the extended wait made the removal more painful, and that the pain of the eventual removal was more painful than the initial assault. Plaintiff testified that the delay in removal made the aftermath of the removal more painful. However, while Plaintiff does not state exactly how long the increased pain due to removal of stitches lasted, he does not appear to testify that the pain lasted anywhere near as long as it did in cases where the Tenth Circuit has found "considerable pain." Moreover, unlike the plaintiffs in *Oxendine*, *Mata*, and *Al-Turki*, Plaintiff received immediate and ongoing treatment for his pain after Nurse Cunningham removed the sutures. (Doc. 120-2; Doc. 145-3, pg. 59-61.) Accordingly, the delay in removing Plaintiff's sutures is not sufficiently serious to satisfy the objective component.

### 4.   Poor removal of sutures

Similarly, Nurse Cunningham's inept removal of Plaintiff's stitches also does not satisfy the objective component. Plaintiff testified that Nurse Cunningham had no experience in removing

sutures, that she removed them improperly, and that removal caused pain worse than the initial assault, and reopened the wound, which then had to be resealed with a butterfly Band Aid. Dr. Wilson also contends that it caused increased scarring. (Doc. 145-5, pg. 4-5.) Like Plaintiff's testimony that Dr. Abraham did a poor job of suturing Plaintiff's wound, this evidence supports, at most, a conclusion that Nurse Cunningham was negligent in diagnosing or treating a medical condition. However, negligence does not become a constitutional claim merely because the victim is a prisoner. *See Spencer*, 731 F. App'x at 744 (undisputed facts that establish that a physician has been negligent in diagnosing or treating a medical condition do not establish medical mistreatment under the Eighth Amendment. Medical malpractice does not become a constitutional violation merely because the victim is a prisoner.); *Mata*, 427 F.3d at 751.

Plaintiff testified that his sutures were removed improperly, causing pain and reopening his wound, and Dr. Wilson contends that it caused increased scarring. This level of harm falls short of the level of harm found sufficiently serious in other cases. For example, in *Mata v. Saiz*, the Court held that a prisoner satisfied the objective component where a prisoner reported severe chest pain to the infirmary three times in the course of about 36 hours before being sent to the hospital, suffered permanent and irreversible damage to her heart and sustained a permanent disability. *See* 427 F.3d at 751. Similarly, in *Lopez v. Lemaster*, evidence of severe contusions and strains to multiple body parts was enough to satisfy the objective component. *See* 172 F.3d 756, 763 (10th Cir. 1999). In *Kikimura v. Osagie*, a plaintiff's allegations of severe, "torturous" pain and cramps, psychological anguish and horror of death as a result of undiagnosed hyponatremic encephalopathy were enough to survive a motion to dismiss. *See* 461 F.3d 1269, 1292 (10th Cir. 2006). In contrast, the facts presented by Plaintiff demonstrate no more than negligence on the part of Nurse Cunningham, and cannot satisfy the objective component.

14

5.    **The prison medical staff failed to provide testing for ongoing symptoms**

Finally, Dr. Wilson's contention in his report that the prison medical staff failed to provide testing and diagnostics for Plaintiff's ongoing symptoms fails to satisfy the objective component, because the uncontested factual record belies this opinion. (Doc. 145-5, pg. 6.)  Plaintiff made two kiosk calls regarding the aftermath of his assault, one on June 10, 2014, and one on June 23, 2014.  In both cases, he was seen by a health care professional the next day.  The health care professional provided Plaintiff with medicine to treat his symptoms, and also with instructions for how to proceed going forward.  On June 24, 2014, Dr. Abraham also ordered an x-ray and that Plaintiff be referred to optometry for visual changes.  The x-ray took place the following day, on June 25, 2014.  However, Plaintiff was transferred out of the Tulsa County Jail and booked into Creek County Jail on June 26, 2014, and was not able to attend his optometry appointment.  Any deficiencies in this ongoing treatment, which Plaintiff does not specifically identify, are not sufficiently serious to support a conclusion that Plaintiff was denied "the minimal civilized measure of life's necessities" or that the deficiencies "pos[e] a substantial risk of serious harm." *See Farmer v. Brennan*, 511 U.S. 825, 832 (1994).

To the extent that Plaintiff specifically challenges the Jail medical staff failure to test his visual acuity either after his initial assault on June 7, 2014, or during the June 11, 2014 evaluation by Nurse Eubank (Doc. 122-6, pg. 148-151), this evidence at most supports a conclusion that Dr. Abraham or Nurse Eubank were negligent in diagnosing or treating a medical condition.  However, where a Plaintiff receives a consistent course of treatment for medical ailments—even where evidence demonstrates negligence in that care—the facts will not demonstrate deliberate indifference. *See Debrow v. Kaiser*, 42 F. App'x 269 (10th Cir. 2002).  In this case, Plaintiff agrees that he received medical care immediately after his assault on June 7, 2014, and does not contest that he was evaluated by Nurse Eubank on June 11, 2014.  These facts demonstrate a consistent

15

course of treatment for his medical ailments.  Though Plaintiff has presented evidence that Jail medical staff did not test his visual acuity at two different points during this course of treatment, because he received a consistent course of treatment, Plaintiff has presented, at most, evidence of negligence.  As noted *supra*, however, negligence does not become a constitutional claim merely because the victim is a prisoner.  *See Spencer*, 731 F. App'x at 744; *Mata*, 427 F.3d at 751.  Accordingly, the fact that Jail medical staff did not test Plaintiff's visual acuity does not satisfy the objective component.

The Court finds that Plaintiff has failed to satisfy the objective component of his claim, and Defendants Glanz's and Regalado's Motion for Summary Judgment (Doc. 117), Defendant Armor Correctional Health Service's Motion for Summary Judgment (Doc. 120), Defendant John Abraham's Motion for Summary Judgment (Doc. 121) and Defendant Nurse Cunningham's Motion for Summary Judgment (Doc. 122) are all **GRANTED** as to the Eighth Amendment Claims.

## IV.  Supervisory Liability

Plaintiff cannot sustain a supervisory liability claim without an underlying constitutional violation.  *See Martinez v. Beggs*, 563 F.3d 1082, 1092 (10th Cir. 2009) (sheriff could not be held liable under a theory of supervisory liability when there was no underlying constitutional violation.)  Because Plaintiff has not proven a constitutional violation, Defendants Glanz's and Regalado's Motion for Summary Judgment is **GRANTED** as to Plaintiff's supervisory liability claim.

## V.  Municipal Liability

Likewise, Plaintiff cannot sustain a municipal liability claim without an underlying constitutional violation.  *See Olsen v. Layton Hills Mall*, 312 F.3d 1304, 1317-18 ("We will not hold a municipality liable for constitutional violations when there was no underlying constitutional

16

violation by any of its officers.") (internal citations omitted). Accordingly, Defendant Armor's

Motion for Summary Judgment is **GRANTED** as to Plaintiff's municipal liability claim.

## VI.   Negligence

Plaintiff also brings a claim for common law negligence against Defendants Armor, John

Abraham, and Nurse Cunningham.[6] Defendants Armor, John Abraham, and Nurse Cunningham

argue that they are immune from tort liability under the Oklahoma Government Tort Claims Act

("GTCA"). Defendants are correct that the GTCA specifically prohibits tort suits, including

common law torts, arising out of the "operation or maintenance of any prison, jail, or correctional

facility." *See* OKLA. STAT. tit. 51 §§ 152(14); 155(25). The question remains, however, whether

that immunity extends to private corporations, such as Armor, that contract with the state to

provide healthcare services, and their employees.

When a federal court exercises supplemental jurisdiction over state law claims in a federal

question lawsuit, the Court must follow the same rule as a federal court sitting in diversity, and

apply the substantive law of the forum state. *See Bancoklahoma Mortg. Corp. v. Capital Title Co.,*

194 F.3d 1089, 1103 (10th Cir. 1999). If the state's highest court has not addressed the issue

presented, the federal court must determine what decision the state court would make if faced with

the same facts and issues. *See Armijo v. Ex Cam, Inc.,* 843 F.2d 406, 407 (10th Cir. 1988).

In *Barrios v. Haskell,* a 2018 case in which the Oklahoma Supreme Court held that

"constitutional" torts under the Oklahoma Constitution were governed by the GTCA, the

Oklahoma Supreme Court assumed for the purposes of answering a certified question that Turn

Key Health, LLC, another corporation that has contracted with Tulsa County to deliver medical

care to arrestees at the Tulsa County Jail, and its employees were "employees" under OKLA. STAT.

---

[6] Plaintiff also brought a common law negligence claim against BOCC, but has since withdrawn all claims against BOCC. (Doc. 149.)

tit. 51, § 152(7)(b) and therefore included in the GTCA's grant of immunity. In doing so, the Oklahoma Supreme Court noted that "[g]enerally speaking, the staff of a healthcare contractor at a jail are "employees" who are entitled to tort immunity under the GTCA by virtue of [OKLA. STAT. tit. 51] sections 152(7)(b), 153(A), and 155(25)." *See Barrios v. Haskell County Public Facilities Auth. et. al.*, 2018 OK 90, 432 P.3d 233, 236 and 238-239 (Okla. Dec. 4, 2018).

Though this District has held to the contrary in the past, *see Freeman v. Glanz*, No. 16-cv-534-JHP-PJC, 2017 U.S. Dist. LEXIS 90540, *18-21 (N.D. Okla. June 13, 2017), the *Barrios* holding provides a strong indication that the Oklahoma Supreme Court would find both Armor and its employees, John Abraham and Nurse Cunningham, to be "employees" under the GTCA who are entitled to immunity from tort liability. Moreover, the only case in this District to interpret *Barrios* is in accord with this analysis. *See Prince v. Turn Key Health Clinics, LLC*, 18-cv-0282-CVE-JFJ, 2019 U.S. Dist. LEXIS 7716, *26 (N.D. Okla. Jan. 16, 2019) ("Although the Oklahoma Supreme Court did not definitively hold that Turn Key is an 'employee' under the OGTCA, the Court finds persuasive the court's reasoning for assuming that Turn Key is an 'employee.' The Court finds that Turn Key is an 'employee' under the OGTCA and, therefore, is immune from tort liability.").

Accordingly, the Court holds that Defendants Armor, John Abraham, and Nurse Cunningham are employees under the GTCA, and are entitled to immunity from tort suits arising out of the "operation or maintenance of any prison, jail, or correctional facility," such as this one. *See* OKLA. STAT. tit. 51 §§ 152(14); 155(25). Defendants Armor's, John Abraham's, and Nurse Cunningham's Motions for Summary Judgment are **GRANTED** as to Plaintiff's negligence claims.

VII.   **Conclusion**

For the reasons set forth above, the Court finds that Plaintiff has failed to establish a genuine dispute of material facts as to either his Eighth Amendment claims, his Supervisory Liability claims, his Municipal Liability claim, or his negligence claims.

Defendant Board of County Commissioners of Tulsa County's Motion for Summary Judgment (Doc. 115) is **DENIED AS MOOT.**  Defendant Board of County Commissioners of Tulsa County is **DISMISSED** from this litigation.

Defendants Stanley Glanz's and Vic Regalado's Motion in Limine (Doc. 117) is **DENIED AS MOOT.**

Defendants Stanley Glanz's and Vic Regalado's Motion for Summary Judgment (Doc. 118) is **GRANTED.**

Defendants John Abraham's, Armor Correctional Health Services, Inc.'s, and Nurse Cunningham's Joint Motion in Limine (Doc. 119) is **DENIED AS MOOT.**

Defendant's Armor Correctional Health Services, Inc.'s Motion for Summary Judgment (Doc. 120) is **GRANTED.**

Defendant John Abraham's Motion for Summary Judgment (Doc. 121) is **GRANTED.**

Defendant Nurse Cunningham's Motion for Summary Judgment (Doc. 122) is **GRANTED.**

An order of judgment will be entered separately.

**SO ORDERED.**

DATED THIS 12th day of March, 2019.

*Terence C Kern*

**TERENCE C. KERN**
**United States District Judge**

19

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF OKLAHOMA

ROBBIE EMERY BURKE, as Special
Administratrix for the Estate of MITCHELL
LEE GODSEY, deceased,

        Plaintiff,

v.

VIC REGALADO, in his official capacity;
BOARD OF COUNTY COMMISSIONERS
OF TULSA COUNTY; ARMOR
CORRECTIONAL HEALTH SERVICES,
INC.; ANGELA MCCOY, LPN; CURTIS
MCELROY, D.O.; and SETH WHITMAN,

        Defendants.

Case No. 18-CV-231-GKF-FHM

### ORDER

Before the court are two motions: the Motion to Dismiss [Doc. 20] of defendant Armor

Correctional Health Services, Inc. ("Armor") and the Motion to Dismiss [Doc. 30] of defendant

Vic Regalado, in his official capacity as Sheriff of Tulsa County, Oklahoma. Both movants seek

dismissal pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon

which relief can be granted. For the reasons set forth below, each motion is granted in part and

denied in part.

### I. Background

This civil rights action arises from the death of Mitchell Lee Godsey during his detention

at the Tulsa County Jail in 2016. On March 26, 2019, the court issued an Opinion and Order

[Doc. 58] on motions to dismiss filed by defendants Angela McCoy, LPN; Curtis McElroy, D.O.;

and Seth Whitman. The court refers the reader to that Opinion and Order for a description of the

applicable standard and a non-exhaustive summary of the factual allegations in plaintiff's

Amended Complaint.

EXHIBIT
10

Plaintiff asserts three causes of action against Armor: (1) a claim pursuant to 42 U.S.C. § 1983 for deliberate indifference to a serious medical need in violation of Godsey's rights under the Due Process Clause of the Fourteenth Amendment; (2) a negligence claim under Oklahoma's common law; and (3) a claim for failure to provide adequate medical care in violation of rights guaranteed by Sections 7 and 9 of Article II of the Oklahoma Constitution. Plaintiff asserts the same causes of action against defendant Regalado, minus the negligence claim.

## II. Analysis

The court first addresses plaintiff's claims under Oklahoma law and then addresses her claim under 42 U.S.C. § 1983.

### A. The State Constitutional Claim

Plaintiff ostensibly brings her state constitutional claim pursuant to *Bosh v. Cherokee Cty. Bldg. Auth.*, 305 P.3d 994 (Okla. 2013). Recently, however, the Oklahoma Supreme Court expressly declined to extend its holding in *Bosh* to include tort claims for denial of medical care brought by inmates alleging violations of their rights under Sections 7 and 9 of Article II of the Oklahoma Constitution. *See Barrios v. Haskell Cty. Pub. Facilities Auth.*, 432 P.3d 233, 235, 241 (Okla. 2018). The court, therefore, dismisses plaintiff's state constitutional claim against Armor and Regalado with prejudice.

### B. The Negligence Claim

The Amended Complaint fails to state a negligence claim against Armor because Armor is immune from tort liability under the Oklahoma Governmental Tort Claims Act, Okla. Stat. tit. 51, §§ 151 *et seq. See* [Doc 58, pp. 4–5]; *Barrios*, 432 P.3d. at 236 n.5; *Birdwell v. Glanz*, No. 15-CV-304-TCK-FHM, 2019 WL 1130484, at *10 (N.D. Okla. Mar. 12, 2019); *Prince v. Turn Key Health Clinics, LLC*, No. 18-CV-0282-CVE-JFJ, 2019 WL 238153, at *9 (N.D. Okla. Jan. 16, 2019). The court, therefore, dismisses plaintiff's negligence claim against Armor with prejudice.

2

### C. The § 1983 Claim

Plaintiff brings her § 1983 claim against defendants Armor and Regalado pursuant to a municipal liability theory.[1] Armor and Regalado argue that plaintiff fails to plead an underlying deprivation of Godsey's constitutional rights.

As explained in the court's Opinion and Order of March 26, 2019, the Amended Complaint states a § 1983 claim against defendant Whitman for deliberate indifference to a serious medical need in violation of Godsey's rights under the Due Process Clause of the Fourteenth Amendment. [Doc. 58, p. 13]. The Amended Complaint also alleges that Whitman was an employee of Armor and acting within the scope of his employment. [Doc. 3 ¶ 7]. However, municipal liability under § 1983 cannot be based on respondeat superior or vicarious liability. *See generally Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978). "Rather, a plaintiff must establish that (1) a policy or custom of the municipality exists and (2) the policy or custom caused the constitutional violation." *Rife v. Oklahoma Dep't of Pub. Safety*, 854 F.3d 637, 653 n.11 (10th Cir. 2017). The Tenth Circuit has explained:

> A policy or custom includes [1] a formal regulation or policy statement, [2] an informal custom that amounts to a widespread practice, [3] decisions of municipal employees with final policymaking authority, [4] ratification by final policymakers of the decisions of subordinates to whom authority was delegated, and [5] the deliberately indifferent failure to adequately train or supervise employees.

*Pyle v. Woods*, 874 F.3d 1257, 1266 (10th Cir. 2017) (citing *Brammer-Hoelter v. Twin Peaks Charter Academy*, 602 F.3d 1175, 1189 (10th Cir. 2010)).

---

[1] Suing state actors, such as Sheriff Regalado, in their official capacities under § 1983 "is essentially another way of pleading an action against the county or municipality they represent." *Porro v. Barnes*, 624 F.3d 1322, 1328 (10th Cir. 2010).

Read in the light most favorable to plaintiff, the Amended Complaint alleges policies or customs of Armor and TCSO that bear a sufficient causal link to the alleged deprivation of Godsey's constitutional rights. Citing the results of various audits between 2007 and 2011, plaintiff alleges that there are "longstanding, systemic deficiencies in the medical and mental health care provided to inmates at the Tulsa County Jail." [Doc. 3 ¶¶ 44–61]. Regalado argues that these allegations are "stale and inapplicable" because they concern customs or practices that predate Armor and Sheriff Regalado. [Doc. 30, p. 20]. But the Amended Complaint alleges additional facts that connect the jail's alleged history to the events underlying this case.

For example, plaintiff alleges that, in November 2013, TCSO retained Armor as the new private medical contractor at the jail, but the jail's unconstitutional medical system continued under Armor unabated. [Doc. 3 ¶¶ 62, 65]. In particular, plaintiff alleges that Armor's contractual relationship with TCSO created financial disincentives to transfer inmates to offsite facilities for treatment and that the there was "a pattern of other calamitous medical results" under Armor, "including the cases of Tommy Pratt and Zach Plunkett." [Doc. 3 ¶¶ 62, 64]. Moreover, paragraph 63 of the Amended Complaint alleges as follows:

> In February 2015 an auditor/nurse hired by Tulsa County/TCSO, Angela Mariani, issued a report focused on widespread failures by Armor Correctional Health Services, Inc. to abide by its $5 million annual contract with the County. Mariani also wrote three (3) memos notifying TCSO that ARMOR failed to staff various medical positions in the jail and recommending that the county withhold more than $35,000 in payments. Her report shows that Jail medical staff often failed to respond to inmates' medical needs and that ARMOR failed to employ enough nurses and left top administrative positions unfilled for months. Meanwhile, medical staff did not report serious incidents including inmates receiving the wrong medication and a staff member showing up "under the influence."

[Doc. 3 ¶ 63]. The Amended Complaint adequately alleges that Armor and Regalado were on notice of constitutional deficiencies in the care of detainees with serious medical needs and that

4

their failure to take appropriate measures to remedy these deficiencies constituted deliberate indifference.   The Amended Complaint also alleges sufficient facts to support a reasonable inference that the alleged policies or customs of Armor and TCSO—including understaffing, inadequate training, and disincentives to offsite transfers—caused the alleged deprivation of Godsey's constitutional rights.  The court, therefore, denies the motions to dismiss as to plaintiff's § 1983 claims against defendants Armor and Regalado.

### III.  Conclusion

WHEREFORE, defendant Armor's Motion to Dismiss [Doc. 20] is granted in part and denied in part, and defendant Regalado's Motion to Dismiss [Doc. 30] is granted in part and denied in part.  Armor's motion is granted as to plaintiff's negligence and state constitutional claims, but is denied as to plaintiff's claim under 42 U.S.C. § 1983.  Regalado's motion is granted as to plaintiff's state constitutional claim, but is denied as to plaintiff's claim under 42 U.S.C. § 1983.

IT IS SO ORDERED this 28th day of March, 2019.

GREGORY K. FRIZZELL
UNITED STATES DISTRICT JUDGE

IN THE DISTRICT COURT OF CREEK COUNTY
STATE OF OKLAHOMA
BRISTOW DIVISION

FILED IN DISTRICT COURT
CREEK COUNTY BRISTOW OK

FEB 25 2019

TIME: 3:34 pm
Amanda VanOrsdol, Court Clerk

RECEIVED
FEB 28 2019
JOHNSON HANAN & VOSLER

LARRY HOLLAND, as Special Administrator )
for the Estate of Floyd Holland, deceased. )
          Plaintiff )
-vs- )
TURN KEY HEALTH CLINICS, LLC, )
          Defendant. )  Case No. CJ-2018-35

## OPINION AND ORDER

### I.

A.    On November 6, 2018, Plaintiff, Larry Holland, as Special Administrator for the Estate of Floyd Holland, deceased, filed a Petition asserting a cause of action for negligence. Plaintiff alleges that Defendant, Turn Key Health Clinics, LLC., owed the decedent, Floyd Holland, a duty of reasonable care during decedent's stay at the Creek County Detention Center; that Defendant breached that duty by failing to provide adequate medical treatment consistent with the standard of care, and that Floyd Holland died as a direct and proximate result of Defendant's breach of duty.

B.    On December 17, 2018, Defendant filed a Motion to Dismiss. Defendant's Motion to Dismiss alleges that
(1) Plaintiff has failed to plead sufficient facts to establish a claim for medical negligence; and
(2) that Defendant is immune from liability under the Oklahoma Government Tort Claim Act.

C.    On December 31, 2019, Plaintiff filed a response to Defendant's Motion to Dismiss. Plaintiff contends that Defendant's Motion to Dismiss
(1) did not argue the proper pleading standard;
(2) that Defendant is not a "medical provider" entitled to immunity; and
(3) that the holding in Barrios v Haskell County Public Facilities Authority, 2018 OK 90 did not immunize private conduct.

D.    On January 15, 2018, this court entered an Order allowing Defendant to file a reply brief to Plaintiff's Response to Defendant's Motion to Dismiss.

E.    On January 15, 2018, Defendant filed a reply to Plaintiff's Response to Defendant's Motion to Dismiss. Defendant alleges that
(1) Plaintiff's Petition should be dismissed as a matter of law; and
(2) that Defendant is exempt from tort liability under the Governmental Tort Act.

EXHIBIT
11

II.

A.  Plaintiff presents a claim for negligence under the common law. Plaintiff also alleges that Defendant is not entitled to any of the immunity provisions available to public entities as set forth in the Oklahoma Governmental Tort Claim Act ("GTCA"). 51 O. S. § 151 et seq.

B.  Defendant's Motion to Dismiss contends, in relevant part, that Plaintiff's Petition should be dismissed because Defendant is immune from liability for such claims pursuant to the terms of the GTCA.

C.  In Barrios v Haskell County Public Facilities Authority, 2018 OK 90, the Court stated: "Generally speaking, the staff of a healthcare contractor at a jail are "employees" who are entitled to tort immunity under the GTCA by virtue of Sections 152 (7) (b), 153 (a), and 155 (25)." Id at 5, N. 5. Notably, the Court in Barrios concluded "We have not been asked whether Turn Key Health Clinics, LLC., or its staff are 'employees' under section 157 (7) (b), but have assumed they are for purposes of answering the questions certified us."

D.  Defendant filed a notice of supplemental authority on January 22, 2018, containing a decision arising out of the United State District Court for the Northern District of Oklahoma in a matter styled Wesley Prince v Turn Key Health Clinics, LLC., case number 18-CV-0282-CVE-JFG (N, D, Jan 16, 2019). The Court, in Prince, held that "... Turn Key is an "employee" under the GTCA and, therefore, is immune from tort liability."

E.  As did the Court in Prince, so too does this Court find the Supreme Court's reasoning in Barrios persuasive for finding that Turn Key is an "employee" under the GTCA. This Court finds that Defendant, Turn Key Health Clinics, LLC, is immune under the Governmental Tort Claim Act 51 O. S. § 151 et seq.

F.  Defendant, Turn Key Health Clinics, LLC's Motion to Dismiss Plaintiff's Petition should be granted.

III.

IT IS THEREFORE ORDERED that Defendant, Turn Key Health Clinics, LLC's Motion to Dismiss is granted.

IT IS FURTHER ORDERED that Plaintiff is granted leave to file an amended complaint alleging only a claim under 42 U. S. C. §1983, no later than March 18, 2019.

Dated this 25th day of February, 2019.

KELLY HAKE, Judge of the District Court

II.

A.  Plaintiff presents a claim for negligence under the common law. Plaintiff also alleges that Defendant is not entitled to any of the immunity provisions available to public entities as set forth in the Oklahoma Governmental Tort Claim Act ("GTCA"). 51 O. S. § 151 et seq.

B.  Defendant's Motion to Dismiss contends, in relevant part, that Plaintiff's Petition should be dismissed because Defendant is immune from liability for such claims pursuant to the terms of the GTCA.

C.  In Barrios v Haskell County Public Facilities Authority, 2018 OK 90, the Court stated: "Generally speaking, the staff of a healthcare contractor at a jail are "employees" who are entitled to tort immunity under the GTCA by virtue of Sections 152 (7) (b), 153 (a), and 155 (25)." Id at 5. N. 5. Notably, the Court in Barrios concluded "We have not been asked whether Turn Key Health Clinics, LLC., or its staff are 'employees' under section 157 (7) (b), but have assumed they are for purposes of answering the questions certified us."

D.  Defendant filed a notice of supplemental authority on January 22, 2018, containing a decision arising out of the United State District Court for the Northern District of Oklahoma in a matter styled Wesley Prince v Turn Key Health Clinics, LLC., case number 18-CV-0282-CVE-JFG (N. D. Jan 16, 2019). The Court, in Prince, held that ". . . Turn Key is an "employee" under the GTCA and, therefore, is immune from tort liability."

E.  As did the Court in Prince, so too does this Court find the Supreme Court's reasoning in Barrios persuasive for finding that Turn Key is an "employee" under the GTCA. This Court finds that Defendant, Turn Key Health Clinics, LLC, is immune under the Governmental Tort Claim Act 51 O. S. § 151 et seq.

F.  Defendant, Turn Key Health Clinics, LLC's Motion to Dismiss Plaintiff's Petition should be granted.

III.

IT IS THEREFORE ORDERED that Defendant, Turn Key Health Clinics, LLC's Motion to Dismiss is granted.

IT IS FURTHER ORDERED that Plaintiff is granted leave to file an amended complaint alleging only a claim under 42 U. S. C. §1983, no later than March 18, 2019.

Dated this 25th day of February, 2019.

KELLY HAKE, Judge of the District Court

CERTIFICATE OF MAILING

Copy of the above instrument was mailed on this 25 day of February, 2019, to the following:

_Marcia Gillson_
Deputy Court Clerk

BRYAN & TERRILL LAW PLLC
3015 E. SKELLY DR, SUITE 400
TULSA, OK  74105

BRYAN, J. SPENCER
BRYAN & TERRILL LAW
3015 E SKELLY DR, SUITE 400
TULSA, OK  74105

TERRILL, STEVEN
3015 E. SKELLY DR, SUITE 400
TULSA, OK  74105

HAWTHORNE & SNIDER
9801 N. BROADWAY EXTENSION
OKLAHOMA CITY, OK  73114

THOMPSON, PAULINA
9801 N. BROADWAY EXTENSION
OKLAHOMA CITY, OK  73114



*1043528011*



IN THE DISTRICT COURT FOR TULSA COUNTY
STATE OF OKLAHOMA

JOSHAWA CESSOR,               )
                             )
        Plaintiff,           )
                             )
v.                           )        Case No. CJ-2018-4673
                             )
BOARD OF COUNTY COMMISSIONERS )
OF TULSA COUNTY, a political subdivision )
and municipal corporation; and ARMOR )
CORRECTIONAL HEALTH SERVICES, )
INC., a foreign corporation, )
                             )
        Defendants.          )

## SPECIAL ENTRY OF APPEARANCE

COMES NOW Anthony C. Winter of Johnson Hanan Vosler Hawthorne and Snider and

enters his special appearance on behalf of Defendant, Armor Correctional Health Services, Inc., in

the above-styled cause pursuant to Court Rules of the Fourteenth Judicial District.

The filing of this special entry of appearance does not waive any defenses under Oklahoma

Law, including, but not limited to, those enumerated in OKLA. STAT. tit. 12 § 2012(B).

Respectfully submitted,

SEAN P. SNIDER, OBA # 22307
ANTHONY C. WINTER, OBA # 32148
JOHNSON HANAN AND VOSLER
9801 N. Broadway Extension
Oklahoma City, OK 73114
Telephone: (405) 232-6100
Facsimile: (405) 232-6105
E-Mail: ssnider@johnsonhanan.com
E-Mail: awinter@johnsonhanan.com
*Attorneys for Defendant Armor*
*Correctional Health Services, Inc.*

1

**EXHIBIT L**

## CERTIFICATE OF MAILING

I, hereby certified that a true and correct copy of the above and foregoing was mailed via first class mail on the 1st day of May, 2019, to the following:

Brendan M McHugh
P.O. Box 1392
Claremore, OK 74018
Telephone: (918) 608-0111
Facsimile: (918) 803-4910
and
Dana Jim
P.O. Box 1011
Vinta, OK 74301
Telephone: (918) 457-6626
Facsimile: (918) 517-3431
*Attorneys for Plaintiff*

_____
Anthony C. Winter





IN THE DISTRICT COURT FOR TULSA COUNTY
STATE OF OKLAHOMA

JOSHAWA CESSOR,               )
                             )
          Plaintiff,          )
                             )
v.                            )     Case No. CJ-2018-4673
                             )
BOARD OF COUNTY COMMISSIONERS )
OF TULSA COUNTY, a political subdivision )
and municipal corporation; and ARMOR )
CORRECTIONAL HEALTH SERVICES, )
INC., a foreign corporation,  )
                             )
          Defendants.         )

## SPECIAL ENTRY OF APPEARANCE

COMES NOW Sean P. Snider of Johnson Hanan Vosler Hawthorne and Snider and enters

his special appearance on behalf of Defendant, Armor Correctional Health Services, Inc., in the

above-styled cause pursuant to Court Rules of the Fourteenth Judicial District.

The filing of this special entry of appearance does not waive any defenses under Oklahoma

Law, including, but not limited to, those enumerated in OKLA. STAT. tit. 12 § 2012(B).

Respectfully submitted,

SEAN P. SNIDER, OBA # 22307
ANTHONY C. WINTER, OBA # 32148
JOHNSON HANAN AND VOSLER
9801 N. Broadway Extension
Oklahoma City, OK 73114
Telephone: (405) 232-6100
Facsimile: (405) 232-6105
E-Mail: ssnider@johnsonhanan.com
E-Mail: awinter@johnsonhanan.com
*Attorneys for Defendant Armor*
*Correctional Health Services, Inc.*

EXHIBIT M

**CERTIFICATE OF MAILING**

I, hereby certified that a true and correct copy of the above and foregoing was mailed via first class mail on the 1st day of May, 2019, to the following:

Brendan M McHugh
P.O. Box 1392
Claremore, OK 74018
Telephone: (918) 608-0111
Facsimile: (918) 803-4910
and
Dana Jim
P.O. Box 1011
Vinta, OK 74301
Telephone: (918) 457-6626
Facsimile: (918) 517-3431
*Attorneys for Plaintiff*

_____
Sean P. Snider



# IN THE DISTRICT COURT OF TULSA COUNTY
## STATE OF OKLAHOMA

DISTRICT COURT
**FILED**

MAY 1 5 2019

DON NEWBERRY, Court Clerk
STATE OF OKLA. TULSA COUNTY

JOSHAWA CESSOR, )
)
    Plaintiff, )
)
v. )  Case No. CJ-2018-4673
)
BOARD OF COUNTY COMMISIONERS ) Refiled from Case No. CJ-2016-2442
OF TULSA COUNTY, a political sub- )
division and municipal corporation; )  **ATTORNEY LIEN CLAIMED**
STANLEY GLANZ, individually; )
VIC REGALADO, in his official capacity; )  **JURY TRIAL DEMANDED**
and ARMOR CORRECTIONAL HEALTH )
SERVICES, INC., a foreign corporation, )
)
    Defendants. )

## PLAINTIFF'S MOTION FOR LEAVE TO FILE SECOND AMENDED PETITION

COMES NOW Plaintiff Joshawa Cessor and hereby submits the above motion. In support, Plaintiff alleges:

### BACKGROUND

This is a case where the claims arise from medical indifference, retaliation and negligence while plaintiff was incarcerated at the Tulsa County Jail.

Plaintiff previously filed this case in Tulsa County Case on July 5, 2016 in Tulsa County Case CJ-2016-2442 and the matter was subsequently timely removed on January 19, 2017. The case was dismissed without prejudice on 11/13/2017 and as such this re-filing of this action was timely. Plaintiff files this action as a result of an intervening change in Oklahoma law.

EXHIBIT N

1

# RELEVANT FACTS

1.      On July 5, 2016 plaintiff filed this action[1].  See Petition in Tulsa Co. Case No. CJ-2016-2442.

2.      On January 19 2017, the above matter was removed.

3.      On the 8th day of March 2017, in case 17-CV-036-JHP-FHM, Plaintiff filed a first amended complaint[2] (FAC).  See FAC, attached hereto as Exhibit 1.

4.      On November 13, 2017, Plaintiff dismissed the prior action without prejudice.

5.      On November 13, 2018 Plaintiff refiled this action.  See Petition in Tulsa Case CJ-2018-4673.

6.      On November 30, 2018 a first amended petition (FAP) was filed.  See FAP in Tulsa County Case CJ-2018-4673.

7.      The FAP was filed pursuant to 12 O.S. § 2015 and was filed to add claims under the Oklahoma Constitution under art. 2, §§ 7 & 9 as the original petition only had claims under art. 2 § 30 of the Oklahoma Constitution.  See id.

---

[1] The documents listed in the facts portion are publicly filed documents and as such the court can and should take judicial notice of them.  See  12 O.S. § 2202; IN THE MATTER OF M.K.T., 2016 OK 4368 P.3d 771, ¶ 64; Practical Products Corp. v. Brightmire, 1992 OK 158, 864 P.2d 330, ¶15; A court may take judicial notice of its own files and records, as well as facts which are a matter of public record; Tal v. Hogan, 453 F.3d 1244, 1264 n.24 (10th Cir. 2006). And the court may take judicial notice of filings in related cases. See St. Louis Baptist Temple, Inc. v. Fed. Deposit Ins. Corp., 605 F.2d 1169, 1172 (10th Cir. 1979).

[2] An amended pleading, in this case, the FAC supersedes the original petition.  See Pacific Bell Tel. Co. v. Linkline Communications, Inc., 555 U.S. 438, n.4 (2009); Miller v. Glanz, 948 F.2d 1962, 1965 (10th Cir. 1991).

8.     Subsequently in <u>Barrios v. Haskell County Public Facilities Authority;</u> <u>Foutch v. Turn Key Health</u>, 2018 OK 90, _____, P.3d _____, (citation pending) the Oklahoma Supreme Court issued an Opinion eliminating claims for violations of art. 2, §§ 7 & 9.  Further, the court in <u>Barrios</u> was ambiguous regarding whether a claim for violations of art. 2 § 30 still existed in the context herein.  <u>Id.</u>

9.     That a proposed Second Amended Petition is attached hereto as Exhibit 2.

10.     That this Court should allow Plaintiff to file a Second Amended Petition due to the intervening change in existing law.

## ARGUMENT AND AUTHORITIES

### THIS COURT SHOULD ALLOW PLAINTIFF LEAVE TO FILE SECOND AMENDED PETITION

The Oklahoma Pleading Code and Discovery Code both provide that both acts "shall be liberally construed to provide the just, speedy and inexpensive determination of every action." 12 O.S. § 2001, 12 O.S. ¶ 3225.

In fact, the pleadings can be amended to conform to the evidence and can be amended by the pretrial which supercedes the pleadings.  <u>See Muller v. Muller</u> 2013 OK CIV APP 90, ¶¶ 11 & 12, 311 P.3d 1247; Rules for District Courts of Oklahoma, Rule 5(I). Further 12 O.S. 2015(B) provides the amendment is allowed to conform to the evidence.   The evidence of the proposed amendment is the same, the parties are the same are in privity or have notice of the likelihood of the proceedings and there is an absence of prejudice or undue delay. Allowing Plaintiff to amend would be proper in that 12 O.S. § 2015(a) provides that leave to amend

3

"shall be freely given..." 12 O.S. § 2015(a). Prough v. Edinger, Inc., 1993 OK 130, ¶ 9, 862 P.2d 71, 74-75. If leave to amend is denied the court must rely on some reason such as undue delay, bad faith, or dilatory motives. See id; Winston v. Stewart and Elder, P.C., 2002 OK 68, ¶ 24, 55 P.3d 1063. In fact, under Oklahoma law the discretion of the trial court is limited by the principle that leave shall be freely given. See Marshall v. Allstate Ins. Co., 1990 OK CIV APP 100, ¶ 9, 805 P.2d 689. There the court further stated the general policy in Oklahoma as follows:

> "If the underlying circumstances relied upon by Plaintiff may be a proper subject of relief, he ought to be afforded an opportunity to test his claim on the merits. In the absence of any apparent or declared reason- such as undue delay, bad faith, a dilatory motive on part of the movant, repeated failure to cure deficiencies by amendment previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of the amendment, etc.- leave sought should, as the rules require, be "freely given". Of course, the grant or denial of an opportunity to amend is within the discretion of the district court, but outright refusal to grant to leave without any justifying reason, appearing not an exercise of discretion; it is merely an abuse of that discretion and inconsistent with the spirit of the [Oklahoma Pleading Code].

> Id. at ¶ 9 [citing Foman v. Davis, 371 U.S. 178 (1962)].

Thus, the pleadings should be amended to allow for the claims set forth in plaintiff's proposed second amended petition to proceed by amendment or inclusion in the pretrial. Furthermore, allowing leave fosters the general policy of fairness and substantial justice:

> The Oklahoma Pleading Code governs the procedure in the district courts of Oklahoma in all suits of a civil nature whether cognizable as cases at law or in equity except where a statute specifies a different procedure. It shall

4

be construed to secure the **just, speedy, and inexpensive determination of every action.** (emphasis added).

Cite

That 12 O.S. § 2015 of the Oklahoma Pleading Code echoes the Oklahoma public policy of hearing a suit on the merits by permitting amendment of a pleading "by leave of court" and it shall be "freely given when justice requires." In relevant part, 12 O.S. 2015 states:

> A. AMENDMENTS. A party may amend his pleading once as a matter of course at any time before a responsive pleading is served or, if the pleading is one to which no responsive pleading is permitted and the action has not been placed upon the trial calendar, he may so amend it at any time within twenty (20) days after it is served. Amendments to add omitted counterclaims or to add or drop parties may be made as a matter of course within the time specified above. Otherwise a party may **amend his pleading only by leave of court** or by written consent of the adverse party; and **leave shall be freely given when justice so requires.** A party shall respond to an amended pleading within the time remaining for response to the original pleading or within ten (10) days after the service of the amended pleading, whichever period may be longer, unless the court otherwise orders.

12 O.S. 2015 (emphasis added).

In <u>West v. Jane Phillips Memorial Medical Center</u>, 2017 OK CIV APP 52, ¶ 13, 404 P.3d 896 the Oklahoma Court of Civil Appeals held claims that arise from the same set of facts even if a different claim are properly related back. Further, under 12 O.S. § 2015(C) relation back is proper: Relation back is permitted by the law that provides the statute of limitations applicable to the action; or

1)     The claim or defense asserted in the amended pleading arose out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading..."

Id.

The language is thus clear.

The relation back principle was acknowledged by the Supreme Court in Krupski v. Costa Crociere[3], 560 U.S. 538 (2010).

Case law on adding Plaintiff's after Krupski in this Circuit is sparse. However, the decisions that exist support relation back. In McClelland v. Deluxe Financial Services, Inc., 431 F. App'x 718 (10th Cir. 2011), the Tenth Circuit refused to allow the amendment but did so because the claims were separate allegations. However, the Court specified the applicable standard. Id at 729-30. The key issues for relation back under McClelland are 1) transactional relationship and 2) sufficient notice of claims. Id at 223; Plummer v. Farmers Group Inc., 388 F. Supp. 2d 1310, 1315-1316. Here, the claims arise out of the same transaction and relation back is appropriate.

Wherefore, for the above reasons, Plaintiff requests leave to file second amended petition.

Brendan M. McHugh, OBA #18422
Attorney for Plaintiff
P.O. Box 1392
Claremore, OK 74018
(918) 608-0111

---

[3] Oklahoma rules of civil procedure are based on the Federal Rules of Civil Procedure and as such are persuasive. See Prough v. Edinger, Inc., 1993 OK 130, 862 P.2d 71, ¶¶ 6-12.

Fax: (918) 803-4910
Email:Brendan@lawinok.com
and
Dana Jim, OBA #19495
P.O. Box 1011
Vinita, Oklahoma 74301
Tele: (918) 457-6626
Fax: (918) 517-3431
Email: danajimlaw@gmail.com
Co-Counsel for Plaintiff

## CERTIFICATE OF DELIVERY

This is to certify that the above document was delivered, postage prepaid, on this 15 day of May 2019 to:

Kehoe, Matthew Steven (Bar #22615)
Assistant District Attorney
500 S. Denver, Ste. 900
Tulsa, OK 74103
BOARD OF COUNTY COMMISIONERS,

Mc Hugh, Brendan M (Bar #18422)
PO BOX 1392
CLAREMORE, OK 74017


SNIDER, SEAN P (Bar #22307)
JOHNSON HANAN AND VOSLER
9801 N BROADWAY EXTENSION
OKLA CITY, OK 73114
ARMOR CORRECTIONAL HEALTH
SERVICES INC,

Winter, Anthony C (Bar #32148)
Johnson Hanan and Vosler
9801 N Broadway Ext
Oklahoma City, OK 73114
ARMOR CORRECTIONAL HEALTH
SERVICES INC,

Brendan M. McHugh

**IN THE UNITED STATES DISTRICT COURT FOR
THE NORTHERN DISTRICT OF OKLAHOMA**

| | |
|---|---|
| (1) JOSHAWA CESSOR, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| (1) BOARD OF COUNTY COMMISIONERS | ) |
| OF TULSA COUNTY, a political sub- | ) |
| division and municipal corporation, | ) |
| (2) STANLEY GLANZ, individually, | ) |
| (3) VIC REGALADO, in his official capacity; | ) |
| (4) CORRECTIONAL HEALTHCARE | ) |
| MANAGEMENT OF OKLAHOMA, INC., | ) |
| a foreign corporation, | ) |
| | ) |
| Defendants. | ) |

Case No. 17-CV-036-JHP-FHM

**ATTORNEY LIEN CLAIMED**

**JURY TRIAL DEMANDED**

**FIRST AMENDED COMPLAINT**

The Plaintiff Joshawa Cessor ("Plaintiff") hereby submits his First Amended Complaint in the above captioned matter. In support thereof, Plaintiff alleges and states as follows:

1.    Plaintiff is an individual who is domiciled in the State of New Mexico and at the time of the conduct alleged herein was a resident of Broken Arrow, Oklahoma.

3.    Defendant Board of County Commissioners of Tulsa County ("BCCTC") is a political subdivision and municipal corporation.

4.    Defendant Vic Regalado ("Regalado") is the Sheriff at Tulsa County Jail and this action is against him in his official capacity as Sheriff of Tulsa County.

5.    Defendant Stanley Glanz ("Glanz") was the Tulsa County Sheriff during Plaintiff's incarceration and this action is against him in his individual capacity.

6.    Numerous John and Jane Does were employed at the Tulsa County Jail during the events at issue herein.

1



EXHIBIT

7.     That beginning in early September 2015 until approximately September 15th 2015 Plaintiff was incarcerated at the Tulsa County Jail as a pretrial detainee being held on a warrant issued by the State of New Mexico.

8.     Board of County Commissioners of Tulsa County ("BCCTC") is a political subdivision and municipal corporation and the governing entity of Tulsa County Jail and pursuant to 19 O.S. § 4 is the proper entity to be sued on behalf of Tulsa County Jail.

9.     Defendant Correctional Healthcare Management of Oklahoma, Inc. ("CHMO"), was, at all times relevant hereto, a foreign corporation doing business in Tulsa County, Oklahoma.  CHMO was, at all times relevant hereto, responsible, in part, for providing medical services and medication to Plaintiff while he was in the custody of the Tulsa County Sheriff's Department. CHMO was additionally responsible, in part, for implementing Tulsa County Jail policies regarding medical and mental health care, assisting in developing those policies and in training and supervising its employees.

10.     Plaintiff files this first amended complaint pursuant to Fed. R. Civ. P. 15 which allows the filing of an amendment within 21 days of service of a motion to dismiss under Rule 12. Plaintiff abandons all claims and assertions of his Petition not expressly alleged herein. The filing of this first amended complaint supercedes Plaintiff's Petition filed July 5th 2016 in Tulsa County District Court and renders moot the motion to dismiss filed by Defendant Vic Regalado on February 15th 2017 [Doc. No. 8].  Accordingly, Plaintiff will not respond to that motion.

11.     While incarcerated at the Tulsa County Jail, Plaintiff was subjected to cruel and unusual punishment and an unreasonable seizure prohibited by the United States Constitution and applicable in this context thru the 4th and 14th Amendments to the United States Constitution to Plaintiff as a pretrial detainee.  Such conduct is also violative of Article 2, § 30 of the Oklahoma Constitution.

12.    That on or about September 8th 2015 while incarcerated in the Tulsa County Jail,

employees of the Tulsa County Jail handcuffed Plaintiff excessively resulting in a fracture and

displacement of his right hand as well as paresthesia. The conduct of the individual employees

of the jail is unlawful in that it is excessive force under the United States and Oklahoma

Constitutions. Specifically, while being processed into Tulsa Jail, Plaintiff disclosed that he was

in the past hospitalized in New Mexico for suicidal tendencies with depression, anxiety and

mental health issues. This resulted in Plaintiff being placed him in a medical/mental unit of the

jail. Plaintiff was placed in a jail cell with no clothes and a sheet to cover himself and the guard

derisively laughed at him while placing him in the cell with his clothing. While there, Plaintiff

began to threaten to call the Mayor and/or an attorney to complain about the conditions in the

jail and his treatment. Numerous deputies and Sheriff Glanz appeared and Plaintiff was placed

in handcuffs resulting in his hand making a loud popping/cracking sound. Plaintiff immediately

hollered in pain. Nevertheless, despite the need for medical attention, Plaintiff was placed in a

cell. Plaintiff requested medical care and was in excessive pain for over 20 hours before he was

finally taken to an x-ray technician at jail who diagnosed Plaintiff with what was described as a

triad break.   Subsequently, two physicians with the jail and/or CHMO stated that it was not

possible to determine if it was broken and no treatment was rendered by them to Plaintiff.

Plaintiff was only given Tylenol a few days later after his mother, resulting in severe and

unnecessary pain to Plaintiff. Plaintiff made numerous written requests thru the KIOSK system

and subsequently Plaintiff attempted retrieve such requests, the requests were no longer visible

and Plaintiff's KIOSK records were wiped clean as there were no other records.  After his

release from Tulsa Jail,  it was confirmed that Plaintiff had indeed broken his wrist.

3

13. After fracturing Plaintiff's wrist, individual employees of the Tulsa County Jail exacerbated Plaintiff's condition by refusing to provide medical treatment to Plaintiff also in violation of Plaintiff's constitutional rights under the United States and Oklahoma Constitutions. Further, Plaintiff had mental health needs in that he was diagnosed with anxiety and had other mental health issues that should have been adequately responded to.

14. The jurisdiction of this Court is proper under 28 U.S.C. § 1331 because Plaintiff's claims arise under the Constitution of the United States, particularly the 4th and 14th Amendments to the United States Constitution as actionable thru and 42 U.S.C. § 1983.

15. This Court has supplemental jurisdiction over the state law claims asserted herein pursuant to 28 U.S.C. § 1367, since the state claims arise from the same case or controversy.

16. Venue is proper in this district because a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in this District.

17. Defendant Glanz was at all times relevant hereto, the Sheriff of Tulsa County, Oklahoma, residing in Tulsa County, Oklahoma. Glanz, as Sheriff and the head of the Tulsa County Sheriff's Department, was, at all times relevant hereto, responsible for ensuring the safety and well-being of inmates detained and housed at the Tulsa County Jail, including the provision of appropriate medical care and treatment to inmates in need of such care, pursuant to 57 O.S. § 47.

18. In addition, Defendant Glanz was at all times pertinent hereto, responsible for creating, adopting, approving, ratifying, and enforcing the rules, regulations, policies, practices, procedures, and/or customs of the Tulsa County Sheriff's Department and Tulsa County Jail, including the policies, practices, procedures, and/or customs that violated Plaintiff's rights as set forth in this Amended Complaint. Defendant Glanz is sued in his individual capacity.

4

**COUNT I**

**42 U.S.C. § 1983 – VIOLATIONS OF THE 4TH AND 14TH AMENDMENTS TO THE UNITED STATES CONSTITUTION**

**(As to Defendant Glanz in his individual capacity, Defendant Regalado in his official capacity, and CHMO)**

19.     In support of Count I, Plaintiff restates and re-alleges the foregoing allegations in their entirety as though fully set forth herein.

20.     That while incarcerated in the Tulsa Jail, Plaintiff was subjected to excessive force by certain unknown individuals, John and Jane Does, and once the responsible individuals are learned of and determined with knowledge, a separate excessive force claim will be alleged as to them upon leave of the Court at the time this information is discovered.

21.     The action and inaction by the Defendants named herein constitutes deliberate indifference to the known federal constitutional rights of Plaintiff; specifically:

a.     Plaintiff was injured by a Tulsa County Jail employee resulting in excessive force and significant injuries to Plaintiff.

b.     Defendants were deliberately indifferent to Plaintiff's medical needs by failing to provide medical assistance to Plaintiff after being requested to do so and having actual knowledge of a medical need.

c.     Defendants' failure provide medical assistance resulted in signification exacerbation of Plaintiff's condition.

22.     The above described conduct is a direct result of the inadequate training and the failure to properly train employees of the Tulsa County Jail.  This policy is set forth and described in the Order of the Court by Honorable Judge John E. Dowdell in Burke v. Glanz, et al., No. 11-CV-720-JED-PJC, Opinion and Order, (N.D. Okla. July 20th 2016) [Doc. No. 304]. Specifically, on three occasions, the staffing, medical treatment of inmates at the Tulsa Jail was

found to be deficient. Further, Defendant CHMO violated the constitutional rights of inmates by neglecting their medical needs. This resulted in a pattern and policy and actual notice of the deficiencies.

23. Defendants had actual knowledge of all the above described conditions of confinement and all three acted with reckless indifference for the rights of the Plaintiff.

**A.      Individual Capacity Liability- Defendant Glanz**

24. Plaintiff re-alleges and incorporates by reference the above paragraphs as though fully set forth herein.

25. There is an affirmative link between the aforementioned acts and/or omissions of Defendants in being deliberately indifferent to Plaintiff's serious medical needs, health and safety and policies, practices and/or customs which Glanz promulgated, created, implemented and/or possessed responsibility for.

26. Such policies, practices and/or customs include, but are not limited to:

a.      The failure to promulgate, implement or enforce, adequate mental health policies responsive to the serious medical needs of inmates like Plaintiff;

b.      Inadequate medical triage screening that fails to identity inmates with serious medical or mental health needs;

c.      Severe limitation of the use of off-site medical, mental health and diagnostic service providers, even in emergency situations;

d.      Untimely medical and mental health examinations and treatment;

e.      Understaffing the medical unit; and

f.      The failure to adequately train jail personnel and staff with respect to the proper assessment, classification and treatment of inmates with serious medical and mental health needs.

27.     Glanz knew and/or it was obvious that the maintenance of the aforementioned policies, practices and/or customs posed an excessive risk to the health and safety of inmates.

28.     Glanz disregarded the known and/or obvious risks to the health and safety of inmates like Plaintiff.

29.     Glanz, through his continued encouragement, ratification, and approval of the aforementioned policies, practices, and/or customs, in spite of their known and/or obvious inadequacies and dangers, has been deliberately indifferent to inmates', including Plaintiff's, serious medical needs.

30.     There is an affirmative link between the unconstitutional acts of his subordinates and Glanz's adoption and/or maintenance of the aforementioned policies, practices and/or customs.

**B.      Official Capacity Liability – Defendant Regalado & Municipal Liability – Defendant CHMO**

31.     Plaintiff re-alleges and incorporates by reference the above paragraphs as though fully set forth herein.

32.     CHMO and Regalado are each a "person" for purposes of 42 U.S.C. § 1983.

33.     At all times pertinent hereto, CHMO and Regalado were acting under color of state law.

34.     CHMO was charged with implementing and assisting in developing the policies of the Tulsa County Sheriff's Department with respect to the medical and mental health care of inmates at the Tulsa County Jail and has shared responsibility to adequately train and supervise its employees.  Sheriff Regaldo is the current office holder as the Sheriff of Tulsa County and is in charge of the Tulsa Jail and is accordingly sued in his official capacity.

35.     There is an affirmative link between the deprivation of Plaintiff's right to be free of cruel and unusual punishment and the policies, practices and/or customs that Tulsa Jail and CHMO promulgated, created, implemented and/or possessed responsibility for.

36.     Such policies, practices and/or customs include, but are not limited to:

a.      The failure to promulgate, implement or enforce adequate mental health policies responsive to the serious medical needs of inmates like Plaintiff.

b.      Inadequate medical triage screening that fails to identify inmates with serious medical or mental health needs;

c.      Severe limitation of the use of off-site medical, mental health and diagnostic service providers, even in emergency situations;

d.      Untimely medical and mental health examinations and treatment;

e.      Understaffing the medical unit; and

f.      The failure to adequately train CHMO and Tulsa Jail employees and/or agents with respect to the proper assessment, classification and treatment of inmates with serious needs.

37.     Defendants knew it was obvious that the maintenance of the aforementioned policies, practices and/or customs posed an excessive risk to the health and safety of inmates like Plaintiff.

38.     Defendants tacitly encouraged, ratified, and/or approved of the acts and/or omissions alleged herein, knew and/or it was obvious that such conduct was unjustified and would result in violations of constitutional rights, and was deliberately indifferent to the serious medical and mental health needs of inmates.

39.     As a direct and proximate result of unlawful policies, practices and/or customs, Plaintiff has suffered injuries and damages as alleged herein.

8

40.     That pursuant to 42 U.S.C. § 1983, Plaintiff's constitutional rights should be vindicated.

41.     Defendant Glanz has acted with conscious disregard to the federally secured rights of Plaintiff and as such, punitive damages in excess of $10,000.00 should be assessed against them.

42.     As a result of Defendants' conduct, Plaintiff has suffered actual damages in excess of $75.000.00.

43.     Plaintiff has incurred attorney fees and costs pursuing this matter and pursuant to 42 U.S.C. § 1988 Plaintiff should be reimbursed a reasonable award of attorney fees and costs.

44.     In the event that actual damages are not provable, nominal damages should be issued as a means to redress the civil rights of Plaintiff.

## COUNT II

## NEGLIGENCE

## (As to Defendants BCCTC and CHMO)

45.     Plaintiff re-alleges and incorporates by reference the above paragraphs as though fully set forth herein.

46.     Prior to filing this action, Plaintiff fully exhausted his rights pursuant to the Oklahoma Governmental Tort Claims Act, 51 O.S. § 151 *et. seq.* (OGTCA).

47.     As a result of the negligence of Defendants BCCTC and CHMO, Plaintiff sustained damages.

48.     Defendants BCCTC and CHMO owed a duty to Plaintiff, and all other inmates in custody, to use reasonable care to provide inmates in need of medical attention with appropriate assessment, classification and treatment of inmates with serious needs.

9

49.     As a direct and proximate cause of the negligence of BCCTC and CHMO, Plaintiff has suffered damages, in excess of $75,000.00.

## COUNT III

## OKLAHOMA CONSTITUTION-BOSH CLAIM

## (As to Defendant BCCTC and CHMO)

50.     Plaintiff re-alleges and incorporates by reference the above paragraphs as though fully set forth herein.

51.     Additionally, and/or alternatively, Defendants   BCCTC and CHMO violated Plaintiff's rights under the Oklahoma Constitution, and a cause of action exists pursuant to Bosh v. Cherokee County Building Authority, 2013 OK 9, 305 P.3d 994, for violating Plaintiff's rights under Art. 2, § 30 of the Oklahoma Constitution.

52.     Defendant Regalado has waived any applicable immunity under the OGTCA and therefore a Bosh claim is not alleged as to him.

WHEREFORE, Plaintiff requests an award of actual damages in excess of $75,000.00 against all Defendants, an award of punitive damages against Defendant Glanz in excess of $10,000.00, the costs of this action, pre and post judgment interest, reasonable attorney fees and costs, that Defendants be jointly and severally liable and any other and further relief that this Court deems proper.

S/Brendan M. McHugh
Brendan M. McHugh, OBA #18422
Attorney for Plaintiff
P.O. Box 1392
Claremore, OK 74018
Tele: (918) 608-0111
Fax: (918) 803-4910
and
Dana Jim, OBA #19495

P.O. Box 1011
Vinita, OK 74301
Tele: 918-457-6626
Fax: 918-517-3431
Co-Counsel for Plaintiff

## CERTIFICATE OF ELECTRONIC DELIVERY

I certify that I delivered via this Court's ECF system a true and correct copy of this document on the 8th day of March 2017 to:

Kim Hall, OBA # 16100
Assistant District Attorney, Civil Division
Tulsa County, District Attorney's Office
500 S. Denver, Ste. 827
Attorney for Defendant Regaldo in his official capacity

S/Brendan M. McHugh

## IN THE DISTRICT COURT OF TULSA COUNTY
## STATE OF OKLAHOMA

JOSHAWA CESSOR, )
)
    Plaintiff, )
)
v. )    Case No. CJ-2018-4673
)
BOARD OF COUNTY COMMISIONERS )    Refiled from Case **No. CJ-2016-2442**
OF TULSA COUNTY, a political sub- )
division and municipal corporation; )    **ATTORNEY LIEN CLAIMED**
STANLEY GLANZ, individually; )
VIC REGALADO, in his official capacity; )    **JURY TRIAL DEMANDED**
and ARMOR CORRECTIONAL HEALTH )
SERVICES, INC., a foreign corporation, )
)
    Defendants. )

## SECOND AMENDED PETITION

The Plaintiff Joshawa Cessor ("Plaintiff") hereby submits his Second Amended Petition in the above captioned matter. In support thereof, Plaintiff alleges and states as follows:

1.    Plaintiff is an individual who is domiciled in the State of Arkansas and at the time of the conduct alleged herein was a resident of Broken Arrow, Oklahoma.

2.    Defendant Board of County Commissioners of Tulsa County ("BCCTC") is a political subdivision and municipal corporation.

3.    Defendant Vic Regalado ("Regalado") is the Sheriff at Tulsa County Jail and this action is against him in his official capacity as Sheriff of Tulsa County.

4.    Defendant Stanley Glanz ("Glanz") was the Tulsa County Sheriff during Plaintiff's incarceration and this action is against him in his individual capacity.

1



5.    Numerous John and Jane Does were employed at the Tulsa County Jail during the events at issue herein.

6.    That beginning in early September 2015 until approximately October of 2015 Plaintiff was incarcerated at the Tulsa County Jail as a pretrial detainee being held on a warrant issued by the State of New Mexico.

7.    Board of County Commissioners of Tulsa County ("BCCTC") is a political subdivision and municipal corporation and the governing entity of Tulsa County Jail and pursuant to 19 O.S. § 4 is the proper entity to be sued on behalf of Tulsa County Jail.

8.    Defendant ARMOR CORRECTIONAL HEALTH SERVICES, INC. (ACHS) was, at all times relevant hereto, a foreign corporation doing business in Tulsa County, Oklahoma.    ACHS was, at all times relevant hereto, responsible, in part, for providing medical services and medication to Plaintiff while he was in the custody of the Tulsa County Sheriff's Department. ACHS was additionally responsible, in part, for implementing Tulsa County Jail policies regarding medical and mental health care, assisting in developing those policies and in training and supervising its employees.

9.    That Plaintiff previously filed this case in Tulsa County Case No. CJ-2016-2442 and such matter was subsequently removed and dismissed without prejudice on 11/13/2017 and as such this re-filing is timely.

10.    While incarcerated at the Tulsa County Jail, Plaintiff was subjected to cruel and unusual punishment and an unreasonable seizure prohibited by the United States Constitution and applicable in this context thru the 4th and 14th Amendments to the

United States Constitution to Plaintiff as a pretrial detainee.   Such conduct is also violative of Article 2, § 30 of the Oklahoma Constitution.

11.   That on or about September 8th 2015 while incarcerated in the Tulsa County Jail, employees of the Tulsa County Jail handcuffed Plaintiff excessively resulting in a fracture and displacement of his right hand as well as paresthesia.   The conduct of the individual employees of the jail is unlawful in that it is excessive force under the United States and Oklahoma Constitutions.   Specifically, while being processed into Tulsa County Jail, Plaintiff disclosed that he was in the past hospitalized in New Mexico for suicidal tendencies with depression, anxiety and mental health issues.   This resulted in Plaintiff being placed him in a medical/mental unit of the jail.   Plaintiff was placed in a jail cell with no clothes and a sheet to cover himself and the guard derisively laughed at him while placing him in the cell with his clothing.   While there, Plaintiff began to threaten to call the Mayor and/or an attorney to complain about the conditions in the jail and his treatment.   Numerous deputies and Sheriff Glanz appeared and Plaintiff was placed in handcuffs resulting in his hand making a loud popping/cracking sound. Plaintiff immediately hollered in pain.   Nevertheless, despite the need for medical attention, Plaintiff was placed in a cell.   Plaintiff requested medical care and was in excessive pain for over 20 hours before he was finally taken to an x-ray technician at jail who diagnosed Plaintiff with what was described as a triad break.   Subsequently, two physicians with the jail and/or ACHS stated that it was not possible to determine if it was broken and no treatment was rendered by them to Plaintiff.   Plaintiff was only given Tylenol a few days later, resulting in severe and unnecessary pain to Plaintiff.

Plaintiff made numerous written requests thru the KIOSK system and subsequently Plaintiff attempted to retrieve such requests, the requests were no longer visible and Plaintiff's KIOSK records were wiped clean as there were no other records. After his release from Tulsa County Jail, it was confirmed that Plaintiff had indeed broken his wrist.

12.     After fracturing Plaintiff's wrist, individual employees of the Tulsa County Jail exacerbated Plaintiff's condition by refusing to provide medical treatment to Plaintiff also in violation of Plaintiff's constitutional rights under the United States and Oklahoma Constitutions. Further, Plaintiff had mental health needs in that he was diagnosed with anxiety and had other mental health issues that should have been adequately responded to.

13.     Defendant Glanz was at all times relevant hereto, the Sheriff of Tulsa County, Oklahoma, residing in Tulsa County, Oklahoma. Glanz, as Sheriff and the head of the Tulsa County Sheriff's Department, was, at all times relevant hereto, responsible for ensuring the safety and well-being of inmates detained and housed at the Tulsa County Jail, including the provision of appropriate medical care and treatment to inmates in need of such care, pursuant to 57 O.S. § 47.

14.     In addition, Defendant Glanz was at all times pertinent hereto, responsible for creating, adopting, approving, ratifying, and enforcing the rules, regulations, policies, practices, procedures, and/or customs of the Tulsa County Sheriff's Department and Tulsa County Jail, including the policies, practices, procedures, and/or

4

customs that violated Plaintiff's rights as set forth in this Petition. Defendant Glanz is sued in his individual capacity.

<center>**COUNT I**</center>

<center>**42 U.S.C. § 1983 – VIOLATIONS OF THE 4TH AND 14TH AMENDMENTS TO THE UNITED STATES CONSTITUTION**</center>

<center>**(As to Defendant Glanz in his individual capacity, Defendant Regalado in his official capacity, and Defendant ACHS)**</center>

15.     In support of Count I, Plaintiff restates and re-alleges the foregoing allegations in their entirety as though fully set forth herein.

16.     That while incarcerated in the Tulsa County Jail, Plaintiff was subjected to excessive force by certain unknown individuals, John and Jane Does, and once the responsible individuals are learned of and determined with knowledge, a separate excessive force claim will be alleged as to them upon leave of the Court at the time this information is discovered.

17.     The action and inaction by the Defendants named herein constitutes deliberate indifference to the known federal constitutional rights of Plaintiff; specifically:

a.     Plaintiff was injured by a Tulsa County Jail employee resulting in excessive force and significant injuries to Plaintiff.

b.     Defendants were deliberately indifferent to Plaintiff's medical needs by failing to provide medical assistance to Plaintiff after being requested to do so and having actual knowledge of a medical need.

c.     Defendants' failure to provide medical assistance resulted in signification exacerbation of Plaintiff's condition.

<center>5</center>

18.     The above described conduct is a direct result of the inadequate training and the failure to properly train employees of the Tulsa County Jail.  This policy is set forth and described in the Order of the Court by Honorable Judge John E. Dowdell in Burke v. Glanz, et al., No. 11-CV-720-JED-PJC, Opinion and Order, (N.D. Okla. July 20th 2016).   Specifically, on three occasions, the staffing, medical treatment of inmates at the Tulsa County Jail was found to be deficient.  Further, Defendant ACHS violated the constitutional rights of inmates by neglecting their medical needs. This resulted in a pattern and policy and actual notice of the deficiencies.

19.     Defendants had actual knowledge of all the above described conditions of confinement and all three acted with reckless indifference for the rights of the Plaintiff.

## COUNT I.A. – Individual Capacity Liability – Defendant Glanz

20.     Plaintiff re-alleges and incorporates by reference the above paragraphs as though fully set forth herein.

21.     There is an affirmative link between the aforementioned acts and/or omissions of Defendants in being deliberately indifferent to Plaintiff's serious medical needs, health and safety and policies, practices and/or customs which Glanz promulgated, created, implemented and/or possessed responsibility for.

22.     Such policies, practices and/or customs include, but are not limited to:

a.     The failure to promulgate, implement or enforce, adequate mental health policies responsive to the serious medical needs of inmates like Plaintiff;

b.     Inadequate medical triage screening that fails to identity inmates with serious medical or mental health needs;

c.    Severe limitation of the use of off-site medical, mental health and diagnostic service providers, even in emergency situations;

d.    Untimely medical and mental health examinations and treatment;

e.    Understaffing the medical unit; and

f.    The failure to adequately train jail personnel and staff with respect to the proper assessment, classification and treatment of inmates with serious medical and mental health needs.

23.    Glanz knew and/or it was obvious that the maintenance of the aforementioned policies, practices and/or customs posed an excessive risk to the health and safety of inmates.

24.    Glanz disregarded the known and/or obvious risks to the health and safety of inmates like Plaintiff.

25.    Glanz, through his continued encouragement, ratification, and approval of the aforementioned policies, practices, and/or customs, in spite of their known and/or obvious inadequacies and dangers, has been deliberately indifferent to inmates', including Plaintiff's, serious medical needs.

26.    There is an affirmative link between the unconstitutional acts of his subordinates and Glanz's adoption and/or maintenance of the aforementioned policies, practices and/or customs.

### COUNT I.B. – Official Capacity Liability – Defendant Regalado & Municipal Liability – Defendant ACHS

27.    Plaintiff re-alleges and incorporates by reference the above paragraphs as though fully set forth herein.

28.     ACHS and Regalado are each a "person" for purposes of 42 U.S.C. § 1983.

29.     At all times pertinent hereto, ACHS and Regalado were acting under color of state law.

30.     ACHS was charged with implementing and assisting in developing the policies of the Tulsa County Sheriff's Department with respect to the medical and mental health care of inmates at the Tulsa County Jail and has shared responsibility to adequately train and supervise its employees.  Sheriff Regalado is the current office holder as the Sheriff of Tulsa County and is in charge of the Tulsa Jail and is accordingly sued in his official capacity.

31.     There is an affirmative link between the deprivation of Plaintiff's right to be free of cruel and unusual punishment and the policies, practices and/or customs that Tulsa County Jail and ACHS promulgated, created, implemented and/or possessed responsibility for.

32.     Such policies, practices and/or customs include, but are not limited to:

        a.      The failure to promulgate, implement or enforce adequate mental health policies responsive to the serious medical needs of inmates like Plaintiff.

        b.      Inadequate medical triage screening that fails to identify inmates with serious medical or mental health needs;

        c.      Severe limitation of the use of off-site medical, mental health and diagnostic service providers, even in emergency situations;

        d.      Untimely medical and mental health examinations and treatment;

        e.      Understaffing the medical unit; and

f.   The failure to adequately train ACHS and Tulsa County Jail employees and/or agents with respect to the proper assessment, classification and treatment of inmates with serious needs.

33.   Defendants knew it was obvious that the maintenance of the aforementioned policies, practices and/or customs posed an excessive risk to the health and safety of inmates like Plaintiff.

34.   Defendants tacitly encouraged, ratified, and/or approved of the acts and/or omissions alleged herein, knew and/or it was obvious that such conduct was unjustified and would result in violations of constitutional rights, and was deliberately indifferent to the serious medical and mental health needs of inmates.

35.   As a direct and proximate result of unlawful policies, practices and/or customs, Plaintiff has suffered injuries and damages as alleged herein.

36.   That pursuant to 42 U.S.C. § 1983, Plaintiff's constitutional rights should be vindicated.

37.   Defendant Glanz has acted with conscious disregard to the federally secured rights of Plaintiff and as such, punitive damages in excess of $10,000.00 should be assessed against them.

38.   As a result of Defendants' conduct, Plaintiff has suffered actual damages in excess of $75.000.00.

39.   Plaintiff has incurred attorney fees and costs pursuing this matter and pursuant to 42 U.S.C. § 1988 Plaintiff should be reimbursed a reasonable award of attorney fees and costs.

40.     In the event that actual damages are not provable, nominal damages should be issued as a means to redress the civil rights of Plaintiff.

## COUNT II OKLAHOMA CONSTITUTION – BOSH CLAIM

## (As to Defendant BCCTC and ACHS)

41.     Plaintiff re-alleges and incorporates by reference the above paragraphs as though fully set forth herein.

42.     Prior to filing this action, Plaintiff fully exhausted his rights pursuant to the Oklahoma Governmental Tort Claims Act, 51 O.S. § 151 *et. seq.* (OGTCA).

43.     As a result of the negligence of Defendants BCCTC and ACHS, Plaintiff sustained damages.

44.     Defendants BCCTC and ACHS owed a duty to Plaintiff, and all other inmates in custody, to use reasonable care to provide inmates in need of medical attention with appropriate assessment, classification and treatment of inmates with serious needs.

45.     As a direct and proximate cause of the negligence of BCCTC and ACHS, Plaintiff has suffered damages, in excess of $75,000.00.

46.     Plaintiff re-alleges and incorporates by reference the above paragraphs as though fully set forth herein.

47.     Additionally, and/or alternatively, Defendants BCCTC and ACHS violated Plaintiff's rights under the Oklahoma Constitution, and a cause of action exists pursuant to Bosh v. Cherokee County Building Authority, 2013 OK 9, 305 P.3d 994, for violating Plaintiff's rights under Art. 2, § 30 of the Oklahoma Constitution.

48.    Defendant Regalado has waived any applicable immunity under the OGTCA and therefore a <u>Bosh</u> claim is not alleged as to him.

WHEREFORE, Plaintiff requests an award of actual damages in excess of $75,000.00 against all Defendants, an award of punitive damages against Defendant Glanz in excess of $10,000.00, the costs of this action, pre and post judgment interest, reasonable attorney fees and costs, that Defendants be jointly and severally liable, and any other and further relief that this Court deems proper.

_____

Brendan M. McHugh, OBA #18422
Attorney for Plaintiff
P.O. Box 1392
Claremore, OK 74018
Tele: (918) 608-0111
Fax: (918) 803-4910
and
Dana Jim, OBA #19495
P.O. Box 1011
Vinita, OK 74301
Tele: 918-457-6626
Fax: 918-517-3431
Co-Counsel for Plaintiff





## IN THE DISTRICT COURT OF TULSA COUNTY
## STATE OF OKLAHOMA

DISTRICT COURT
**F I L E D**

MAY 1 6 2019

DON NEWBERRY, Court Clerk
STATE OF OKLA. TULSA COUNTY

JOSHAWA CESSOR, )
)
Plaintiff, )
)
v. )  Case No. CJ-2018-4673
)
BOARD OF COUNTY COMMISIONERS ) Refiled from Case **No. CJ-2016-2442**
OF TULSA COUNTY, a political sub- )
division and municipal corporation; )  **ATTORNEY LIEN CLAIMED**
STANLEY GLANZ, individually; )
VIC REGALADO, in his official capacity; )  **JURY TRIAL DEMANDED**
and ARMOR CORRECTIONAL HEALTH )
SERVICES, INC., a foreign corporation, )
)
Defendants. )

## PLAINTIFF'S NOTICE TO COURT

Comes Now Plaintiff and hereby submits the following notice to Court:

1. That on May 15, 2019, Plaintiff filed his Motion for Leave to File Second Amended Petition.

2. That Plaintiff informs the Court that counsel for Plaintiff has conferred with counsel for the Tulsa County Defendants and Armor Correctional Health Services, Inc. has been advised that Defendants object.

Respectfully submitted,

Brendan M. McHugh, OBA #18422
Attorney for Plaintiff
P.O. Box 1392
Claremore, OK 74018
(918) 608-0111



EXHIBIT O

Fax: (918) 803-4910
Email:Brendan@lawinok.com
and
Dana Jim, OBA #19495
P.O. Box 1011
Vinita, Oklahoma 74301
Tele: (918) 457-6626
Fax: (918) 517-3431
Email: danajimlaw@gmail.com
Co-Counsel for Plaintiff

## CERTIFICATE OF DELIVERY

This is to certify that the above document was delivered, postage prepaid, on this

_15_ day of May 2019 to:

Snider, Sean P (Bar #22307)
Winter, Anthony C (Bar #32148)
Johnson Hanan & Vosler
9801 N Broadway Extension
Okla City, Ok 73114
Attorneys For Armor Correctional Health
Services Inc.

Kehoe, Matthew Steven (Bar #22615)
Assistant District Attorney
500 S. Denver, Ste. 900
Tulsa, Ok 74103
Attorneys For Board Of County
Commisioners

_____
Dana Jim



IN THE DISTRICT COURT FOR TULSA COUNTY
STATE OF OKLAHOMA

JOSHAWA CESSOR,                              )
                                             )
          Plaintiff,                         )
                                             )
v.                                           )          Case No. CJ-2018-4673
                                             )
BOARD OF COUNTY COMMISSIONERS                )
OF TULSA COUNTY, a political subdivision     )
and municipal corporation; and ARMOR         )
CORRECTIONAL HEALTH SERVICES,                )
INC., a foreign corporation,                 )
                                             )
          Defendants.                        )

## DEFENDANT ARMOR CORRECTIONAL HEALTH SERVICES, INC.'S
## RESPONSE TO PLAINTIFF'S MOTION TO AMEND

COMES NOW, Defendant Armor Correctional Health Services, Inc. (hereinafter "Armor"

or "Defendant") and respectfully submits its Response to Plaintiff's Motion for Leave to file Second

Amended Petition (hereinafter "Motion to Amend"). The filing of the instant Response should not

be construed as a consent to jurisdiction or as a waiver of Defendant's right to assert all remaining

defenses under the law, including, but not limited to, those enumerated in OKLA. STAT. tit. 12 §

2012(B). Furthermore, Defendant specifically reserves the right to answer Plaintiff's First Amended

Petition and to assert all affirmative defenses including those enumerated in OKLA. STAT. tit. 12 §

2008(C). In support thereof, Defendant respectfully states as follows:

To understand Defendant's basis for its objection to Plaintiff's Motion to Amend it is

important to understand the procedural history of this case to date. As outlined below, Plaintiff has

had numerous opportunities to perfect his petitions and complaints and has been afforded leave on

several occasions to do so. Granting him leave to amend his Petition in this instance would be futile

and would only delay a decision on the merits.

1

EXHIBIT P

## STATEMENT OF THE CASE

1.     On July 5, 2016, Plaintiff commenced his original action in Tulsa County District Court as case number CJ-2016-2442. *See* Exhibit 1 to this Defendant's Motion to Dismiss.

2.     On January 18, 2017, a defendant removed the original action, which originated in the Tulsa County District Court, to the United States District Court for the Northern District of Oklahoma. *See* Exhibit 2 to this Defendant's Motion to Dismiss.

3.     The removing defendant filed a Motion to Dismiss Plaintiff's Petition and in response, Plaintiff filed an Amended Complaint in the Northern District on March 8, 2017. *See* Exhibit 3 to this Defendant's Motion to Dismiss.

4.     Subsequently, Plaintiff voluntarily dismissed his claims against all defendants on November 13, 2017. *See* Exhibit 4 to this Defendant's Motion to Dismiss.

5.     On November 13, 2018, Plaintiff refiled this action in Tulsa County District Court as case number CJ-2018-4673. *See* Exhibit 5 to this Defendant's Motion to Dismiss.

6.     On November 30, 2018, Plaintiff filed an Amended Petition in this action. *See* Exhibit 6 to this Defendant's Motion to Dismiss.

7.     On April 2, 2019, Plaintiff voluntarily dismissed certain claims in his action. *See* Exhibit 7 to this Defendant's Motion to Dismiss.

8.     On May 1, 2019, Defendant filed a special entry of appearance and Motion to Dismiss Plaintiff's Amended Petition.

9.     Plaintiff, apparently in lieu of responding to Defendant's Motion to Dismiss, filed the instant Motion to Amend on May 15, 2019, seeking leave to amend his Amended Petition yet again.

## ARGUMENTS AND AUTHORITIES

OKLA. STAT. tit. 12, § 2015 provides that parties may seek leave of Court to file an amended petition, and that "leave shall be freely given when justice requires." *Id.* (emphasis added). While courts liberally construe the right to amend, this is not without limitation. Appellate courts have explained there is no abuse of discretion in refusing to grant leave to amend a pleading "if the court relies on a reason such as 'undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party, ... [or] futility of amendment'." *See Bittle v. Oklahoma City Univ.*, 2000 OK CIV APP 66, ¶ 11, 6 P.3d 509, 513 (citing *Prough*, 1993 OK 130, ¶ 9, 862 P.2d at 76. Furthermore, "'[a] key consideration [in liberally permitting amendments] is whether the non-movant will be prejudiced by the amendment.'" *Roth*, at ¶ 12, 1084 (citing *U.S. v. Keystone Sanitation Co., Inc.*, 903 F.Supp. 803, 814 (M.D.Pa.1995)). Thus, Plaintiff's request is properly denied if there is a "justifying reason" for denial of the motion for leave to amend the petition. *See McDermott v. Sentry Life Ins. Co., Inc.,* 2000 OK CIV APP 115, ¶ 28, 15 P.3d 508, 516, *as corrected* (Jan. 24, 2001).

Here, there are several justifying reasons to deny Plaintiff's request. First, Plaintiff's requested relief should be denied by this Court because Plaintiff has had plenty of chances to cure any perceived deficiencies in his filings. Second, Plaintiff's request to file a Second Amended Petition would be futile, as Plaintiff will be unable to cure the substantive issues plaguing his claims against this Defendant, including that Armor is immune from liability in tort pursuant to the Oklahoma Governmental Tort Claims Act (hereinafter "GTCA"). Finally, Plaintiff's request should be denied because he does not establish good cause which justifies another opportunity to amend his pleadings.

**1) Plaintiff's Motion to Amend should be denied because he has repeatedly failed to perfect his allegations and claims.**

To date, Plaintiff has had the opportunity to perfect his petition/complaint on four (4) separate occasions. Plaintiff's first chance occurred at the time of the initial filing of this action in Tulsa County on or about July 5, 2016. After it was removed to the Northern District, Plaintiff was afforded another opportunity to improve his position and pleadings in filing an Amended Complaint on or about March 8, 2017. Notably, this occurred after being confronted by a Motion to Dismiss by the defendant that removed the action. Subsequently, Plaintiff voluntarily dismissed his action in the Northern District and was effectively given a third opportunity to tailor and perfect his Petition prior to refiling this action in Tulsa County. Then, prior to serving defendants with the refiled action, Plaintiff again filed an Amended Petition (his fourth bite of the proverbial apple.) Finally, after filing his Amended Petition, Plaintiff then voluntarily dismissed claims that were included in his Amended Petition. Now, after being confronted with meritorious Motions to Dismiss, Plaintiff again seeks leave to amend his Amended Petition.

Interestingly, the allegations contained in Plaintiff's proposed Second Amended Complaint stem from the same set of operative facts as the Amended Petition in this action. Said another way, Plaintiff's proposed Second Amended Complaint does not add anything factually that was not included in Plaintiff's prior renditions of his complaints/petitions. Instead, the proposed Second Amended Petition largely throws out the same facts that have been pled and included since Plaintiff filed his Amended Complaint in Federal Court over two (2) years ago. Accordingly, Plaintiff cannot logically argue that his sought relief is necessary to correct or clean up the factual basis for his claims. Even if he did take this position, Plaintiff has not identified which facts were necessary to his proposed Second Amended Petition or provide an adequate reason as to why such facts were not included in the prior four (4) opportunities Plaintiff has had to perfect his pleading.

Similarly, the claims included in the proposed Second Amended Complaint have been articulated and laid out previously in Plaintiff's other initiating documents. Here, Plaintiff's proposed Second Amended Petition seemingly seeks to add United States Constitutional claims against this Defendant. It is unclear why these additional claims were not included in any of petitions involved with the refile, especially when considering Plaintiff's Amended Complaint filed in Federal Court prior to Plaintiff's voluntarily dismissal, did contain § 1983 claims for alleged violations of Plaintiff's rights under the 4th and 14th Amendments to the United States Constitution stemming from the health care allegedly received at the Tulsa County Jail. *See* Exhibit 3 to Defendant's Motion to Dismiss, ¶¶ 19-44. Now, after being confronted with a Motion to Dismiss which would firmly dispose of Plaintiff's claims against this Defendant, Plaintiff seeks to go back to the well and add claims which have already been included in this action once before.

**2) Plaintiff's Motion to Amend should be denied because amendment would be futile.**

Any attempts by Plaintiff to amend his Amended Complaint would be futile, even when considering that Plaintiff seeks to add another § 1983 claim which has not been included since Plaintiff's action was refiled. A proposed amendment is futile if the complaint as amended would be subject to dismissal. *Bradley v. J.E. Val-Mejins*, 379 F.3d 892, 901 (10th Cir. 2004)(citing *Jefferson County Sch. Dist. v. Moody's Investor's Services*, 175 F.3d 848 (10th Cir. 1999). As outlined in Defendant's Motion to Dismiss, Defendant is immune from liability in tort pursuant to the GTCA. There is no number of amendments that would shield Plaintiff from this fact, as Defendant inherently is included within the definition of "employee" in the GTCA and therefore is entitled to immunity from tort. Accordingly, Plaintiff's Motion to Amend should be denied as any attempted amendments regarding Plaintiff's state claims against this Defendant would be unsuccessful.

Additionally, Plaintiff's proposed additional claims under § 1983 would be similarly fruitless as Plaintiff has failed to allege in his proposed Second Amended Petition that the actions or inactions of Defendant were deliberately indifferent. In order to properly plead a claim for deliberate indifference Plaintiff must properly allege that the alleged harm he suffered was sufficiently serious (*Wilson v. Seiter*, 501 U.S. 294, 303-04 (1991)), and that this Defendant was aware of and disregarded an excessive risk to his safety (*Farmer v. Brennan*, 511 U.S. 825, 837 (1994). Plaintiff is unable to satisfy his pleading burden under these standards as it is clear when considering Plaintiff's Amended Petition and proposed Second Amended Petition that Defendant was not deliberately indifferent to Plaintiff's serious medical needs as it provided care and treatment in response to his complaints. If medical care was provided, and there is only a disagreement as to whether the proper care was provided, the case sounds in tort and does not rise to the level of a civil rights claim. *Smart v. Villar*, 547 F.2d 112 (10th Cir.1976); and *Debrow v. Kaiser*, 42 F. App'x 269, 269 (10th Cir. 2002).

### 3) Plaintiff's Motion to Amend does not provide good cause for the relief sought.

Plaintiff's Motion to Amend is void of any persuasive factual or legal basis for granting the relief he seeks. While Plaintiff does attach his proposed Second Amended Petition as an exhibit to his Motion to Amend, what Plaintiff fails to provide is any reasoning as to why the proposed Second Amended Complaint was not the version that was filed upon the refiling of this action in Tulsa County or the version that was filed as an Amended Petition prior to serving defendants in the refiled action. Instead, Plaintiff provides in his Motion to Amend that the "Court should allow Plaintiff to file a Second Amended Petition due to the intervening change in existing law." *See* Plaintiff's Motion to Amend, p. 3, ¶ 10. Accepting this as true however requires disregarding the fact that Plaintiff has already attempted to account for the alleged changes in law by his voluntary

dismissal of claims which were prohibited by the *Barrios* decision. This stated bases, even if it were true, would not adequately justify granting Plaintiff leave to assert an additional claim under § 1983, as the *Barrios* decision solely dealt with claims under the Oklahoma Constitution, no the United States Constitution.

## CONCLUSION

Plaintiff's Motion to Amend should be denied as Plaintiff has already been given several opportunities to amend and correct his filings, pled facts and asserted claims. Denial is also appropriate because any subsequent amendment would be futile, and Plaintiff failed to provide good cause for his sought relief.

WHEREFORE, Defendant respectfully request that this Court deny Plaintiff's Motion for Leave to File a Second Amended Petition.

Respectfully submitted,

SEAN P. SNIDER, OBA # 22307
ANTHONY C. WINTER, OBA # 32148
JOHNSON HANAN AND VOSLER
9801 N. Broadway Extension
Oklahoma City, OK 73114
Telephone: (405) 232-6100
Facsimile: (405) 232-6105
E-Mail: ssnider@johnsonhanan.com
E-Mail: awinter@johnsonhanan.com
*Attorneys for Defendant Armor*
*Correctional Health Services, Inc.*

## CERTIFICATE OF MAILING

I, hereby certified that a true and correct copy of the above and foregoing was mailed via first class mail on the 3rd day of June, 2019, to the following:

Brendan M McHugh
P.O. Box 1392
Claremore, OK 74018
Telephone: (918) 608-0111
Facsimile: (918) 803-4910
and
Dana Jim
P.O. Box 1011
Vinta, OK 74301
Telephone: (918) 457-6626
Facsimile: (918) 517-3431
*Attorneys for Plaintiff*

Matthew Steven Kehoe
Assistant District Attorney
500 S. Denver, Ste. 900
Tulsa, OK 74103
*Attorney for Defendant Board*
*of County Commissioners of Tulsa Co.*

Anthony C. Winter



F I L E D

JUN 2 5 2019

DON NEWBERRY, Court Clerk
STATE OF CKLA. TULSA COUNTY

# IN THE DISTRICT COURT OF TULSA COUNTY
## STATE OF OKLAHOMA

### NOTICE OF HEARING

The following cases are set for hearing in **Room 501** on the matters designated at the time and dates below. Counsel or parties without counsel should appear at the hearing or disposition may be made in their absence.

_____
DOUG DRUMMOND, DISTRICT JUDGE
Civil Docket B

~~CJ 2018 4673~~ JOSHAWA CESSOR      BOARD OF COUNTY COMMISSIONERS OF TULSA CO

Plaintiff's Motion to Amend is set on 7-30-2019 at 11:00. Notices sent to Brendan McHugh PO Box 1392 Claremore Ok 74018 and Dana Jim PO Box 1011 Vinita Ok 74301 and Matthew Kehoe 500 S Denver Ste 900 Tulsa, Ok 74103 and Sean Snider 9801 N Broadway Extension Oklahoma City, Ok 73114.

CJ 2017 1874   BRYANT LEWIS      CHRISTOPHER EARLEY

1083 Status Conference is set on 7-30-2019 at 11:00. Notices sent to Jack Warren 611 S Detroit Ave Tulsa, Ok 74120 and William Van Burkleo PO Box 258829 Oklahoma City, Ok 73125.

### AFFIDAVIT OF MAILING

I, Don Newberry, Court Clerk for Tulsa, County, hereby certify that on the _25_ day of ___June___, 2019, a true and correct copy of the foregoing order was mailed to each of the attorneys listed above, and a true and correct copy of the foregoing order was filed in each of the foregoing cases.

DON NEWBERRY COURT CLERK

_____
Deputy Court Clerk

**EXHIBIT Q**





THE DISTRICT OF TULSA COUNTY
STATE OF OKLAHOMA

DISTRICT COURT
F I L E D

JUL 3 1 2019

DON NEWBERRY, Court Clerk
STATE OF OKLA. TULSA COUNTY

JOSHAWA CESSOR )
            Plaintiff )
            )        CJ 2018 4673
V. )                 DOUG DRUMMOND
            )        CIVIL DOCKET B
            )
BOARD OF COUNTY )
COMMISSIONERS OF TULSA )
COUNTY )
            Defendant )

## ORDER

The trial court's discretion regarding whether to allow an amendment is limited by 12 O.S. § 2015, *which requires that leave to amend be given if justice requires*. It also is clear that a court may deny leave if the leave to amend is based on: 1) undue delay; 2) bad faith or dilatory motive by the movant; 3) repeated failure to cure deficiencies by amendments previously allowed; 4) undue prejudice to the opposing party; or 5) futility of amendment. *City of Blackwell v. Wooderson, 2017 OK CIV APP 33, ¶ 5, 397 P.3d 491, 494.* The Defendant argues that the amendment causes (1) undue delay, (2) points out the Plaintiff's repeated failure to cure deficiencies by amendments previously allowed and (3) the "futility" of the proposed amendment. Those are most certainly legitimate arguments, but, *in the interest of justice*, the Court will grant leave to file the Second Amended Petition. The amended petition should be filed within 10 days from the date of this Order. The Defendants' respective Motions To Dismiss may be resubmitted and/or supplemented within 30 days from the date of this Order and the Plaintiff will have 14 days to response once the motions/supplements are filed. The parties also must submit a scheduling order within 45 days of the date of this Order.

_Doug Drummond_
DOUG DRUMMOND, DISTRCT JUDGE



**EXHIBIT R**

Notices sent to:    BRENDAN MCHUGH PO Box 1392 Claremore Ok 74018
                    DANA JIM PO Box 1011 Vinita Ok 74301
                    MATTHEW KEHOE 500 S Denver Ste 900 Tulsa, Ok 74103
                    SEAN SNIDER 9801 N Broadway Extension Oklahoma City, Ok 73114

## AFFIDAVIT OF MAILING

I, Don Newberry, Court Clerk for Tulsa, County, hereby certify that on the
____31____ day of ___July___, 2019, a true and correct copy of the foregoing order
was mailed to each of the attorneys listed , and a true and correct copy of the foregoing
order was filed in each of the foregoing cases.

                            DON NEWBERRY, COURT CLERK


                            _____
                            Deputy Court Clerk